**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: Application of JSC BTA BANK<br><br>For an Order to Conduct Discovery for Use in Foreign Proceedings | Case No. _____ |

### *EX PARTE* APPLICATION OF JSC BTA BANK
### FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

JSC BTA Bank ("Applicant" "BTA" or "BTA Bank"), submit this *Ex Parte* Application for Judicial Assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary evidence for use in a foreign proceeding (the "Application") by issuing subpoenas *duces tecum* pursuant to Rule 45 of the Federal Rules of Civil Procedure. In support, the Applicant respectfully states as follows:

### INTRODUCTION

1. This is an *ex parte* application in aid of foreign proceedings, as further described herein, in which BTA Bank has suffered a fraud on an enormous scale and is the plaintiff / complaining victim in a civil action filed in England and Wales, pursuant to which it has obtained judgments in excess of $4.6 billion (the "English Claims").

2. BTA is also the complaining victim in a criminal investigation arising from the same facts currently being pursued by Kazakhstan law enforcement authorities and has shared information of its own investigation with those authorities. Additionally, Ablyazov has been charged by prosecutors in France with aggravated abuse of trust and money laundering based the same fact pattern. Criminal investigations and charges against Khrapunov (as defined below) have also been instigated in Switzerland.

3. The English Claims were brought against BTA Bank's former chairman, and primary shareholder, Mukhtar Ablyazov ("Ablyazov"), upon BTA Bank's discovery that Ablyazov had illegally misappropriated as much as $7.5 Billion of BTA Bank's assets and subsequently laundered the proceeds through multiple financial institutions all over the world.

4. Ablyazov's primary co-conspirator and "right hand man" in the money-laundering scheme was determined to be his son-in-law, Ilyas Khrapunov ("Khrapunov"). In 2015, BTA initiated proceedings against Khrapunov in England and Wales based on his direct involvement in laundering the funds stolen by Ablyazov from BTA. Ultimately, the High Court in England and Wales entered into a judgment against Khrapunov on 21 June 2018 in the amount of approximately $500 million (the "Khrapunov Proceedings").

-1-

5. In addition to the judgments against Khrapunov and Ablyazov (the "Judgment Debtors"), BTA has also obtained judgments against certain entities established by the two Judgment Debtors for the purpose of laundering money and assets stolen from BTA Bank. The English Courts have also granted worldwide freezing orders against the Judgment Debtors, with such orders covering any entities that are owned and/or controlled by the Judgment Debtors worldwide.

6. Given the judgments obtained by BTA Bank to date pursuant to the English Claims, and more particularly the Khrapunov Proceedings, we know that the Judgment Debtors have a history of laundering money and assets stolen through dollar denominated transactions.

7. The Judgment Debtors have a history of using nominees and a complex network of offshore companies to conceal their ownership of the assets wrongfully appropriated from BTA. At least in part, this was done with the assistance of Mr Eesh Aggarwal, a British accountant based in Dubai, who assisted with creating an elaborate structure of companies including through the use of newly incorporated off-shore entities held via straw man or nominee owners.

8. In August 2010, the Applicant successfully applied to the English High Court for receivers to be appointed over Ablyazov's assets, in respect of Ablyazov's persistent failure to provide full-disclosure and the giving of false evidence during the course of cross-examination. Receivers were subsequently appointed who uncovered in excess of 1000 companies, associated, affiliated or in some connected way with suspect transactions and used to conceal assets stolen by Ablyazov from BTA Bank.

9. One entity not yet subject to any English Court judgment is Panolos Limited ("Panolos"), a St. Vincent and Grenadines entity. BTA has, however, obtained evidence that demonstrates that Panolos may have been used by Ablyazov and Khrapunov in connection with their money laundering and other illicit activities (the "Ablyazov and Khrapunov money laundering scheme").

10. The Applicant is seeking assistance from the United States District Court for the Southern District of New York to obtain documentary evidence from The Clearing House Payments Company L.L.C. ("Clearing House") and thirteen intermediary banks (the "Intermediary Banks"), namely: Bank of America N.A.; Bank of China; The Bank of New York Mellon; BNP Paribas USA; Citibank, N.A.; Commerzbank AG; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Societe Generale; Standard Chartered Bank; UBS AG; and Wells Fargo Bank, N.A. (collectively, the "Discovery Targets") which reside or are found in this District.

11. The Applicant expects that the evidence sought will reveal details about the Ablyazov and Khrapunov money laundering scheme, and particularly Panolos' involvement therein, more specifically, the receipt and the transfer of dollar denominated transactions into and out of Panolos' bank accounts – thereby allowing the Applicant to prove the existence of Panolos', and other individuals and entities', involvement in the fraud before foreign courts and to recover monies wrongly concealed from the Applicant by the Judgment Debtors.

12. The facts relevant to this Application are set forth below and more specifically in the Declaration of Jason Kislin and attached exhibits (the "Declaration"), which is being filed contemporaneously herewith. The facts stated in the Declaration are incorporated herein by reference.

13. The Clearing House regularly transacts business in this District and operates the Clearing House Interbank Payment System ("CHIPS"), which is a funds-transfer system that processes and maintains records of payment messages between banks. Decl, ¶ 53. Similarly, the Intermediary Banks are banks that transact business in this District, including as correspondent banks, clearing international U.S. Dollar denominated wire transfers between banks. Decl, ¶ 53. Therefore, it is highly likely that Panolos' dollar denominated transactions will appear on CHIPS, and therefore, discovery evidence should be sought against the Clearing House, and the Intermediary Banks which use CHIPS.

14. The evidence sought through this Application is relevant to the English Claims and the Khrapunov Proceedings, insofar as it produces evidence of: (i) Panolos' involvement in the Ablyazov and Khrapunov money laundering scheme; (ii) Panolos' role in laundering the proceeds of the fraud against BTA Bank; (iii) leads to the discovery of other evidence thereof. Further these records can be used to determine the existence of certain dollar denominated transactions out of and into bank accounts which are owned by Panolos; (iv) whether Panolos holds or has held tainted assets; and/or (v) identify other assets and accounts for which a freezing order or other court order can be obtained in the English Courts or elsewhere. Accordingly, information held by the Discovery Targets, would not only be relevant, but may be essential to, the progress of BTA Bank's efforts to recover the misappropriated assets and prove the merits of their case.

15. The Applicant also expects that the evidence sought through this Application will reveal details about and help to identify additional potential defendants involved in the Ablyazov and Khrapunov money laundering scheme in anticipation and contemplation of judicial proceedings being commenced in London and elsewhere against those additional defendants (the "Contemplated Proceedings").

16. Given the history of rapid movements of assets and of acts of concealment, BTA Bank is filing this motion *ex parte* without notice to Panolos, the Judgment Debtors or their legal counsel.

17. Should the Court grant the application, the Applicant proposes to serve the sample subpoenas attached as **Composite Exhibit A** on the Respondents.

18. As demonstrated below, the Applicant meets the statutory requirements under 28 U.S.C. § 1782, and the discretionary factors weigh in favor of granting the relief requested in this Application.

# ARGUMENT

I. **Standard for Granting Relief**

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 247 (2004). Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." The statute reads, in pertinent part:

> (a) *The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.*

28 U.S.C. § 1782(a) (2016).

Courts have distilled § 1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. First,

> A district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

Mees v Buiter, 793 F.3d 291, 297 (2d Cir. 2015); Optimal Inv. Servs., S.A. v. Berlamont, 773 F.3d 456, 460 (2d Cir. 2014); Mare Shipping Inc. v. Squire Sanders (US) LLP, 574 F. App'x 6, 8 (2d Cir. 2014) (summary order); accord Intel, 542 U.S. at 256-63 (addressing the factors).[1]

Next, once a District Court has determined that the mandatory requirements for relief under § 1782 are met, the court is free to grant discovery in its discretion. Mees v Buiter, 793 F.3d at 297. To aid that discretion, the Intel Court delineated the following four factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65; Mees, 793 F.3d at 298 (reciting factors).

## II. As demonstrated below, the Applicant satisfies the statutory requirements and, therefore, this Court should grant the relief sought in the Application. Applicants Meet the Mandatory Requirements for Granting Relief

### A. The Discovery Target Resides or is Found in This District

The court's authority to compel discovery under § 1782 extends to any "*person*," including both individuals and entities, that "*resides or is found in*" the district in which the application is made. 28 U.S.C. § 1782(a). An entity "*resides or is found in*" this District if this Court can exercise personal jurisdiction over it. See In re del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019) (the "*reside or is found*" statutory "language extends § 1782's reach to the limits of personal jurisdiction consistent with due process").

Here, this Court has personal jurisdiction over the Discovery Targets because they either have their principal place of business in this District or they are located in and regularly transact business in this District. Decl., ¶ 60. More specifically,

   a. The Clearing House is headquartered at 1114 Avenue of the Americas, 17th Floor, New York, NY 10036;

   b. Bank of America, N.A. is located and regularly transacts business at 115 W. 42nd St. New York, NY 10036;

   c. Bank of China, is located and regularly transacts business at 1045 Avenue of the Americas, New York, NY 10018;

---

[1] District courts may, and indeed typically do, grant § 1782 on an *ex parte* basis. Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing further authority therein)(summary order).

    d.   The Bank of New York Mellon is headquartered at 240 Greenwich Street, NewYork, NY 10286;

    e.   BNP Paribas USA is headquartered at 787 Seventh Avenue New York, NY 10019;

    f.   Citibank, N.A. is headquartered at 388 Greenwich Street New York, NY 10013;

    g.   Commerzbank AG, is located and regularly transacts business at 225 Liberty Street, New York, NY 10281;

    h.   Deutsche Bank Trust Company Americas is headquartered at 60 Wall Street New York, NY 10005;

    i.   HSBC Bank USA, N.A. is headquartered at 452 Fifth Avenue New York, NY 10018;

    j.   JPMorgan Chase Bank, N.A. is headquartered at 270 Park Avenue, New York, NY 10017;

    k.   Societe Generale AG is located and regularly transacts business at 245 Park Avenue, New York, NY 10167;

    l.   Standard Chartered Bank is located and regularly transacts business at 1095 Avenue of the Americas, New York, NY 10036;

    m.   UBS AG is located and regularly transacts business at 1285 Avenue of the Americas, New York, NY 10019; and

    n.   Wells Fargo Bank, N.A. is located and regularly transacts business at 500 West 33rd Street, New York, NY 10001.

        This Court also has personal jurisdiction over the Discovery Targets because they are located in and transact relevant business for purposes of this matter—i.e., correspondent banking—in this District, therefore establishing personal jurisdiction over them and satisfying the first mandatory requirement of § 1782. See In re del Valle Ruiz, 939 F.3d 520, 530 (2d Cir. 2019) (a court has specific jurisdiction over a non-party in the § 1782 context if the non-party's activity in the forum is the reason that the evidence sought is available).

        Accordingly, the Applicant satisfies the first requirement under § 1782.

### B. The Discovery Sought is For Use in a Proceeding in a Foreign Tribunal

Likewise, the Applicant satisfies the second requirement as the discovery sought through the instant Application is for use in the English Claims, the Khrapunov Proceedings and the Contemplated Proceedings. The Applicant will use the discovery obtained in this District in support of the English Claims, the Khrapunov Proceedings and the Contemplated Proceedings, including putative equitable proprietary tracing claims relating to the proceeds of sale and/or any substituted property arising therefrom, and in furtherance of collection efforts against the Judgment Debtors.

In Euromepa, the Second Circuit explained that the "*for use in a proceeding in a foreign or international tribunal*" factor turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27 (2d Cir. 1998).

The Second Circuit has also held that a section 1782 application's "for use" requirement is satisfied by showing that the materials the applicant seeks will be used at some stage of a foreign proceeding that is within reasonable contemplation at the time the application is made. Mees, 793 F.3d at 301. The court elaborated "*[t]he plain meaning of the phrase "for use in a proceeding" indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail.*" Mees at 298. The court further noted, "*[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chance of success.*"

Additionally, Section 1782's "for use" requirement is de minimis. The party seeking discovery need only show that the discovery will "*be employed with some advantage or serve some use in the proceeding.*" *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015); *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (explaining that the "*burden imposed upon an applicant*" by the "*for use*" requirement is "*de minimis,*" and that "*district courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding*"); In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (characterizing the "*for use*" requirement as a "*broadly permissive standard*").

Here, the English Claims, and in particular the Khrapunov Proceedings, are ongoing foreign proceedings before the commercial court in England, which are adjudicative in nature because the English court has determined whether a fraud has arisen in respect of the Ablyazov and Khrapunov money laundering scheme Decl, ¶¶ 17-29 and 30-35. In addition, the Contemplated Proceedings are adjudicative in nature as the English Courts and, to the extent required, Courts in other related jurisdictions will adjudicate the existence of any furtherance of the fraud pursuant to the Ablyazov and Khrapunov money laundering scheme; and in particular, which entities and individuals participated in the fraud and received proceeds from the fraud as transferees of the proceeds of the Ablyazov and Khrapunov money laundering scheme.

Further the Applicant will be able to use the discovery in the Contemplated Proceedings, as well as the Khrapunov Proceedings and the English Claims (the "Pending Proceedings"), as

the information will help the Applicant by revealing details about how the Ablyazov and Khrapunov money laundering scheme was perpetrated, identify the participants of the fraud and to trace and locate the funds diverted through the Ablyazov and Khrapunov money laundering scheme, which the Applicant will seek to recover through the Pending Proceedings and the Contemplated Claims. . Therefore, the Applicant will be able to use the discovery sought in the Pending Proceedings and the Contemplated Proceedings in furtherance of their claims to recover the amounts stolen pursuant to and the proceeds of the Ablyazov and Khrapunov money laundering scheme.

Therefore, the Pending Proceedings and the Contemplated Proceedings satisfy the second mandatory requirement of § 1782(a).

### C.  Applicants are Interested Persons

A person who has "*participation rights*" and "*possesses a reasonable interest in obtaining judicial assistance . . . qualifies as an interested person within any fair construction of that term.*" Intel, 542 U.S. at 256-7 (2d Cir. 2004) (internal citations omitted). "*The legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign litigation.*" See Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38, 42 (2d Cir. 1996) (internal citations omitted). Here, the Applicant is an "*interested person*" in its capacity as the claimant in the Pending Proceedings and/or as a putative claimant in the Contemplated Proceedings. Decl., ¶¶ 17-29. Hence, the Applicant meets the third statutory requirement under 28 U.S.C. § 1782(a).

### III.  This Court Should Exercise its Discretion in Favor of Granting Relief

As noted above, once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. Optimal Inv. Servs., S.A., 773 F.3d at 460.[2] Additionally, that discretion must be guided by the twin policy aims of § 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of insistence to our courts. Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 81 (2d Cir. 2012). Here, these discretionary factors weigh in favor of granting the requested relief.

First, the Discovery Targets are not parties to the Pending Proceedings. Moreover, there is no expectation that the Discovery Targets will become parties to the Pending Proceedings or the Contemplated Proceedings. Decl ¶¶ 57. Accordingly, this factor weighs in favor of granting the Application. See Intel, 542 U.S. at 264 ("The need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.").

---

[2] The four factors guiding that discretion again are: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65.

Second, counsel retained in respect of the Pending Proceedings have advised that there is no indication that the courts in England and Wales would not be receptive to the documentation evidence sought through the instant Application. Decl ¶ 58. Even if the documents were not used as evidence in those proceedings, the Second Circuit has held that Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered "for use in a proceeding in a foreign or international tribunal." Brandi-Dohrn, 673 F.3d at 77.

Third, counsel retained respect of the Pending Proceedings have advised the Applicant that the evidence sought through the instant Application would likely be admissible and does not otherwise circumvent any proof-gathering restrictions in England. Decl. ¶ 58.

Lastly, the Application is not unduly intrusive or burdensome. The proposed requests to the Discovery Targets, demonstrated in the sample subpoenas attached as **Composite Exhibit A**, are limited to the period beginning with 20 July 2011 (i.e. the date of the incorporation of Panolos Limited) to present and/or the Discovery Target's applicable document and/or information retention period. Finally, the information sought is the type of evidence that the Discovery Targets regularly retrieve and produce as third parties or actual parties in litigation. Decl. ¶ 59.

As such, each discretionary factor identified in the Intel Court weighs in favor of granting the Application.

WHEREFORE, the Applicant respectfully requests that this Court enters an Order, in the proposed, or similar, form as the accompanying Proposed Order:

(a)  exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this *Ex Parte* Application for Judicial Assistance;

(b)  granting the Applicants leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the sample subpoenas attached as Composite Exhibit A to this Application;

[THIS SPACE LEFT INTENTIONALLY BLANK]

    (c)    reserving jurisdiction to grant Applicants leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and

    (d)    granting such other and further relief as this Court deems just and proper.

Dated: Florham Park, New Jersey
November 16, 2021

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Jason Kislin
Jason Kislin
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
kislinj@gtlaw.com
(973) 360-7900

*Counsel for the Applicant*