EXHIBIT 11 COVRCHEVEL PROPERTY TRANSACTION- ACTE ENTERPRISE - FR



RCS : CHAMBERY

Code greffe : 7301

Actes des sociétés, ordonnances rendues en matière de société, actes des personnes physiques

## REGISTRE DU COMMERCE ET DES SOCIETES

## Le greffier du tribunal de commerce de CHAMBERY atteste l'exactitude des informations transmises ci-après

Nature du document : Actes des sociétés (A)

Numéro de gestion : 2011 D 00301

Numéro SIREN : 532 798 188

Nom ou dénomination : ANIDAM

Ce dépôt a été enregistré le 26/12/2014 sous le numéro de dépôt 7319

**ANIDAM**
Société civile immobilière
au capital de 5.000 euros
Siège social : Mazot «Apoutsiak»,
Lotissement dit « des Greniers de Courchevel 1850 »
Saint Bon Tarentaise (73120)
532 798 188 RCS Chambéry

TRIBUNAL de COMMERCE-CHAMBERY

DEPOT
du      **2 6 DEC. 2014**

N°...................... Le Greffier,

---

**PROCES-VERBAL DE
L'ASSEMBLEE GENERALE MIXTE
EN DATE DU 14 NOVEMBRE 2014**


L'an deux mille quatorze et le quatorze novembre,

Sont présents :

- La société **Panolos Limited,**
  représentée par Monsieur Eliyahou Pomeranz,
  (ci-après « **Panolos Limited** »)

  propriétaire de ........................................................................... 4.999 parts

- Monsieur Eliyahou Pomeranz

  propriétaire de .................................................................................1 part
  _____

  Total égal au nombre de parts composant le capital social ........................ 5.000 parts

seuls associés de la Société et représentant en tant que tels la totalité des parts émises par la Société.

L'Assemblée Générale est présidée par Monsieur Eliyahou Pomeranz en sa qualité de représentant de la société Panolos Limited, associé présent et détenant le plus grand nombre de parts sociales.

L'Assemblée Générale, réunissant le quorum requis par les statuts, est déclarée régulièrement constituée et peut valablement délibérer.

Panalos Limited/PANALOS LIMITED / MADEL (UK)/Projets/PV AGM - Nomination gérant_Changement capital BA v1 2014.11.14/906044

Greffe du Tribunal de Commerce de Chambéry  : dépôt N°7319 en date du 26/12/2014

Le Président rappelle que l'Assemblée Générale est appelée à délibérer sur l'ordre du jour suivant :

**I- A titre ordinaire :**
- Révocation de Monsieur Iliyas Khrapunov de son mandat de Gérant de la Société ;
- Nomination de Monsieur Eliyahou Pomeranz en qualité de Gérant de la Société.

**II- A titre extraordinaire :**
- Mise à jour des statuts concernant la nouvelle répartition du capital ;
- Pouvoirs pour les formalités.

Le Président dépose devant l'Assemblée et met à la disposition de ses membres :
- Le texte des résolutions ;
- Le projet de statuts mis à jour ;
- les statuts de la Société.

Personne ne demandant plus la parole, les résolutions suivantes ont été soumises au vote des associés :

**A TITRE ORDINAIRE :**

**Première résolution**
*(Révocation de Monsieur Iliyas Khrapunov de son mandat de Gérant d'Anidam et conditions relatives à sa démission)*

La collectivité des associés, connaissance prise du désintérêt de Monsieur Iliyas Khrapunov pour ses fonctions de Gérant de la Société, et statuant aux conditions de majorité requises pour les assemblées générales ordinaires décide de mettre fin au mandat de Gérant de Monsieur Iliyas Khrapunov, et se réserve le droit de statuer lors de la prochaine assemblée générale annuelle d'approbation des comptes de l'exercice clos le 31 décembre 2014 sur le quitus à lui consentir.

Cette décision prend effet à compter du 27 juin 2014, date de la signature de l'acte de cession conclu entre Monsieur Eliyahou Pomeranz et Monsieur Iliyas Khrapunov, portant sur la cession de la part sociale de la Société détenue par ce dernier

Cette décision est adoptée à l'unanimité.

**Deuxième résolution**
(*Nomination de Monsieur Eliyahou Pomeranz en qualité de Gérant de la Société*)

La collectivité des associés, en conséquence de la résolution qui précède et statuant aux conditions de majorité requises pour les assemblées générales ordinaires, décide de nommer aux fonctions de Gérant de la Société :

> Monsieur Eliyahou Pomeranz,
> de nationalité israélienne,
> né le 12 juin 1967,
> demeurant Kefar Monash, 42875, Israël.

Monsieur Eliyahou Pomeranz est nommé pour une durée indéterminée.

Monsieur Eliyahou Pomeranz, intervenant aux présentes, déclare accepter les fonctions de Gérant de la Société dans les conditions ci-dessus et qu'il ne fait l'objet d'aucune interdiction et/ou incompatibilité susceptibles de lui en interdire l'exercice.

Cette décision est adoptée à l'unanimité.

**A TITRE EXTRAORDINAIRE :**

**Troisième résolution**
(*Mise à jour des statuts en conséquence de la nouvelle répartition du capital*)

La collectivité des associés, en conséquence de (i) la cession par la société Madel B.V de quatre mille neuf cent quatre-vingt dix-neuf (4.999) parts de la Société, au profit de la société Panolos Limited, ainsi que de (ii) la cession par Monsieur Iliyas Khrapunov de une (1) part de la Société, au profit de Monsieur Eliyahou Pomeranz, statuant aux conditions de majorité requises pour les assemblées générales extraordinaires, décide de modifier l'article 7 des statuts de la Société dans les termes visés ci-dessous.

L'article 7 des statuts est supprimé et remplacé par les stipulations suivantes :

> *« Article 7 – CAPITAL SOCIAL – PARTS SOCIALES*
>
> *Le capital social est fixé à la somme de CINQ MILLE EUROS (5.000,00 €).*
>
> *Il est divisé en cinq mille (5.000) parts de UN EURO (1 €) chacune attribuées aux associés, savoir :*

I

- A la société Panolos Limited, une société régie par le droit de Saint Vincent et Grenadines, dont le siège social est situé 112, Bonadie St., Kingstown, Saint Vincent, immatriculée au Registre du Commerce et des Sociétés de Saint Vincent et Grenadines sous le numéro 19635 IBC 2011, à concurrence de quatre mille neuf cent quatre-vingt-dix-neuf (4.999) parts numérotées de 1 à 4.999 ;

- A Monsieur Eliyahou Pomeranz, de nationalité israélienne, né le 12 juin 1967 à Kefar Saba (Israël), demeurant Kefar Monash, 42875, Israël, à concurrence d'une (1) part numérotée 5.000. »

### Quatrième résolution
(*Pouvoirs pour les formalités*)

La collectivité des associés décide de conférer tous pouvoirs à l'Office des Formalités, 30-32 Boulevard de Sébastopol, 75004 Paris, ainsi qu'au porteur d'un original, d'un extrait ou d'une copie certifiés conformes du présent procès-verbal, afin d'effectuer toutes formalités de publicité et/ou de dépôt requises par la loi.

Cette décision est adoptée à l'unanimité.

\* \* \*

Plus rien n'étant à l'ordre du jour, la séance est levée.

De tout ce que dessus, il a été dressé le présent procès-verbal qui, après lecture, a été signé par les associés et Monsieur Eliyahou Pomeranz.

**PANOLOS Ltd.**
**R.N. 19635**

_____
**Panolos Limited**
Associé
Représentée par :
Monsieur Eliyahou Pomeranz

_____
**Monsieur Eliyahou Pomeranz**
Associé

[handwritten French phrase]

Bon pour acceptation des fonctions de Gérant

_____
**Monsieur Eliyahou Pomeranz**[1]

---

[1] Signature preceeded by the handwritten French phrase: « _Bon pour acceptation des fonctions de Gérant_».

TRIBUNAL de COMMERCE-CHAM~

DEPOT
du   **2 6 DEC. 2014**

N°......7319...... Le Greffier,

**ACTE DE CESSION DE PART SOCIALE**

Le _27.06_ 2014

entre

**M. Iliyas Khrapunov**

et

**M. Eliyahou Pomeranz**

en présence de

**SCI ANIDAM**

**ENTRE :**

**M. Iliyas Viktorovitch Khrapunov**, de nationalité kazakhe, né le 15 janvier 1984 à Zhambylskaya (Kazakhstan), demeurant Rue Pedro-Meylan 10, 1208 Genève, Suisse,

(ci-après dénommée le « **Cédant**»),

d'une part,

**ET**

**M. Eliyahou Pomeranz**, de nationalité israélienne, né le 12 juin 1967 à  Kefar Saba, (Israël), demeurant Kefar Monash, 42875, Israël,

(ci-après dénommée le « **Cessionnaire** »),

d'autre part.

Le Cédant et le Cessionnaire seront ci-après dénommés collectivement les « **Parties** » et individuellement une « **Partie** ».

**EN PRESENCE DE :**

La société **SCI Anidam**, société civile immobilière, dont le siège social est situé à Saint Bon Tarentaise (73120), lotissement dit « des Greniers », mazot dénommé « Apoutsiak » immatriculée au Registre du Commerce et des Sociétés de Chambéry sous le numéro 532 798 188, représentée par M. Iliyas KHRAPUNOV , dûment habilité aux fins des présentes,

(ci-après dénommée la « **Société** »).

**IL A ETE PREALABLEMENT EXPOSE CE QUI SUIT :**

**A.** Le Cédant souhaite vendre au Cessionnaire l'unique (1) part sociale numérotée 5.000 qu'il détient au capital social de la Société (la « **Part** »), d'une valeur nominale d'un (1) euro (la « **Cession** »).

**B.** Les Parties indiquent que les sociétés MADEL B.V., en qualité de cédant, et PANOLOS LIMITED, en qualité de cessionnaire, ont conclu en présence de la Société un contrat intitulé « *Share Transfer Agreement* » portant sur les 4.999 parts sociales de la Société numérotées 1. à 4.999. en date du 13 mai 2014, soumettant la réalisation de la cession à la réalisation de conditions suspensives et prévoyant la conclusion d'un acte réitératif lors de la réalisation desdites conditions. Les conditions suspensives ayant été réalisées, lesdites sociétés sont convenues de la conclusion d'un acte réitératif.

**C.** En conséquence de cette opération, la part sociale restante étant la propriété du gérant de la Société, les Parties ont convenu de la présente Cession qui forme avec la cession de ces 4.999 parts sociales une seule et unique opération indissociable.

**CECI AYANT ETE EXPOSE, IL A ETE CONVENU CE QUI SUIT :**

**ARTICLE 1        ACHAT ET VENTE DE LA PART**

**1.1.        Achat et vente**

Le Cédant cède ce jour au Cessionnaire, qui accepte, la Part, ainsi que tous les droits y afférents, dans les termes et conditions prévus aux termes du présent contrat. Le Cessionnaire en a la jouissance à compter de la même date.

La cession sera rendue opposable à la Société dans les formes prévues à l'article 1690 du Code civil.

**1.2.        Prix**

La Part est cédée moyennant un prix de quatre cents euros et huit centimes (400,08€) (ci-après dénommé le « **Prix** »).

Le Prix est payé comptant à la date des présentes.

## ARTICLE 2      AGREMENT

A l'issue de la notification de la Cession par le Cédant à la Société et à ses associés de la Société et de la décision des associés de la Société en date du [_____] 2014, les associés de la Société ont agréé, conformément à l'article 15.3 des statuts de la Société, la Cession, au profit du Cessionnaire.

## ARTICLE 3      DECLARATIONS POUR L'ENREGISTREMENT

Pour la perception des droits d'enregistrement, le Cédant déclare que :

- la Cession n'entraîne pas de dissolution de la Société,

- la Société est à prépondérance immobilière,

- le nombre total de parts sociales de la Société est de 5.000 parts sociales.

## ARTICLE 4      DROITS D'ENREGISTREMENT

Les droits d'enregistrement afférents aux présentes seront à la charge du Cessionnaire.

## ARTICLE 5      JURIDICTION COMPETENTE ET DROIT APPLICABLE

Le Tribunal de Commerce de Paris sera seul compétent pour toute contestation résultant du Contrat.

Le Contrat est régi par le droit français.

## ARTICLE 6      POUVOIR POUR LES FORMALITES

Les Parties confèrent tous pouvoirs à tout porteur d'un original des présentes à l'effet d'accomplir toutes formalités requises.

Fait à Genève, en six (6) exemplaires originaux, dont un (1) exemplaire pour les besoins de l'enregistrement, un (1) exemplaire pour les besoins de la signification, un (1) exemplaire pour le dépôt au Greffe, deux (2) exemplaires pour les signataires ci-dessous et un (1) exemplaire pour la Société,

Le

Le Cédant,
**M. Iliyas Khrapunov**

Le Cessionnaire,
**M. Eliyahou Pomeranz**

Pour la Société, **SCI Anidam**,
**M. Iliyas Khrapunov**

Enregistré à : RECETTE DES IMPOTS DES NON-RESIDENTS
Le 04/11/2014 Bordereau n°2014/308 Case n°11                    Ext 2632
Enregistrement      : 25 €                Pénalités :    3 €
Total liquidé       : vingt-huit euros
Montant reçu        : vingt-huit euros
L'Agente des impôts

F   **Anna JUHEL**
Agente administrative
des Finances publiques

TRIBUNAL de COMMERCE-CHAR

DEPOT
du    **2 6 DEC. 2014**

N°...................... Le Greffier,

**ACTE REITERATIF**

Le 07/10/ 2014

entre

**MADEL B.V.**

et

**PANOLOS LIMITED**

en présence de

**SCI ANIDAM**

**ENTRE :**

18'000 ₵

La société **Madel B.V.**, société à responsabilité limitée de droit néerlandais au capital de ~~900.000~~ euros, dont le siège social est situé Kingsfordweg 151, 1043GR, Amsterdam (Pays-Bas) immatriculée au Registre du Commerce et des Sociétés d'Amsterdam sous le numéro 34284445, représentée par [____], dûment habilité aux fins des présentes,

(ci-après dénommée le « <strong>Cédant</strong>»),

d'une part,

**ET**

La société **Panolos Limited**, *international business company* soumise au droit de Saint Vincent et Grenadines, dont le siège social est situé 112, Bonadie St., Kingstown, Saint Vincent, immatriculée au Registre du Commerce et des Sociétés de Saint Vincent et Grenadines sous le numéro 19635 IBC 2011, représentée par [ AVIRAM AZARI            ], dûment habilité aux fins des présentes,

(ci-après dénommée le « <strong>Cessionnaire</strong> »),

d'autre part.

Le Cédant et le Cessionnaire seront ci-après dénommés collectivement les « **Parties** » et individuellement une « **Partie** ».

**EN PRESENCE DE :**

La société **SCI Anidam**, société civile immobilière, dont le siège social est situé à Saint Bon Tarentaise (73120), lotissement dit « des Greniers », mazot dénommé « Apoutsiak » immatriculée au Registre du Commerce et des Sociétés de Chambéry sous le numéro 532 798 188, représentée par [ Iliyas Khrapunov        ], dûment habilité aux fins des présentes,

(ci-après dénommée la « <strong>Société</strong> »).

## INDEX

ARTICLE 1    ACHAT ET VENTE DES PARTS ........................................................................ 4

ARTICLE 2    AGREMENT....................................................................................................... 5

ARTICLE 3    DECLARATIONS POUR L'ENREGISTREMENT ................................................ 5

ARTICLE 4    DROITS D'ENREGISTREMENT ....................................................................... 5

ARTICLE 5    JURIDICTION COMPETENTE ET DROIT APPLICABLE ................................... 5

ARTICLE 6    POUVOIR POUR LES FORMALITES................................................................. 5

**IL A ETE PREALABLEMENT EXPOSE CE QUI SUIT :**

**A.**   Le Cédant souhaite vendre au Cessionnaire 4.999 parts sociales de la Société (les « **Parts** »), d'une valeur nominale d'un (1) euro chacune (la « **Cession** »).

**B.**   Les Parties ont conclu un contrat intitulé « *Share Transfer Agreement* » en date du 13 mai 2014, soumettant la réalisation de la Cession à la réalisation de conditions suspensives et prévoyant la conclusion d'un acte réitératif à la réalisation desdites conditions.

**C.**   Les conditions suspensives ayant été réalisées, les Parties sont convenues de la conclusion du présent acte réitératif.

**CECI AYANT ETE EXPOSE, IL A ETE CONVENU CE QUI SUIT :**

**ARTICLE 1      ACHAT ET VENTE DES PARTS**

**1.1.      Achat et vente**

Le Cédant cède ce jour au Cessionnaire, qui accepte, les Parts, ainsi que tous les droits y afférents, dans les termes et conditions prévus aux termes du « *Share Transfer Agreement* ». Le Cessionnaire en a la jouissance à compter de la même date.

La cession sera rendue opposable à la Société dans les formes prévues à l'article 1690 du Code civil.

**1.2.      Prix**

Les Parts sont cédées moyennant un prix de 2.000.000 d'euros (ci-après dénommé le « **Prix** »).

Le Prix est payé à la date des présentes par voie de compensation contre la créance détenue par le Cessionnaire sur le Cédant aux termes du contrat de délégation conclu le 13 mai 2014.

Les sommes relatives aux charges et aux travaux liés au chalet détenu par la Société sont réparties et payées à la date des présentes par le Cédant et le Cessionnaire conformément à l'article 5.3 du « *Share Transfer Agreement* ».

## ARTICLE 2       AGREMENT

A l'issue de la notification de la Cession par le Cédant à la Société et à ses associés de la Société et de la décision des associés de la Société en date du [_____] 2014, les associés de la Société ont agréé, conformément à l'article 15.3 des statuts de la Société, la Cession, au profit du Cessionnaire.

## ARTICLE 3       DECLARATIONS POUR L'ENREGISTREMENT

Pour la perception des droits d'enregistrement, le Cédant déclare que :

- la Cession n'entraîne pas de dissolution de la Société,

- la Société est à prépondérance immobilière,

- le nombre total de parts sociales de la Société est de 5.000 parts sociales.

## ARTICLE 4       DROITS D'ENREGISTREMENT

Les droits d'enregistrement afférents aux présentes seront à la charge du Cessionnaire.

## ARTICLE 5       JURIDICTION COMPETENTE ET DROIT APPLICABLE

Le Tribunal de Commerce de Paris sera seul compétent pour toute contestation résultant du Contrat.

Le Contrat est régi par le droit français.

## ARTICLE 6       POUVOIR POUR LES FORMALITES

Les Parties confèrent tous pouvoirs à tout porteur d'un original des présentes à l'effet d'accomplir toutes formalités requises.

Fait à [___], en six (6) exemplaires originaux, dont un (1) exemplaire pour les besoins de l'enregistrement, un (1) exemplaire pour les besoins de la signification, un (1) exemplaire pour le dépôt au Greffe, deux (2) exemplaires pour les signataires ci-dessous et un (1) exemplaire pour la Société,

Le _07/10/_ 2014

_____
Pour le Cédant, **Madel B.V.,**
Monsieur [___]

_____
Pour le Cessionnaire, **Panolos Ltd.,**
Monsieur [___]

_____
Pour la Société, **SCI Anidam,**
Monsieur [___]

Enregistré à : RECETTE DES IMPOTS DES NON-RESIDENTS

Le 04/11/2014 Bordereau n°2014/308 Case n°10                    Ext 2631

| | | |
|---|---|---|
| Enregistrement | : 100 000 € | Pénalités : |
| Total liquidé | : cent mille euros | |
| Montant reçu | : cent mille euros | |

L'Agente des impôts

Anna JUHEL
Agente administrative
des Finances publiques

# ANIDAM

Société civile immobilière
Au capital de 5.000 euros
Siège social : Mazot «Apoutsiak »,
Lotissement dit « des Greniers de Courchevel 1850 »
Saint Bon Tarentaise (73120)
532 798 188 RCS Chambéry

TRIBUNAL de COMMERCE-CHAMBERY

DEPOT
du      2 6 DEC. 2014

N°....................... Le Greffier,

# STATUTS

**(Mise à jour à l'issue de l'Assemblée Générale Mixte du 14 novembre 2014)**

- Page N°1

Enregistré à : POLE ENREGISTREMENT ALBERTVILLE
Le 01/06/2011 Bordereau n°2011/438 Case n°1                          Ext 2723

| Enregistrement | : Exonéré | Pénalités : |
| Total liquidé | : zéro euro | |
| Montant reçu | : zéro euro | |
| L'Agent | | |

Mlle Monique BIBOLLET-RUCHE
Contrôleur

N° 5171

L'AN DEUX MILLE ONZE
LE DIX-NEUF MAI
Maître Jean-François BOUDET, Notaire soussigné,
Associé de la Société Civile Professionnelle "Jean-François BOUDET & Dominique
PERALDI, Notaires Associés", titulaire d'un Office Notarial à la Résidence de COURCHEVEL,
Commune de SAINT BON TARENTAISE (Savoie),

A reçu le présent acte authentique à la requête des personnes ci-après identifiées, lesquelles
ont établi ainsi qu'il suit les statuts d'une SOCIETE CIVILE qu'elles ont convenu de constituer
entre elles.

**IDENTIFICATION DES ASSOCIES**
1°) La société dénommée « Madel B.V. », société à responsabilité limitée de droit
hollandais, au capital de 90.000,00 Euros, dont le siège social est à AMSTERDAM (Hollande),
Schiphol Boulevard 231 WTC Toren B, 1118BH Luchtahaven Schipol, inscrite auprès du Registre
des Personnes Morales d'AMSTERDAM sous le numéro 34284445.
Constituée aux termes de ses statuts en date du 27 septembre 2007 modifiés le 8 novembre
2010 par Maître JOHAN REINDER EGBERT KIELSTRA, notaire à GRAVENHAGE (Pays-
Bas),

2°) Monsieur Ilyas KHRAPUNOV, businessman, époux de Madame Madina
ABLYAZOVA, demeurant à 1209 GENEVE (SUISSE), Chemin du petit Saconnex 286.
Né à ZHAMBYLSKAYA (KAZAKHSTAN), le 15 janvier 1984.
De nationalité kazakh,
Marié sans contrat préalable à son union célébrée à la mairie d'ALMATY
(KAZAKHSTAN), le 16 septembre 2007, et soumis au régime légal kazakh de la communauté
équivalent au régime légal de la communauté d'acquêts de droit français ; ledit régime n'ayant subi
aucune modification contractuelle ou judiciaire postérieure, ainsi déclaré.
Titulaire d'un passeport délivré le 6 juillet 2007 sous le numéro N5454992.

**PRESENCE ou REPRESENTATION**
- La société dénommée Madel B.V. est représentée par Monsieur Ilyas KHRAPUNOV, ci-
après dénommé, en vertu d'une procuration reçue par Maître JOHAN REINDER EGBERT
KIELSTRA, notaire à GRAVENHAGE (Pays-Bas), le 28 avril 2011, dont une expédition revêtue
de l'apostille demeurera ci-annexée après mention.

- Page N°2 -

Ledit Monsieur KHRAPUNOV ayant agi au nom de la société dénommée « Madel B.V » en sa qualité de fondé de procuration et en vertu d'une délibération des actionnaires en date du 20 avril 2011, dont le procès verbal revêtue de l'apostille ainsi qu'une copie de ladite délibération traduite en français demeurent ci-jointes et annexées aux présentes après mention.

- Monsieur Iliyas **KHRAPUNOV** est présent.

- Madame Madina **KHRAPUNOV** née ABLYAZOVA est représentée par Madame Christine ROUX, clerc de notaire, domiciliée au siège de l'Office Notarial dénommé en tête des présentes, en vertu des pouvoirs qui lui ont été conférés aux termes d'une procuration en date à GENEVE (Suisse) du 9 mai 2011, légalisée par Maître Marc GILLIERON, avocat à GENEVE (Suisse), également signée par Maître Laurent BRECHBUHL, notaire à GENEVE (Suisse) et revêtue de l'apostille, demeure annexée aux présentes après mention.

## TITRE I

### FORME - OBJET - DENOMINATION - SIEGE

### DUREE - PROROGATION

#### ARTICLE 1 - FORME
La société a la forme d'une Société Civile régie par le titre IX du livre III du Code Civil, modifié par la loi du 4 janvier 1978, le décret du 3 juillet 1978 et ses textes subséquents ainsi que par les présents statuts.

#### ARTICLE 2 - OBJET SOCIAL
La société a pour objet :
- L'acquisition, l'administration et la gestion par location ou autrement de tous immeubles et biens immobiliers et notamment d'un immeuble ci-dessous désigné :

#### Commune de SAINT BON TARENTAISE (73120)
Un mazot dénommé «APOUTSIAK» situé à COURCHEVEL 1850, lotissement dit «des GRENIERS» Comprenant :
- au rez-de-chaussée : salle, cuisine – salle d'eau –
- au sous-sol : salle de séjour, cuisine et salle d'eau –
Terrasse
Terrain
Formant le lot numéro 355 du lotissement dit « des GRENIERS » approuvé par arrêtés préfectoraux des 11 février 1954 et 12 octobre 1954.
Ledit bien est constitué, savoir .
- d'une parcelle sur laquelle est édifié le mazot figurant au cadastre :
Section AC, numéro 76, lieudit    « Bellecôte », pour une contenance de VINGT CENTIARES (20ca),
- et d'une partie de la parcelle cadastrée en BND – Bien Non Délimité :
Section AC, numéro 514, lieudit « Bellecôte » d'une contenance totale de QUATRE-VINGT ARES QUATRE-VINGT CENTIARES (80a 80ca),
Soit une superficie de    UN ARE QUATRE-VINGT-DIX CENTIARES (1a 90ca) correspondant à la surface complémentaire du lot 355.

- L'emprunt de tous les fonds nécessaires à cet objet et la mise en place de toutes sûretés réelles ou autres garanties nécessaires.

- Exceptionnellement l'aliénation des immeubles devenus inutiles à la société, notamment au moyen de vente, échange ou apport en société.

- Page N°3 -

- Et plus généralement toutes opérations financières, mobilières ou immobilières se rattachant directement ou indirectement à cet objet et susceptibles d'en faciliter la réalisation, à condition toutefois, d'en respecter le caractère civil.

### ARTICLE 3 - DENOMINATION
La dénomination de la Société est :
ANIDAM

Les actes et documents émanant de la société et destinés aux tiers doivent indiquer la dénomination sociale précédée ou suivie des mots "Société civile" puis de l'énonciation du montant du capital social, de l'adresse du siège social et du numéro d'identification au SIREN ainsi que de l'indication de la ville du greffe où elle est immatriculée.

### ARTICLE 4 - SIEGE SOCIAL
Le siège social est fixé à
SAINT-BON-TARENTAISE (73120), COURCHEVEL 1850, lotissement dit «des GRENIERS», mazot dénommé «APOUTSIAK».

Il pourra être transféré en tout autre endroit de la même commune ou des communes limitrophes ou dans tout autre endroit du même département, par simple décision de la gérance et partout ailleurs en vertu d'une décision extraordinaire de la collectivité des associés.

La société sera immatriculée au registre du commerce et des sociétés de CHAMBERY.

### ARTICLE 5 - DUREE - PROROGATION
#### Durée
La durée de la Société est fixée à QUATRE-VINGT-DIX-NEUF (99) ans à compter de son immatriculation au Registre du Commerce et des Sociétés.

#### Prorogation
Par décision collective extraordinaire des associés, la Société peut être prorogée une ou plusieurs fois sans que chaque prorogation puisse excéder quatre vingt dix neuf ans.
Un an au moins avant la date normale d'expiration de la Société, les associés doivent être consultés à l'effet de décider si la Société doit être prorogée. A défaut, tout associé peut demander au Président du Tribunal de Grande Instance, statuant sur requête, la désignation d'un mandataire de justice chargé de provoquer la décision prévue ci-dessus.

### TITRE II

### APPORTS - CAPITAL SOCIAL - PARTS SOCIALES

### ARTICLE 6 - APPORTS
#### Apport en numéraire
Les associés suivants effectuent les apports à la Société, savoir :
- La société Madel B.V. : la somme de QUATRE MILLE NEUF CENT QUATRE VINGT DIX NEUF EUROS (4.999,00 €)

- Monsieur Iliyas KHRAPUNOV : la somme de UN EURO (1,00 €)

Soit au total : CINQ MILLE EUROS (5.000,00 €)

Ils ont été libérés à concurrence de la totalité.
La somme représentative des apports a été déposée, ce jour même, dans la caisse sociale, au crédit d'un compte ouvert en la comptabilité du notaire soussigné, au nom de la société en formation.

– Page N°4 –

**ORIGINE DES DENIERS APPORTES**
La somme ci-dessus apportée par Monsieur Iliyas KHRAPUNOV provient de ses revenus professionnels.

**PROCEDURE PREALABLE AUX APPORTS DE DENIERS COMMUNS**
En application des dispositions prévues à l'article 1832-2 du Code civil Monsieur Iliyas KHRAPUNOV a informé son conjoint de son intention de constituer avec les autres comparants, la présente Société dont les principales caractéristiques lui ont été indiquées.

Est à l'instant intervenue :
Madame Madina ABLYAZOVA, sans profession, épouse de Monsieur Iliyas KHRAPUNOV, demeurant à 1209 GENEVE (SUISSE), chemin du petit Saconnex 286.
Née à ALMATY (KAZAKHSTAN), le 4 février 1988.
De nationalité Kazakh,
Mariée sans contrat préalable à son union célébrée à la mairie d'ALMATY (KAZAKHSTAN), le 16 septembre 2007, et soumis au régime légal kazakh de la communauté équivalent au régime légal de la communauté d'acquêts de droit français, ledit régime n'ayant subi aucune modification contractuelle ou judiciaire postérieure, ainsi déclaré.
Titulaire du passeport délivré le 31 juillet 2007 sous le numéro N5508556.

Lequel CONJOINT reconnaît avoir été averti du projet de constitution de la présente Société et de la possibilité qui lui est donnée par l'article 1832-2 du Code civil, d'entrer personnellement dans ladite société, en qualité d'associé.

**DECLARATION DU CONJOINT**
Madame Madina KHRAPUNOV déclare :
-consentir conformément à l'article 1427 du Code civil à l'apport fait par son conjoint ;
-ne pas vouloir user de la faculté qui lui est ainsi offerte et renonce expressément à revendiquer la qualité d'associé dans la société actuellement en cours de constitution.
En conséquence, la part qui sera ci-après créée, en rémunération de l'apport de la somme de UN EURO (1,00 €) de Monsieur Iliyas KHRAPUNOV lui sera attribuée en totalité, mais elle dépendra néanmoins de la communauté de biens existant entre eux.

**ARTICLE 7 – CAPITAL SOCIAL – PARTS SOCIALES**
Le capital social est fixé à la somme de CINQ MILLE EUROS (5.000,00 €).

Il est divisé en cinq mille (5.000) parts de UN EURO (1 €) chacune attribuées aux associés, savoir :
- A la société Panolos Limited, une société régie par le droit de Saint Vincent et Grenadines, dont le siège social est situé 112, Bonadie St., Kingstown, Saint Vincent, Grenadines, immatriculée au Registre du Commerce et des Sociétés de Saint Vincent et Grenadines sous le numéro 19635 IBC 2011, à concurrence de quatre mille neuf cent quatre-vingt-dix-neuf (4.999) parts numérotées de 1 à 4.999 ;

- A Monsieur Eliyahou Pomeranz, de nationalité israélienne, né le 12 juin 1967 à Kefar Saba (Israël), demeurant Kefar Monash, 42875, Israël, à concurrence d'une (1) part numérotée 5.000.

- Page N°5 -

## TITRE III - PARTS SOCIALES

### CHAPITRE 1 - CARACTERISTIQUES

#### ARTICLE 8 - SOUSCRIPTION ET LIBERATION DES PARTS
**1) - Souscription :**
Lorsqu'elles rémunèrent des apports en nature ou en numéraire, les parts sociales doivent être souscrites en totalité par les associés.

**2) - Libération des parts sociales**
Les parts attribuées en rémunération d'apport en nature doivent être libérées intégralement au plus tard le jour de l'immatriculation de la Société au R.C.S. ou de l'inscription modificative de cette immatriculation consécutive à l'augmentation de capital intervenue.

Sous réserve des autres conditions de libération des parts sociales de numéraire créées à la fondation et indiquées ci-dessus, et de celles qui résulteraient expressément de la décision collective les ayant créées, les parts de numéraire sont libérées sur demande de la gérance.

En cas de retard dans les versements échelonnés stipulés dans les présents statuts ou consécutifs aux appels de fonds visés à l'alinéa qui précède, le souscripteur sera de plein droit débiteur de l'intérêt légal décompté à partir de l'échéance non respectée, le tout sans préjudice du droit pour la société d'intenter toutes actions appropriées et de solliciter tous dommages-intérêts.

Tous les versements à la société peuvent être effectués par voie de compensation avec des créances certaines, liquides et exigibles sur la société.

Les sommes non libérées seront immédiatement exigibles en cas de liquidation judiciaire de la société.

#### ARTICLE 9 - REPRESENTATION DES PARTS
Une part sociale ne peut, en aucun cas, être représentée par un titre négociable.

La propriété d'une part sociale résulte seulement des statuts de la Société, des actes qui pourraient les modifier, des cessions et mutations de parts sociales qui seraient ultérieurement et régulièrement consenties, constatées et publiées.

Une copie ou un extrait des statuts à jour, certifié par la gérance pourra être délivré à chaque associé sur sa demande et à ses frais.

### CHAPITRE 2 - DROITS ET OBLIGATIONS ATTACHES AUX PARTS

#### ARTICLE 10 - DROITS ATTACHES AUX PARTS

**1/ - Droit d'intervention dans la vie sociale**
Tout titulaire de parts a le droit, savoir :
- d'obtenir, une fois par an, communication des livres et des documents sociaux.

- de poser, à tout moment, des questions écrites à la gérance sur la gestion sociale, questions auxquelles il doit être répondu par écrit dans le délai d'un mois.

- de prétendre aux fonctions de gérant dans les conditions évoquées ci-après au Titre IV.

- de participer aux décisions collectives d'associés dans les conditions évoquées ci-après au Titre V et d'y voter.

**Usufruit**
Si une part sociale est grevée d'usufruit, le droit de vote appartient au nu-propriétaire sauf pour les décisions concernant l'affectation des bénéfices où il est réservé à l'usufruitier.

Le droit de prendre communication et copie, indiqué ci-dessus, appartient indistinctement à l'usufruitier et au nu-propriétaire.



- Page N°6 -

**2/ - Droits sur les bénéfices, les réserves et le boni de liquidation**

Chaque part sociale donne droit, outre au remboursement du capital qu'elle représente, à une part proportionnelle à la quotité de capital qu'elle représente dans les bénéfices annuels, les primes, les réserves et le boni de liquidation.

Les pertes ou le mali de liquidation, s'il en existe, sont supportés dans les mêmes conditions.

**3/ - Droit au maintien des engagements sociaux**

Les engagements définis aux présents statuts ne peuvent être augmentés sans l'accord individuel de l'associé concerné.

**4/ - Comptes courants d'associés**

En accord avec le gérant, chacun des associés peut déposer des fonds dans la caisse sociale en vue de faciliter le financement des opérations sociales. Les conditions d'intérêt et de retraits sont fixées en accord avec le gérant et conformément à la législation en vigueur. Faute d'accord exprès en ce sens, les fonds portent intérêt au taux maximum fiscalement déductible et les retraits ne sont possibles que moyennant préavis minimum de dix-huit mois.

**5/ - Délivrance de documents**

Tout associé peut obtenir de la gérance, sur demande, toutes pièces délivrées en copies certifiées conformes, aux frais de la société à moins qu'elles n'aient déjà été fournies auquel cas la gérance sera en droit de demander le remboursement des frais de copies et d'envoi.

**6/ - Droits de disposition sur les parts sociales**

La cession entre vifs des parts sociales, le sort des parts ayant appartenu à un associé décédé ou dont la personnalité morale a disparu sont réglés suivant les cas ainsi qu'il est indiqué aux chapitres 3 et 4 du présent titre.

**7/ - Droit de se retirer de la société**

Un associé peut, sans préjudice du droit des tiers, se retirer totalement ou partiellement de la Société avec l'autorisation unanime des associés.

La demande de retrait est notifiée à la société et à chacun des associés par lettre recommandée avec demande d'avis de réception postée au plus tard trois mois avant la clôture de chaque exercice social.

Le retrait peut également être autorisé pour justes motifs par une décision de justice.

La déconfiture, l'admission au redressement judiciaire, la liquidation des biens, la faillite personnelle d'un associé entraînent son retrait d'office de la Société.

En cas d'autorisation, le retrait prend effet à la clôture de l'exercice en cours au jour de notification de la demande de retrait. Dans les cas ci-dessus prévus de retrait d'office le retrait prend effet au jour d'intervention de l'événement générateur.

La valeur des droits est fixée à la date d'effet du retrait.

Le remboursement est effectué par fractions mensuelles égales, sans intérêt en sus, la première étant exigible un mois au plus tard après la date d'approbation des comptes de l'exercice en cours au jour du retrait et, si la fixation de la valeur de remboursement est postérieure à cette approbation, un mois au plus tard après cette fixation.

Tous les frais et honoraires du retrait ainsi que le coût de l'éventuelle expertise sont intégralement à la charge du retrayant.

- Page N°7 -

## ARTICLE 11 - OBLIGATIONS ATTACHEES AUX PARTS

### 1) - Obligations aux dettes sociales
A l'égard des tiers, les associés répondent indéfiniment des dettes sociales à proportion du nombre de parts qu'ils possèdent à la date de l'exigibilité ou au jour de la cessation des paiements.

Toutefois, les créanciers ne peuvent poursuivre le paiement des dettes sociales contre un associé qu'après avoir vainement poursuivi la société, selon les prescriptions légales et réglementaires applicables en ce domaine.

### 2) - Obligation de respecter les statuts
Les droits et obligations attachés à chaque part la suivent en quelque main qu'elle passe. La propriété d'une part emporte de plein droit adhésion aux présents statuts ainsi qu'aux décisions collectives d'associés et aux décisions de la gérance.

Les héritiers et créanciers d'un associé ne peuvent, sous quelque prétexte que ce soit, requérir l'apposition des scellés sur les biens et documents de la société, ni s'immiscer dans les actes de son administration.

## ARTICLE 12 - INDIVISIBILITE DES PARTS - EXERCICE DES DROITS ATTACHES AUX PARTS
Chaque part est indivisible à l'égard de la société.

Les propriétaires indivis d'une ou plusieurs parts sont tenus, pour l'exercice de leurs droits, de se faire représenter auprès de la société par l'un d'entre eux ou par un mandataire commun choisi parmi les autres associés ou en dehors d'eux. En cas de désaccord, le mandataire sera désigné en justice à la demande du plus diligent.

## CHAPITRE 3 - CESSION DES PARTS ENTRE VIFS

### ARTICLE 13 - FORME DES CESSIONS
Toute mutation entre vifs de parts sociales doit être constatée par acte authentique ou sous seing privé.

Elle n'est opposable à la Société qu'autant qu'elle lui aura été signifiée par acte d'huissier de justice ou qu'elle aura été acceptée par elle dans un acte authentique, conformément à l'article 1690 du Code civil.

Elle n'est opposable aux tiers qu'après accomplissement de ces formalités et après publication sous forme d'un dépôt, en annexe au registre du Commerce et des Sociétés, de deux copies authentiques de l'acte de cession.

Lorsque deux époux sont simultanément membre d'une société, les cessions faites par l'un d'eux à l'autre pour être valables, doivent résulter d'un acte notarié ayant acquis date certaine autrement que par le décès du cédant.

## ARTICLE 14 - TRANSMISSIONS OU CESSIONS NON SOUMISES A AGREMENT PREALABLE
Les parts sont librement cessibles ou transmissibles entre associés, conjoints associés ou non, ascendants et descendants.

## ARTICLE 15 - TRANSMISSIONS OU CESSIONS NECESSITANT UN AGREMENT PREALABLE

### 1 - Cessions concernées
Les dispositions qui suivent, concernant la procédure d'agrément, sont applicables à toutes opérations notamment toutes cessions, échanges, apports en société d'éléments isolés, attributions en suite de liquidation d'une communauté de biens du vivant des époux ou ex-époux, donations, apports par voie de fusion, scission ou assimilés, ayant pour but ou pour conséquence le transfert

d'un droit quelconque de propriété sur une ou plusieurs parts sociales entre toutes personnes physiques ou morales à l'exception de celles qui seraient visées à l'article précédent.

### 2 - Organe compétent
L'agrément est de la compétence de la collectivité des associés se prononçant par décision extraordinaire.

### 3 - Procédure
A l'effet d'obtenir l'agrément, l'associé qui projette de céder ses parts doit en faire la notification, par acte d'huissier de justice ou par lettre recommandée avec demande d'avis de réception, à la société dans tous les cas, puis à chacun de ses coassociés lorsque l'agrément doit être donné par la collectivité des associés.

Chaque notification doit indiquer :
- les nom, prénoms et adresse du cessionnaire,
- le nombre de parts dont la cession est envisagée,
- le prix de cession et les conditions de paiement.

L'organe compétent statue dans le mois de la notification à la société du projet de cession et sa décision est elle-même notifiée aux associés par lettre recommandée avec demande d'avis de réception. Elle s'applique obligatoirement à la totalité des parts faisant l'objet du projet de cession.

Il appartient à la gérance de provoquer la décision des associés et de répartir, le cas échéant, les rompus.

Dans le cas où elle est habilitée à statuer sur l'agrément, la gérance, préalablement à un refus d'agrément, doit, par lettre recommandée, aviser les associés de la cession projetée et leur rappeler les dispositions tant des articles 1862 et 1863 du Code civil que des présentes stipulations, ceci dans les huit jours à compter de la notification du projet de cession à la société.

En cas d'inaction de la gérance pendant le délai d'un mois qui précède, l'associé cédant, ou le plus diligent des autres associés, peut convoquer lui-même l'assemblée des associés sans mise en demeure préalable de la gérance et sans nécessité de suivre les dispositions de l'article 25 I - a) ci-après. Les gérants non associés sont convoqués à cette Assemblée dont l'ordre du jour porte exclusivement sur l'agrément du projet de cession. Si l'Assemblée était convoquée avec le même ordre du jour à des dates et heures distinctes, seule serait retenue la convocation faite pour les jours et heures les moins éloignés mais respectant néanmoins les délai et forme de convocation fixés à l'article 25 ci-après.

Toute décision d'agrément ou de refus d'agrément est notifiée par la gérance au cédant et à chacun des autres associés.

### 4 - Conséquences du refus d'agrément
La décision du refus d'agrément donne lieu à des offres d'achat d'associés, de tiers dûment agréés ou de la société lesquelles sont transmises par la gérance au cédant.

Dans l'hypothèse où plusieurs associés expriment leur volonté d'acquérir, ceux-ci sont, sauf convention contraire, réputés acquéreurs à proportion du nombre de parts qu'ils détenaient lors de la notification du projet de cession non agréé à la société, avec réduction à l'unité inférieure si nécessaire, les rompus profitant à celui des associés qui était titulaire du plus grand nombre de parts.

Dans l'hypothèse où aucun des associés ne se porte acquéreur, la société peut faire acquérir les parts par un tiers agréé par la gérance ou les acquérir elle-même en vue de leur annulation, avec le consentement de l'associé cédant ; le capital est alors réduit du montant de la valeur nominale des parts rachetées.

Il appartient à la gérance de collecter les offres individuelles d'achat émanant des associés, de les rendre cohérentes puis, s'il y a lieu, de susciter l'offre de tiers ou de la société.

La gérance peut, à cette fin, impartir aux associés un délai pour notifier leur offre d'achat individuelle à la Société par lettre recommandée avec demande d'avis de réception; ce délai ne peut être inférieur à un mois. Si les offres sont notifiées avant intervention de la décision sur

l'agrément, elles sont réputées faites sous la condition que cette décision n'entraîne pas l'agrément du projet de cession.

Le nom du ou des acquéreurs proposés, associés ou tiers, ou l'offre d'achat par la société, ainsi que le prix offert, sont notifiés au cédant par la gérance, par lettre recommandée avec demande d'avis de réception.

S'il y a contestation sur le prix, celui-ci est fixé, à la date de la notification à la société du projet de cession, par un expert désigné, soit par les parties, soit, à défaut d'accord entre elles, par ordonnance du président du Tribunal de Grande Instance statuant en la forme des référés et sans recours possible, le tout sans préjudice du droit du cédant de conserver ses parts. La partie la plus diligente propose le nom de l'expert désigné à l'autre partie par lettre recommandée avec demande d'avis de réception en lui impartissant un délai qui ne peut être inférieur à quinze jours, pour faire connaître son acceptation ou son refus. En cas de refus comme à défaut de réponse qui doit être donnée par lettre recommandée avec demande d'avis de réception, il est procédé sans tarder à la désignation de l'expert par voie de justice.

L'expert notifie son rapport à la Société et à chacun des associés. Cédant et candidats acquéreurs sont réputés accepter le prix fixé par l'expert s'ils n'ont pas notifié leur refus à la Société dans les quinze jours de la notification du rapport.

Jusqu'à leur acceptation, expresse ou tacite, du prix par les parties, celles-ci peuvent renoncer à la cession.

Si la renonciation émane du cédant, celui-ci est réputé également avoir renoncé au projet initial dont l'agrément avait été refusé.

En cas de renonciation par un ou plusieurs des candidats acquéreurs la gérance peut leur substituer tout associé ou tiers de son choix, à moins que la Société ne décide de racheter elle-même les parts ; le cas échéant et si nécessaire, le candidat cessionnaire substitué doit lui-même être agréé par l'organe compétent. A défaut de substitution opérée dans le délai de six mois prévu au paragraphe 6 du présent article, les autres offres sont réputées nulles et non avenues, de sorte que le projet initial est réputé agréé.

Les frais et honoraires d'expertises sont supportés moitié par le cédant, moitié par le ou les acquéreurs au prorata des parts acquises.

Si le rachat des parts ne peut intervenir pour une cause quelconque, les frais et honoraires d'expertises sont à la charge exclusive du défaillant ou renonçant, le cas échéant, au prorata du nombre des parts qu'ils s'étaient proposés d'acquérir ou de vendre s'ils sont plusieurs.

### 5 - Régularisation du rachat

Il appartient à la gérance de veiller à la régularisation du rachat, c'est-à-dire à la constatation, dans un acte écrit, du transfert de la propriété des parts.

Elle peut, en cas d'inaction ou d'opposition, faire sommation aux intéressés de comparaître aux jour et heure fixés devant le notaire désigné par elle. Si l'une des parties ne comparaît pas ou refuse de signer, la mutation des parts pourra être régularisée d'office par déclaration de la gérance en forme authentique sans qu'il soit besoin du concours ni de la signature du défaillant. En cas de refus de signer ou de non-comparution, tout à la fois du cédant et du cessionnaire, la Société peut faire constater le cession par le Tribunal compétent.

Le prix est payable dans les conditions fixées par la notification faite en vue de l'agrément prévue au paragraphe 3 ci-dessus et l'offre des candidats acquéreurs n'est recevable qu'accompagnée du dépôt de la partie payée comptant du prix entre les mains du notaire désigné par la gérance.

### 6 - Délai de notification des offres d'achat

Dans l'hypothèse où aucune offre d'achat portant sur toutes les parts dont la cession était projetée n'est faite au cédant dans un délai de six mois à compter de la dernière des notifications prévues supra au premier alinéa du paragraphe 3, l'agrément du projet initial de cession est réputé acquis, à moins que les autres associés, à l'unanimité, n'aient décidé, dans le même délai, la dissolution anticipée de la société.

- Page N°10 -

Dans ce dernier cas, le cédant peut toutefois rendre caduque cette décision de dissolution en notifiant à la société, dans le délai d'un mois à compter de l'intervention de ladite décision, par acte d'huissier ou par lettre recommandée avec demande d'avis de réception, sa renonciation au projet initial de cession.

### 7 - Conséquence de la non-réalisation du projet de cession agréé

Tout agrément, exprès ou implicite, d'un projet de cession, est réputé donné sous la condition de la réalisation effective de la cession dans un délai de deux mois à compter, soit de la décision d'agrément, soit du jour où le projet est réputé agréé; à défaut de réalisation dans ce délai, une nouvelle demande d'agrément doit être présentée.

## ARTICLE 16 - NANTISSEMENT

Les parts sociales peuvent faire l'objet d'un nantissement constaté soit par acte authentique, soit par acte sous seing privé signifié à la société ou accepté par elle dans un acte authentique.

Tout nantissement donnera lieu à la publicité prévue aux articles 53 à 57 du décret numéro 78-704 du 3 juillet 1978.

Tout associé peut obtenir par décision extraordinaire de la collectivité des associés son agrément à un projet de nantissement dans les conditions stipulées supra article 15.

Le consentement donné au projet emporte agrément du cessionnaire en cas de réalisation forcée des parts sociales à la condition que cette réalisation soit notifiée, un mois avant la vente, aux associés et à la Société.

Chaque associé peut se substituer à l'acquéreur dans un délai de cinq jours francs à compter de la vente. Si plusieurs associés exercent cette faculté, ils sont, sauf convention contraire, réputés acquéreurs à proportion du nombre de parts qu'ils détenaient lors de la notification de la vente forcée. Si aucun associé n'exerce la faculté de substitution, la société peut racheter les parts en vue de leur annulation.

Pour l'application de la présente clause, le projet de nantissement doit être notifié par l'associé intéressé à la société et à chacun des associés, soit par acte d'huissier, soit par lettre recommandée avec demande d'avis de réception.

La décision relative au projet de nantissement est provoquée, prise et notifiée, dans les mêmes conditions de délai, de forme, de quorum et de majorité qu'en matière d'agrément de cessionnaire de parts sociales étranger à la Société.

Si la Société n'a pas été consultée ou si elle a refusé son consentement au projet de nantissement, les dispositions de l'article 15 des présents statuts sont applicables à l'agrément de l'adjudicataire des parts nanties en cas de réalisation forcée de ces dernières.

## ARTICLE 17 - REALISATION FORCEE DE PARTS SOCIALES

La réalisation forcée de parts sociales qui ne procède pas d'un nantissement auquel consentement a été donné par application des dispositions visées supra article 16, doit être notifiée un mois avant la vente aux associés et à la société.

Les associés peuvent, dans ce délai, décider la dissolution de la société ou l'acquisition des parts dans les conditions prévues aux articles 1862 et 1863 du Code civil, en tenant compte de ce qui est dit supra article 15.

Si la vente a eu lieu, les associés ou la société peuvent exercer la faculté de substitution qui leur est reconnue supra article 16.

Le non exercice de cette faculté emporte agrément de l'acquéreur.

- Page N°11 -

## CHAPITRE 4 - TRANSMISSION DES PARTS PAR DECES, PAR LIQUIDATION DE COMMUNAUTE ou PAR DISPARITION DE LA PERSONNALITE MORALE D'UN ASSOCIE

### ARTICLE 18 - TRANSMISSIONS NON SOUMISES A AGREMENT PREALABLE

En cas de décès d'un associé, les parts sociales sont librement transmissibles par voie de succession exclusivement aux héritiers en ligne directe et au conjoint survivant venant à la succession de l'associé décédé.

En cas de disparition de la personnalité morale d'un associé, la société continue exclusivement entre les associés subsistants.

#### I - Nomination

La Société est gérée par un ou plusieurs gérants, associés ou non, personnes physiques ou morales, désignés pour une durée déterminée ou non.

Lorsqu'une personne morale est nommée gérant, l'acte de nomination indique le nom de ses représentants légaux. Leur changement emporte rectification de l'acte de nomination et doit-être publié comme l'acte lui-même.

Cette nomination résulte d'une décision collective ordinaire des associés.

- Est nommé en qualité de Premier GERANT de la Société :
Monsieur Iliyas KHRAPUNOV, comparant susnommé.

- Le mandat qui lui est confié est fixé pour une durée indéterminée.
- Chaque gérant désigné, intervenant à cet effet, déclare accepter le mandat qui lui est confié, et précise qu'à sa connaissance il ne se trouve dans aucun des cas d'interdiction ou de déchéance faisant obstacle à son exercice.

#### II - Gérance
##### 1 - Démission

Un gérant peut démissionner sans avoir à justifier sa décision à la condition de notifier celle-ci à chacun des associés ainsi qu'aux autres gérants, par lettre recommandée postée six mois au moins avant la clôture de l'exercice en cours, sa décision ne prenant effet qu'à l'issue de cette clôture.

Une telle démission expose néanmoins son auteur à des dommages-intérêts si la cessation de ses fonctions cause un préjudice à la Société.

En tout état de cause, la démission n'est recevable, si le gérant est unique, qu'accompagnée d'une convocation de l'assemblée ou d'une consultation écrite des associés en vue de la nomination d'un ou plusieurs nouveaux gérants.

##### 2 - Révocation

Un gérant est révocable par décision de justice pour cause légitime.
Il est également révocable par décision collective des associés prise en la forme ordinaire. Décidée sans juste motif, la révocation peut donner lieu à dommages et intérêts.

#### III - Vacance

Dans l'hypothèse où, pour quelque raison que ce soit, la Société se trouve dépourvue de gérant, tout associé - à supposer qu'il ne puisse lui-même convoquer l'Assemblée - peut demander au Président du Tribunal de Grande Instance dans le ressort duquel est situé le siège social, statuant sur requête la désignation d'un mandataire chargé de réunir les associés en vue de nommer un ou plusieurs gérants.

Si la Société a été dépourvue de gérant depuis plus d'un an, tout intéressé peut demander au Tribunal de Grande Instance de se prononcer sur la dissolution éventuelle de la Société.



- Page N°12 -

**IV - Publicité**

La nomination ou la cessation de fonctions du gérant donne lieu à publicité dans les conditions prévues par les dispositions réglementaires.

Par exception et conformément à l'article 25 du décret n° 78-704 du 3 Juillet 1978, le nom du premier gérant mentionné dans les présents statuts pourra être omis dans les statuts mis à jour sans qu'il y ait lieu de le remplacer par le nom de la personne qui lui a succédé dans ses fonctions.

Ni la Société, ni les tiers ne peuvent, pour se soustraire à leurs engagements, se prévaloir d'une irrégularité dans la nomination ou dans la cessation des fonctions d'un gérant, dès lors que ces décisions ont été régulièrement publiées.

Un gérant qui a cessé ses fonctions peut exiger, par toute voie de droit, toute modification statutaire et requérir l'accomplissement de toute publicité rendue nécessaire par la cessation de fonctions.

**V - Pouvoirs du Gérant**
**1 - Pouvoirs externes**

Dans les rapports avec les tiers, le gérant engage la Société par les actes entrant dans l'objet social.

En cas de pluralité de gérants, ceux-ci détiennent séparément les pouvoirs prévus à l'alinéa précédent. L'opposition formée par un gérant aux actes d'un autre gérant est sans effet à l'égard des tiers, à moins qu'il ne soit établi qu'ils en ont eu connaissance.

Sauf à respecter les dispositions prévues au paragraphe 2 ci-après, les gérants peuvent constituer hypothèque ou toute autre sûreté réelle sur les biens de la Société ou déléguer ces pouvoirs à toute personne, même par acte sous seing privé.

**2 - Pouvoirs internes**

Dans les rapports avec les associés, le gérant peut accomplir tous les actes entrant dans l'objet social que demande l'intérêt social.

S'il y a plusieurs gérants, ils exercent séparément ces pouvoirs, sauf le droit qui appartient à chacun de s'opposer à une opération avant qu'elle ne soit conclue.

**3 - Délégation de pouvoirs**

Un gérant peut donner toutes délégations de pouvoir à tous tiers pour un ou plusieurs objets déterminés, sauf à prendre toutes mesures nécessaires pour le respect des dispositions visées aux paragraphes 1 et 2 ci-dessus.

**4 - Signature sociale**

La signature sociale est donnée par l'apposition de la signature personnelle des gérants, de l'un ou de plusieurs d'entre eux précédée de la mention : "Pour la Société Civile ANIDAM", complétée par l'une des expressions suivantes : "Le gérant" ou "l'un des gérants".

**VI - Assiduité des Gérants**

Les gérants doivent consacrer aux affaires sociales le temps et les soins qui leur sont nécessaires.

**VII - Rémunération**

Le ou chacun des gérants a droit à une rémunération dont toutes les modalités de fixation et de versement sont arrêtées par la collectivité des associés statuant par décision ordinaire, en accord avec l'intéressé.

Tout gérant a droit en outre au remboursement de ses frais de déplacements et de représentation engagés dans l'intérêt de la Société, sur présentation de toute pièces justificatives.

**VIII - Responsabilité**

I. - Chaque gérant est responsable individuellement envers la Société et envers les tiers, soit des infractions aux lois et règlements, soit de la violation des statuts, soit des fautes commises dans sa gestion.

- Page N°13 -

Si plusieurs gérants ont participé aux mêmes fautes, leur responsabilité est solidaire à l'égard des tiers et des associés.

Toutefois, dans leurs rapports entre eux, le Tribunal détermine la part contributive de chacun dans la réparation du dommage.

II. - Si une personne morale exerce la gérance, ses dirigeants sont soumis aux mêmes conditions et obligations et encourent les mêmes responsabilités civiles et pénales que s'ils étaient gérants en leur nom propre, sans préjudice de la responsabilité solidaire de la personne morale qu'ils dirigent.

## ARTICLE 22 - CONTROLE DE LA SOCIETE

La comptabilité sociale, comme la gestion ne fait l'objet d'aucun contrôle particulier autre que celui résultant du droit d'information individuel des associés évoqué aux articles 10 et 25 des présents statuts, sauf les cas prévus par la loi.

Ultérieurement, les associés pourront décider de la nomination d'un commissaire aux comptes et/ou de la désignation d'un conseil de surveillance.

La société peut faire contrôler ses comptes par un commissaire aux comptes. Elle y est tenue lorsque les conditions et critères définis par l'article 27 de la loi n° 84-148 du 1er mars 1984 et son décret d'application sont remplis. Dans ce cas, elle nomme au moins un commissaire aux comptes titulaire et un suppléant, pour six exercices. Les commissaires sont choisis sur la liste visée à l'article L. 225-219 du Code de commerce.

L'assemblée des associés peut mettre fin à la mission des commissaires, quand les conditions et critères ci-dessus évoqués cessent d'être remplis pour deux exercices consécutifs.

La mission et les prérogatives du commissaire sont celles définies par les articles L. 225-235 et L. 225-236 du Code de commerce.

Les comptes de l'exercice écoulé sont mis à la disposition du commissaire 45 jours avant l'assemblée annuelle ou avant l'envoi de la lettre de consultation annuelle des associés.

Le commissaire est convoqué par lettre recommandée à la séance au cours de laquelle le ou les gérants arrêtent les comptes de l'exercice écoulé, ainsi qu'à l'Assemblée annuelle ; en cas de consultation écrite, il reçoit les mêmes documents que les associés.

Les honoraires du commissaire sont fixés selon les modalités réglementaires prévues pour les sociétés commerciales.

## TITRE V - DECISIONS COLLECTIVES DES ASSOCIES

## ARTICLE 23 - FORME DES DECISIONS

Les décisions collectives des associés s'expriment soit par la participation de tous les associés à un même acte, authentique ou sous seing privé, soit en assemblée, soit enfin par voie de consultation écrite au choix de l'organe de la Société ayant provoqué la décision.

Toutefois les décisions collectives statuant sur les comptes sociaux ne peuvent être prises qu'en assemblée.

## ARTICLE 24 - NATURE - QUORUM - MAJORITE

### I - Nature

Les décisions collectives des associés sont de nature dite "ordinaire" ou "extraordinaire".

### a) - Décisions Extraordinaires

Sont de nature "extraordinaire" les décisions emportant modification, directe ou indirecte, des statuts ainsi que celles dont les présents statuts exigent expressément qu'elles revêtent une telle nature ou encore celles qui exigent d'être prises à une condition de majorité autre que celle visée infra paragraphe II.b).

- Page N°14 -

**b) - Décisions Ordinaires**
Sont de nature "ordinaire" toutes décisions collectives qui ne sont pas dans le champ d'application des décisions de nature extraordinaire, notamment:
- celles s'appliquant à l'approbation du rapport écrit d'ensemble des gérants sur l'activité de la société en cours de l'exercice comportant l'indication des bénéfices réalisés ou des pertes encourues ;
- celles s'appliquant à l'affectation et à la répartition des résultats.

## II - QUORUM ET MAJORITE

**a) - Décisions extraordinaires**
Pour être valablement prises, les décisions extraordinaires exigent la présence ou la représentation d'associés détenant ensemble trois quarts au moins des parts sociales émises par la Société.
Elles sont adoptées à la majorité de trois quarts des parts sociales émises.
Toutefois le changement de la nationalité de la Société, la cession de la totalité de ses actifs, et l'augmentation de l'engagement des associés ne peuvent être décidés qu'à l'unanimité de tous les membres de la Société.

**b) - Décisions Ordinaires**
Pour être valablement prises, les décisions ordinaires exigent la présence ou la représentation d'associés détenant ensemble trois quarts au moins des parts sociales émises par la Société.
Elles sont adoptées à la majorité de trois quarts des parts sociales émises.

**c) - Absence de Quorum**
Si lors de la première convocation ou consultation, le quorum ci-dessus prévu n'est pas atteint, les associés sont, selon le cas, convoqués ou consultés une seconde fois sur le même ordre du jour, et les décisions sont valablement prises, savoir :
- pour les décisions extraordinaires à trois quarts des parts sociales présentes ou représentées ;
- pour les décisions ordinaires à trois quarts des parts sociales présentes ou représentées.

**d) - Société formée de deux associés**
Si la société vient à ne comprendre que deux associés toutes décisions ordinaires ou extraordinaires sont prises à l'unanimité.

## ARTICLE 25 - MODALITES

**I - Assemblées**
**a) - Initiative des Décisions**
Les décisions collectives sont prises à l'initiative de la gérance. En cas de pluralité de gérants, chacun d'eux doit informer le ou les autres de son intention de provoquer une décision collective. A défaut d'accord entre eux sur le libellé de l'ordre du jour et du texte du projet de résolution, le plus diligent d'entre eux fait arrêter l'ordre du jour et le texte des résolutions par le Président du Tribunal de Grande Instance statuant en la forme des référés et sans recours, tous gérants entendus. La décision de justice désigne alors celui des gérants chargé de provoquer la décision collective.
Tout associé non gérant peut, à tout moment, par lettre recommandée, demander à la gérance de provoquer une décision collective des associés sur une question déterminée.
Si la gérance fait droit à cette demande, elle provoque la décision nécessaire. Sauf si la question porte sur le retard d'un gérant à remplir l'une de ses obligations, la demande est considérée comme satisfaite lorsque la gérance accepte que la question soit inscrite à l'ordre du jour de la prochaine intervention collective des associés.

- Page N°15 -

- Si la gérance s'oppose à la demande ou garde le silence, l'associé demandeur peut, à l'expiration du délai d'un mois à dater de sa demande, solliciter du président du Tribunal de grande instance, statuant en la forme des référés, la désignation d'un mandataire chargé de provoquer les délibérations des associés selon toutes modalités prévues aux statuts.

- Les frais de convocation ou de consultation sont à la charge de la société.

**b) - Ordre du jour**

L'ordre du jour de l'assemblée est arrêté par l'auteur de la convocation.

Sous réserve des questions diverses, qui ne doivent présenter qu'une minime importance, les questions inscrites à l'ordre du jour sont libellées de telle sorte que leur contenu et leur portée apparaissent clairement, sans qu'il y ait lieu de se reporter à d'autres documents.

**c) - Modalités de la convocation - Droit de communication des associés**

Dispositions générales communes

Les convocations à une assemblée sont faites par lettres recommandées postées au moins quinze jours avant le jour fixé pour la réunion. La lettre contient l'indication de l'ordre du jour.

A la lettre de convocation sont joints le texte du projet de résolutions, le ou les rapports établis pour être présentés à l'assemblée ainsi que, s'il y a lieu, tous autres documents nécessaires à l'information des associés. Toutefois, pour limiter les frais de convocation, la gérance peut adresser ces documents par simple lettre.

A compter de cette communication, tout associé a le droit de poser par écrit des questions, auxquelles la gérance est tenue de répondre au cours de l'assemblée générale.

Pendant le délai de quinze jours qui précède l'assemblée, les mêmes documents sont tenus au siège social à la disposition des associés, qui peuvent en prendre connaissance ou copie.

En cas de démembrement de la propriété des parts, la convocation devra être adressée tant aux usufruitiers qu'aux nus-propriétaires.

Dispositions particulières aux assemblées statuant sur les comptes sociaux

Le rapport de la gérance et les comptes sociaux sont soumis à l'approbation de l'assemblée. A cette fin, le texte des résolutions proposées et, le cas échéant, le rapport des commissaires aux comptes, ainsi que les documents ci-dessus visés, à l'exception de l'inventaire, sont adressés aux associés, quinze jours au moins avant la date de l'assemblée ; l'inventaire est tenu, dans le même délai, au siège social, à la disposition des associés, qui ne peuvent en prendre copie.

**d) - Réunion de l'Assemblée - Représentation**

L'Assemblée peut être réunie à tout moment chaque fois que l'intérêt social le demande; cependant, chaque année doit obligatoirement être réuni, dans les six mois de la clôture de l'exercice, une assemblée générale appelée à statuer sur les comptes de l'exercice.

L'assemblée est présidée par le gérant associé présent le plus âgé ou par le mandataire de justice ayant procédé à la convocation ; à défaut, par l'associé présent et acceptant le plus âgé titulaire et représentant le plus grande nombre de parts sociales ou, en cas de refus, par un associé désigné par l'assemblée. L'assemblée peut désigner un secrétaire, associé ou non ; à défaut, le président de séance assume lui-même le secrétariat de l'assemblée.

Il n'est pas désigné de scrutateurs, à moins que la société ne vienne à comprendre plus de dix associés, auquel cas le président de séance désigne le scrutateur au sein des membres de l'assemblée.

Chaque associé a le droit de participer et dispose d'un nombre de voix égal à celui des parts sociales qu'il possède. Chaque associé peut se faire représenter à l'assemblée par un mandataire associé (sauf si les associés sont au nombre de deux seulement) ou par son conjoint justifiant d'un pouvoir spécial, étant bien entendu qu'un mandataire ne peut représenter plus de trois associés. Toutefois, un associé ne peut constituer un mandataire pour voter du chef d'une partie de ses parts et voter en personne du chef de l'autre partie.

Les représentants légaux d'associés juridiquement incapables peuvent participer au vote même s'ils ne sont pas eux-mêmes associés.



- Page N°16 -

Le représentant légal d'une personne morale associée peut déléguer tel mandataire spécial de son choix en conformité des statuts de cette personne morale.

Le mandat de représentant d'un associé est donné pour une seule assemblée. Il peut cependant être donné pour deux assemblées tenues le même jour ou dans un délai de sept jours.

Le mandat donné pour une assemblée vaut pour les assemblées successives convoquées avec le même ordre du jour.

### II - Consultations écrites

En cas de consultation écrite, la gérance notifie, en double exemplaire, à chaque associé, par lettre recommandée avec demande d'avis de réception, le texte du projet de chaque résolution en le priant d'en retourner un exemplaire, daté et signé, avec indication au pied de chaque résolution, des mots écrits de la main de l'associé "adoptée" ou "rejetée", étant entendu qu'à défaut de telles mentions, l'associé est réputé s'être abstenu sur la décision à prendre au sujet de la résolution concernée.

A cette demande de consultation écrite sont joints, le rapport des gérants, ainsi le cas échéant celui des commissaires aux comptes et s'il y a lieu, tous autres documents nécessaires à l'information des associés.

Toutefois, pour limiter les frais de convocation la gérance peut adresser ces documents par simple lettre à l'exception de la notification du texte des projets de résolutions.

A compter de cette notification, les mêmes documents sont tenus au siège social à la disposition des associés qui peuvent en prendre connaissance ou copie.

Tout associé a le droit de poser par écrit des questions relatives à cette consultation, auxquelles la gérance est tenue de répondre dans les huit jours de leur réception.

L'associé dispose d'un délai minimum de quinze jours à compter de la date de réception des documents nécessaires à son information, pour émettre son vote et celui-ci, pour être retenu, doit parvenir au siège de la société dans les trente jours à compter de la date d'envoi de la consultation. La lettre de consultation fait mention de ce délai.

Tout associé qui n'aura pas adressé sa réponse dans les délais ci-dessus sera considéré comme s'étant abstenu.

En cas de démembrement de la propriété des parts, la convocation devra être adressée tant aux usufruitiers qu'aux nus-propriétaires.

### ARTICLE 26 - EFFETS DES DECISIONS COLLECTIVES

Les décisions collectives régulièrement prises obligent tous les associés, mêmes absents, dissidents ou incapables.

### ARTICLE 27 - CONSTATATION DES DELIBERATIONS

Les délibérations de l'assemblée générale sont constatées par des procès-verbaux établis sur un registre spécial des délibérations prévu à l'article 45 du décret numéro 78-704 du 3 juillet 1978, tenu au siège social, daté et paraphé, ou sur feuilles mobiles numérotées, paraphées, scellées et enliassées, en conformité des dispositions légales et réglementaires.

Les actes sous seing privé ou les procès-verbaux authentiques exprimant les décisions collectives des associés sont également mentionnés, à leur date respective, sur ledit registre. Les mentions contiennent obligatoirement l'indication de la forme, de l'objet et des signataires de cet acte. Le document est lui-même conservé par la société pour en permettre la consultation en même temps que le registre.

Le procès verbal de délibération indique la date et le lieu de la réunion, les nom, prénoms et qualité du président de séance, les noms et prénoms des associés présents, le nombre de parts détenues par chacun d'eux, les documents et rapports soumis à discussion, un résumé des débats, le texte des résolutions mises aux voix et le résultat du vote. Le procès-verbal est établi et signé par les gérants et, s'il y a lieu, le président de séance. Il est également signé par les associés présents ou, si le procès-verbal ne doit pas être établi à l'issue de la séance, le président de séance fait établir une feuille de présence qui est signée par tous les associés présents et les mandataires puis certifiée exacte par les membres du bureau de l'assemblée.

- Page N°17 -

En cas de consultation écrite, il en est fait mention dans le procès verbal auquel est annexée la réponse de chaque associé ainsi que de la justification du respect des formalités prévues supra à l'article 25. Le procès-verbal est signé par les gérants.

Les copies ou extraits de procès-verbaux des décisions collectives des associés sont valablement certifiés conformes par un gérant, ou par les liquidateurs ou, s'ils sont plusieurs, par un seul d'entre eux, après dissolution de la société, pendant la période de liquidation.

## TITRE VI

### ANNEE SOCIALE - COMPTES ET RESULTATS SOCIAUX

#### ARTICLE 28 - EXERCICE SOCIAL
Chaque exercice social a une durée d'une année, qui commence le 1er janvier et finit le 31 décembre.

Par exception, le premier exercice sera clos le 31 décembre 2011.

#### ARTICLE 29 - COMPTABILITE - COMPTES ANNUELS - DOCUMENTS COMPTABLES
- La gérance doit tenir une comptabilité conforme aux usages en vigueur.

A cet effet, en fonction de l'importance et de la nature de l'activité de la société, il pourra être tenu soit :

. une comptabilité en partie double conforme au plan comptable national,

. une comptabilité en partie double conforme au plan comptable particulier applicable à l'activité définie dans l'objet social,

une comptabilité simple enregistrant les recettes et les dépenses.

- Les comptes de l'exercice écoulé sont présentés pour approbation aux associés dans le rapport écrit d'ensemble des gérants sur l'activité sociale pendant l'exercice écoulé dans les six mois de la date de clôture de la période de référence et au moins une fois par an. Le rapport est joint à la lettre de convocation. En cas de constatation de la décision par acte signé de tous les associés, cet acte doit contenir mention expresse de la notification du rapport faite à chaque associé, au moins quinze jours avant la date d'intervention de cet acte.

#### ARTICLE 30 - RESULTATS - AFFECTATION ET REPARTITION

**I - Amortissements et provisions**
Même en cas d'absence ou d'insuffisance de bénéfices, il pourra être procédé aux amortissements et provisions.

**II - Résultats**
Les produits nets de l'exercice déduction faite des frais généraux et autres charges de la société, constituent les bénéfices nets.

Le bénéfice distribuable de l'exercice est déterminé par les associés.

**III - Affectation et répartition**
Après approbation du rapport d'ensemble du ou des gérants, des comptes et constatation de l'existence de sommes distribuables, la collectivité des associés détermine la part à distribuer aux associés et celle à reporter à nouveau ou à inscrire à un poste de réserves.

Elle peut décider de porter tout ou partie du bénéfice distribuable à un ou plusieurs comptes de réserves facultatives, générales ou spéciales dont elle détermine le montant, l'emploi et la destination, ou de le reporter à nouveau.

- Page N°18 -

Elle peut en outre, après avoir constaté l'existence de réserves dont elle a la disposition, décider la distribution de sommes prélevées sur ces réserves. Dans ce cas, la décision indique expressément les postes de réserves sur lesquels les prélèvements sont effectués.

Les sommes dont la mise en distribution est décidée sont réparties entre les associés, proportionnellement au nombre de leurs parts sociales.

La collectivité des associés fixe les modalités de mise en paiement des sommes dont la distribution a été décidée ; à défaut ces modalités sont fixées par la gérance. Toutefois cette mise en paiement doit avoir lieu dans un délai maximal de neuf mois après la clôture de l'exercice.

Les pertes, s'il en existe, à défaut de leur compensation avec tout ou partie des réserves et du report à nouveau bénéficiaire des exercices antérieurs, sont portées à un compte -pertes antérieures- inscrit au bilan, pour être imputées sur les bénéfices des exercices ultérieurs. Les associés, par décision collective appropriée, peuvent encore décider la prise en charge de ces pertes selon toutes modalités qu'ils jugent opportunes, auquel cas elles sont supportées par chacun d'eux à proportion de sa participation au capital.

## TITRE VII

## MODIFICATIONS DU PACTE SOCIAL

### CHAPITRE 1 - AUGMENTATION DU CAPITAL

#### ARTICLE 31 - PRINCIPES
Le capital social est augmenté, soit par création de parts nouvelles, soit par majoration du montant nominal des parts existantes.

Les parts nouvelles sont libérées, soit en numéraire, soit par compensation avec des créances liquides et exigibles sur la société, soit par incorporation de réserves, bénéfices ou primes d'émission, soit par apports en nature.

Toute augmentation de capital fait l'objet d'une décision collective extraordinaire des associés prise dans les conditions prévues au titre V des présents statuts.

Toutefois, en cas d'augmentation de capital réalisée par voie d'élévation du montant nominal des parts existantes, à libérer en espèces, la décision doit être prise par l'unanimité.

En outre, si les souscripteurs-apporteurs sont mariés sous un régime de communauté il est fait application des dispositions de l'article 1832-2 du Code Civil dans les conditions prévues au Titre IX des présents statuts.

Il peut être créé des parts avec prime , dans ce cas, la décision collective des associés, portant augmentation du capital, fixe le montant de la prime et détermine son affectation.

#### ARTICLE 32 - AUGMENTATION DE CAPITAL EN NUMERAIRE
En cas de souscription de parts de numéraire, les associés organisent, s'ils le jugent opportun, toutes modalités de souscription, avec ou sans droit préférentiel à titre irréductible et réductible. La décision fixe les modalités de libération; à défaut, celle-ci intervient intégralement à la souscription.

#### ARTICLE 33 - AUGMENTATION DE CAPITAL EN NATURE
Si l'augmentation de capital est réalisée, soit en totalité, soit en partie, par des apports en nature, la décision des associés constatant la réalisation de l'augmentation du capital et la modification corrélative des statuts doit contenir l'évaluation de chaque apport en nature.

A défaut d'accord unanime des associés sur l'évaluation de chaque apport en nature il y est procédé au vu d'un rapport annexé à ladite décision et établi sous sa responsabilité par un expert préalablement nommé à l'unanimité des associés ou à défaut par ordonnance du Président du Tribunal de Grande Instance du lieu du siège social statuant sur registre de la gérance.

- Page N°19 -

## CHAPITRE 2 - REDUCTION DE CAPITAL

### ARTICLE 34 - MODALITES DE REDUCTION DU CAPITAL

La réduction de capital a lieu en vue de la résorption de pertes ou en vue, soit du remboursement, soit du rachat des parts sociales ou encore par voie d'attribution de biens sociaux.

Elle est autorisée par décision extraordinaire de la collectivité des associés statuant dans les conditions exigées pour la modification des statuts.

En aucun cas, cette réduction ne peut porter atteinte à l'égalité des associés.

S'il existe des commissaires aux comptes, le projet de réduction de capital leur est communiqué quarante-cinq jours au moins avant la date de la réunion de l'assemblée des associés appelée à statuer sur ce projet. Ils font connaître à l'assemblée leur appréciation sur les causes et conditions de la réduction.

Toute décision emportant, selon le cas, acceptation ou constatation du retrait d'un associé ou du non agrément des héritiers, légataires d'un associé décédé ou les dévolutaires des parts d'un associé dont la personnalité morale est disparue, vaut réduction de capital au moyen de l'annulation des parts sociales concernées à hauteur de la valeur nominale de celles de ces parts qui ne seraient pas rachetées par les associés ou toute autre personne dûment agréée la gérance ayant tout pouvoir pour régulariser l'opération et la rendre opposable aux tiers.

## CHAPITRE 3 - TRANSFORMATION DE LA SOCIETE

### ARTICLE 35 - MODALITES

La transformation de la présente société en société ou en groupement d'une autre forme exige l'accord unanime des associés.

## TITRE VIII

## DISSOLUTION - LIQUIDATION

### ARTICLE 36 - DISSOLUTION

La dissolution de la Société intervient de plein droit à l'expiration de sa durée ou, avant cette date, par décision collective des associés, ou encore pour toutes autres causes prévues par la loi ou le cas échéant celles évoquées aux présents statuts.

La Société n'est pas dissoute par le décès, l'incapacité, la déconfiture, la faillite personnelle, la liquidation des biens, le redressement judiciaire, la dissolution ou la disparition de la personnalité morale d'un ou plusieurs associés, ni par la cessation des fonctions d'un gérant.

La dissolution anticipée peut également être prononcée à toute époque par décision collective extraordinaire des associés statuant à la majorité exigée pour la modification des statuts.

### ARTICLE 37 - LIQUIDATION

#### I - Effets de la dissolution

La Société se trouve en liquidation par l'effet et à l'instant de sa dissolution, à moins que celle-ci n'intervienne en suite de fusion ou de scission.

La dissolution n'a d'effet à l'égard des tiers qu'après sa publication.

A compter de la dissolution, la dénomination suivie de la mention "société en liquidation" puis du nom du ou des liquidateurs, figure sur tous documents émanant de la société et destinés aux tiers, notamment lettres, factures, annonces et publications diverses.

La personnalité morale de la société subsiste néanmoins pour les besoins de cette liquidation jusqu'à la publication de sa clôture.



- Page N°20 -

**II - Nomination et mission du liquidateur**

La Société est liquidée par le ou les gérants en exercice lors de la survenance de la dissolution.

Les associés peuvent toutefois préférer nommer, par décision collective ordinaire, un ou plusieurs autres liquidateurs dont elle détermine les pouvoirs et la rémunération.

Ces derniers accomplissent leur mission jusqu'à clôture de la liquidation, sous réserve de ce qui est dit à l'alinéa qui suit. Si le mandat de liquidateur vient à être totalement vacant et faute par les associés d'avoir pu procéder à la ou aux nominations nécessaires, il est procédé à la nomination d'un ou plusieurs liquidateurs par décision de justice à la demande de tout intéressé.

Si la clôture de la liquidation n'est pas intervenue dans un délai de trois ans à compter de la dissolution, le ministère public ou tout intéressé peut saisir le tribunal qui fait procéder à la liquidation ou, si celle-ci a été commencée, à son achèvement.

Le ou les liquidateurs peuvent être révoqués ou remplacés par décision collective des associés, de nature ordinaire ; la nomination et la révocation d'un liquidateur ne sont opposables aux tiers qu'à compter de leur publication.

Ni la société ni les tiers ne peuvent, pour se soustraire à leurs engagements, se prévaloir d'une irrégularité dans la nomination ou dans la révocation du liquidateur, dès lors que celles-ci ont été régulièrement publiées.

Les liquidateurs, s'ils sont plusieurs, agissent ensemble ou séparément. Chaque liquidateur représente la société dans ses relations avec les tiers. Il dispose de tous pouvoirs pour céder tous éléments d'actif, à l'amiable ou autrement, en bloc ou isolément, selon toutes conditions de prix et de règlement jugées opportunes ; Il poursuit s'il le juge opportun les affaires en cours lors de la dissolution jusqu'à leur bonne fin mais ne peut, sans autorisation de la collectivité des associés, en entreprendre de nouvelles. Il reçoit tous règlements, donne valable quittance, paie les dettes sociales, consent tous arrangements, compromis, transactions et, plus généralement, fait tout ce qui est nécessaire pour la bonne fins des opérations de liquidations.

Le liquidateur ou les liquidateurs, agissant ensemble, rendent compte aux associés de l'accomplissement de leur mission une fois par an sous forme d'un rapport écrit décrivant les diligences effectuées pendant l'année écoulée.

**III - Responsabilité des liquidateurs**

Le ou les liquidateurs sont responsables à l'égard de la société et des tiers, des conséquences dommageables des fautes par eux commises dans l'exercice de leurs fonctions.

**IV - Droits et obligations des associés**

Pendant la liquidation, les associés conservent toutes leurs prérogatives, notamment celles relatives à l'information et aux prises de décisions collectives. Le ou les associés liquidateurs peuvent prendre part aux décisions collectives.

Les liquidateurs sont substitués aux gérants pour exercer en leur lieu et place leurs fonctions telles qu'elles résultent des présents statuts. Tous documents soumis aux associés sont obligatoirement établis et présentés en commun.

**V - Commissaires aux comptes**

La dissolution de la société ne met pas fin aux fonctions des commissaires aux comptes, s'il en existe.

**VI - Clôture de la liquidation - Répartition - Attributions**

La décision de clôture de la liquidation est prise par les associés après approbation des comptes définitifs de la liquidation. A défaut d'approbation des sommes ou si la consultation s'avère impossible, il est statué sur les comptes et, le cas échéant, sur la clôture de la liquidation, par le Tribunal de Grande Instance à la demande du liquidateur ou de tout intéressé.

Les comptes définitifs, la décision des associés et, s'il y a lieu, la décision judiciaire prévue à l'alinéa précédent sont déposés au greffe du Tribunal de commerce, en annexe au registre du Commerce et des Sociétés.

- Page N°21 -

La radiation au registre du commerce et des sociétés ne peut être obtenue que sur justification de l'accomplissement des formalités ci-dessus ainsi que de la publication dans le journal d'annonces légales ayant reçu l'avis de nomination du liquidateur, de l'avis de clôture contenant les indications prescrites par l'article 29 du décret numéro 78-704 du 3 juillet 1978.

Après approbation des comptes définitifs de liquidation, il est procédé aux répartitions entre ex-associés, de l'actif net existant, ou boni de liquidation, dans la même proportion que leur participation aux bénéfices, après paiement des dettes et remboursement du capital social.

Il est fait application des règles concernant le partage des successions y compris l'attribution préférentielle ainsi, le cas échéant, que des dispositions de l'article 1844-9 du Code Civil relatives aux attributions en nature.

Tout bien apporté qui se retrouve en nature dans la masse partagée est attribué, sur sa demande et à charge de soulte, s'il y a lieu, à l'associé qui en avait fait l'apport. Cette faculté s'exerce avant tout autre droit à une attribution préférentielle.

Si les résultats de la liquidation font apparaître un mali, celui-ci est supporté par les associés dans la même proportion que le boni.

Tous pouvoirs sont conférés, en tant que de besoin, au liquidateur pour opérer toutes répartitions.

### TITRE IX

### PERSONNALITE MORALE - REPRISE DES

### ENGAGEMENTS - FORMALITES - MANDAT - FRAIS

### DECLARATIONS - ELECTION DE DOMICILE

I - La société ne jouira de la personnalité morale qu'à dater de son immatriculation effectuée selon les prescriptions réglementaires au Registre du Commerce et des Sociétés.

Jusqu'à l'intervention de l'immatriculation, les relations entre associés seront régies par les dispositions de l'article 1842 du Code Civil, c'est-à-dire par celles des présents statuts et par les principes du droit applicables aux contrats et obligations.

Les personnes qui agiront au nom de la Société en formation avant intervention de l'immatriculation seront tenues des obligations nées des actes ainsi accomplis, sans solidarité.

La Société, régulièrement immatriculée, peut reprendre les engagements souscrits, qui sont alors réputés avoir été dès l'origine contractés par elle.

II - En attendant l'accomplissement de la formalité d'immatriculation de la Société au Registre du Commerce et des Sociétés, les associés comparants donnent mandat exprès au gérant, ici intervenant et qui accepte, de réaliser immédiatement, pour le compte de la Société, les actes et engagements suivants jugés urgents dans l'intérêt social, savoir :
- ouvrir tous comptes bancaires ou postaux,
- négocier et obtenir toutes avances en compte-courant nécessaires pour le démarrage de la société,
- acquérir tout matériel nécessaire au fonctionnement de la société, matériel de bureau, mobilier et autres ; négocier et obtenir tous financements nécessaires à ce sujet,
- souscrire toutes assurances, engager le personnel et faire en général le nécessaire pour un bon démarrage de la société.

Aux effets ci-dessus passer et signer tous actes et pièces, faire toutes déclarations et affirmations, élire domicile, substituer en tout ou en partie et généralement faire le nécessaire.

III - En outre, et dès à présent, les associés donnent tous pouvoirs à :
- la gérance,
- tous clercs et collaborateurs de l'Office notarial de COURCHEVEL,
Avec faculté d'agir ensemble ou séparément,



- Page N°22 -

A l'effet de réaliser les actes et engagements rentrant dans le cadre de l'objet social et de ses pouvoirs et notamment acquérir l'immeuble ci-dessous désigné

**Commune de SAINT BON TARENTAISE (73120)**

Un mazot dénommé «APOUTSIAK» situé à COURCHEVEL 1850, lotissement dit «des GRENIERS» Comprenant :

- au rez-de-chaussée : salle, cuisine – salle d'eau –
- au sous-sol : salle de séjour, cuisine et salle d'eau –

Terrasse

Terrain

**Formant le lot numéro 355 du lotissement dit « des GRENIERS »** approuvé par arrêtés préfectoraux des 11 février 1954 et 12 octobre 1954.

Ledit bien est constitué, savoir :

- d'une parcelle sur laquelle est édifié le mazot figurant au cadastre :

Section AC, numéro 76, lieudit  « Bellecôte »,  pour une contenance de VINGT CENTIARES (20ca),

- et d'une partie de la parcelle cadastrée en BND – Bien Non Délimité :

Section AC, numéro 514, lieudit « Bellecôte » d'une contenance totale de QUATRE-VINGT ARES QUATRE-VINGT CENTIARES (80a 80ca),

Soit une superficie de   UN ARE QUATRE-VINGT-DIX CENTIARES (1a 90ca) correspondant à la surface complémentaire du lot 355.

Moyennant le prix principal de · NEUF CENT CINQUANTE MILLE EUROS (950000,00 EUR.) payable comptant.

Conformément à l'article 6, alinéa 3, du décret numéro 78-704 du 3 juillet 1978, les actes et engagements seront repris par la société, par le seul fait de son immatriculation au Registre du Commerce et des Sociétés et seront réputés avoir été contractés par elle dès l'origine.

Au cas où l'immatriculation de la Société n'interviendrait pas dans un délai expirant le 30 mai 2011, lesdits actes seraient réputés accomplis pour et dans l'intérêt de chacun des associés, solidairement entre eux, vis à vis des tiers, mais dans la proportion de leurs droits dans le capital de la présente société.

IV - Conformément à l'article  6, alinéa 4, du décret numéro 78-704 du 3 juillet 1978, tous les actes et engagements souscrits pour le compte de la société, autres que ceux énumérés ci-dessus, devront après immatriculation de la société être soumis à l'approbation de l'assemblée générale ordinaire des associés appelée à statuer sur les comptes du premier exercice social.

Cette approbation emportera de plein droit reprise par la société desdits actes et engagements.

V - Tous pouvoirs sont donnés au gérant désigné ci-dessus, pour remplir toutes formalités de publicité prescrites par la loi et les règlements et notamment pour signer tous avis à insérer dans un journal d'annonces légales.

**FRAIS**

Les frais, droits et honoraires du présent acte et de ses suites seront pris en charge par la société.

**DECLARATIONS DES PARTIES**

Les personnes désignées ci-dessus sous le paragraphe "IDENTIFICATION DES ASSOCIES", déclarent, chacune en ce qui la concerne, par elle-même ou leur mandataire :

Avoir la pleine capacité d'aliéner ou de s'obliger;

Ne pas être en état de cessation de paiement et n'avoir fait l'objet d'aucune des mesures prévues par la loi numéro 67-563 du 13 juillet 1967 sur le règlement judiciaire, la liquidation de biens, la faillite personnelle et les banqueroutes ou les articles L. 620-1 et suivants du code de Commerce.

- Page N°23 -

### DECLARATIONS FISCALES
Sur la fiscalité des apports
Exonération de droit d'enregistrement s'agissant d'apports purs et simples en numéraire à une société non passible de l'impôt sur les sociétés (article 810 bis alinéa 1 du Code Général des Impôts).

Sur le régime fiscal de la Société :
Les associés décident que la société est soumise au régime des sociétés de personnes.

### ELECTION DE DOMICILE
Pour l'exécution du présent acte et des formalités y afférentes, les comparants font élection de domicile en l'Etude du notaire soussigné jusqu'à l'immatriculation de la Société au Registre du Commerce et des Sociétés, puis après immatriculation, les parties font élection de domicile au siège social de la Société.

### DONT ACTE sur 23 pages

Fait et passé en l'étude du notaire soussigné.
A la date indiquée en tête du présent acte.
La lecture du présent acte a été donnée aux parties et les signatures de celles-ci sur ledit acte ont été recueillies par le notaire soussigné,
Et le notaire a signé le même jour.

### Suivent les signatures :
- Monsieur Ilyas KHRAPUNOV, qualité et ès-qualités,
- Madame Christine ROUX, ès qualités,
- Maître Jean-François BOUDET, Notaire.

### Suivent les annexes :





The undersigned, JOHAN REINDER EGBERT KIELSTRA, civil law notary, residing at The Hague, The Netherlands, hereby certifies that the signature on the attached power of attorney is the signature of RUURD VAN WOLFSWINKEL, Managing Director, solely authorized to sign for and on behalf of the private limited liability company FTC TRUST B.V., which company is the Managing Director of the private limited liability company MADEL B.V. and solely authorized to sign for and on behalf of MADEL B.V.

The Hague, this 29th day of April 2011.

  

**A P O S T I L L E**

(Convention de La Haye du 5 octobre 1961)

1. Pays: LES PAYS-BAS
   Le présent acte public
2. a été signé par mr. J.R.E. Kielstra

3. agissant en qualité de notaire à 's-Gravenhage
4. est revêtu du sceau/timbre du notaire susnommé

Attesté

5. à 's-GRAVENHAGE          6. le 2-5-2011
7. par le greffier du tribunal
8. sous No. 2011-3211
9. Sceau/timbre:          10. Signature:

J.A. van der Heijden



- Page N°1

L'AN DEUX MILLE ONZE
LE 28 avril

Maître JOHAN REINDER EGBERT KIELSTRA

A reçu le présent acte authentique contenant **Procuration** à la requête de la ou des personnes ci-après désignées.

**REQUERANT**
La société dénommée **Madel B.V.**, société à responsabilité limitée de droit hollandais, au capital de 90000,00 Euros, dont le siège social est à Amsterdam, Schiphol Boulevard 231 WTC Toren B, 1118BH Luchtahaven Schipol, inscrite au registre des personnes morales d'AMSTERDAM sous le numéro 34284445.

Constituée suivant acte reçu par Maître JOHAN REINDER EGBERT KIELSTRA, notaire à La Hague, le 27.09.2007 publié à Amsterdam le 08.10.2007, sous le numéro
Les statuts ont été modifiés en date du 08.11.2010 s'agissant du changement de dénomination sociale de la société suivant acte reçu par Maître JOHAN REINDER EGBERT KIELSTRA, notaire à La Hague.

Représentée par Monsieur Iliyas KHRAPUNOV

agissant en sa qualité de fondé de procuration

et en vertu de la délibération du 20 avril 2011

Ci-après dénommé(e) "Le MANDANT".

Le mandant confirme l'exactitude des indications qui le concernent telles qu'elles figurent ci-dessus.
Il déclare en outre n'avoir fait l'objet d'aucune condamnation ou mesure entraînant l'interdiction de contrôler, diriger ou administrer une société.
Préalablement à la procuration objet des présentes le mandant expose ce qui suit :

## E X P O S E

Il a été projeté la constitution d'une société ayant les caractéristiques suivantes :
- Forme: Société civile



- Dénomination  ANIDAM
- Objet Social: acquisition, administration et gestion par location ou autrement de tous immeubles et biens immobiliers et notamment de l'immeuble ci-après désigné ; emprunt de tous les fonds nécessaires à cet objet et mise en place de toutes sûretés réelles ou autres garanties nécessaires ; exceptionnellement aliénation des immeubles devenus inutiles à la société, notamment au moyen de vente, échange ou apport en société ; et plus généralement toutes opérations financières, mobilières ou immobilières se rattachant directement ou indirectement à cet objet et susceptibles d'en faciliter la réalisation, à condition toutefois, d'en respecter le caractère civil.
- Siège Social: SAINT-BON-TARENTAISE (73120), COURCHEVEL 1850, lotissement dit «des GRENIERS», mazot dénommé «APOUTSIAK».
- Capital Social: 5.000,00 euros,
Divisé en 5.000 parts sociales de 1,00 euro chacune.
Le capital social ne comprenant que des apports en numéraire.

Ceci exposé, il est passé à la procuration objet des présentes.

**MANDAT**
Par les présentes, le mandant constitue pour son mandataire spécial :

Monsieur Iliyas KHRAPUNOV, né à ZHAMBYLSKAYA (KAZAKHSTAN), le 15 janvier 1984, époux de Madame Madina ABLYAZOVA, demeurant à 1209 GENEVE (SUISSE), Chemin du petit Saconnex, 286.

Ou tout clerc ou employé de la Société Civile Professionnelle "Jean-François BOUDET & Dominique PERALDI, Notaires Associés", titulaire d'un Office Notarial à la Résidence de COURCHEVEL, Commune de SAINT BON TARENTAISE (Savoie),

Avec faculté d'agir ensemble ou séparément.

A qui il donne pouvoir de pour lui et en son nom :

## 1°) PARTICIPER A LA CONSTITUTION DE LA SCI ANIDAM
- Faire apport en numéraire d'une somme de QUATRE MILLE NEUF CENT QUATRE VINGT DIX NEUF EUROS (4.999,00 €) moyennant l'attribution de 4.999,00 parts sociales ; faire toutes déclarations sur l'origine de cet apport et notamment, s'il s'agit de biens communs, celles visées par les dispositions de l'article 1832-2 du Code Civil ;
- Effectuer le versement de ladite somme dans les conditions fixées aux statuts ,
- Etablir les statuts de la société en conformité avec les dispositions légales et règlementaires ,
- Faire toutes déclarations sur la souscription, la libération et la répartition des parts sociales, stipuler toutes clauses relatives à la cession à titre onéreux et à la transmission entre vifs ou par décès des parts sociales ; nommer le ou les gérants , déterminer la durée de leurs fonctions, leurs pouvoirs dans leurs rapports avec les associés, ainsi que leur rémunération ; accepter les fonctions de gérant ; prendre toutes décisions, donner toutes autorisations et, le cas échéant, conférer tous pouvoirs pour permettre la réalisation et la prise en charge par la société des actes et engagements rentrant dans son objet pendant la période antérieure à son immatriculation au registre du commerce.

## 2°) ACQUERIR au nom de la société susvisée, de
Madame Martine CENTAZZO, née à VITRY SUR SEINE (94400), le 6 juin 1952, publicitaire, épouses en secondes noces de  Monsieur François HUARD, demeurant à PARIS (75016), 65 rue Saint Didier.

L'immeuble dont la désignation suit :

- Page N°3 -

Commune de SAINT BON TARENTAISE (73120)
Un mazot dénommé «APOUTSIAK» situé à COURCHEVEL 1850, lotissement dit «des GRENIERS»

Comprenant
- au rez-de-chaussée : salle, cuisine – salle d'eau –
- au sous-sol  salle de séjour, cuisine et salle d'eau –
Terrasse
Terrain
Formant le lot numéro 355 du lotissement dit « des GRENIERS » approuvé par arrêtés préfectoraux des 11 février 1954 et 12 octobre 1954.

Ledit bien est constitué, savoir :
- d'une parcelle sur laquelle est édifié le mazot figurant au cadastre :
Section AC, numéro 76, lieudit   « Bellecôte », pour une contenance de VINGT CENTIARES (20ca),
- et d'une partie de la parcelle cadastrée en BND – Bien Non Délimité :
Section AC, numéro 514, lieudit « Bellecôte » d'une contenance totale de QUATRE-VINGT ARES QUATRE-VINGT CENTIARES (80a 80ca),
Soit une superficie de   UN ARE QUATRE-VINGT-DIX CENTIARES (1a 90ca) correspondant à la surface complémentaire du lot 355.

Moyennant le prix principal de   NEUF CENT CINQUANTE MILLE EUROS (950000,00 EUR.) payable comptant.

Et aux charges et conditions que le mandataire jugera convenables.

EN CONSEQUENCE et notamment :
Convenir du mode et des époques de paiement ;
Payer le prix soit comptant soit aux termes convenus ;
Fixer la date d'entrée en jouissance ;
Obliger le mandant à l'exécution de toutes les charges et conditions qui seront stipulées ;
Faire toutes déclarations et affirmations prescrites par la loi ; faire notamment toutes déclarations nécessaires en vue de bénéficier de tous allégements fiscaux prévus par la loi ;
Exiger toutes justifications ;
Se faire remettre tous titres et pièces, en donner décharge,
Faire opérer toutes formalités de publicité foncière et toutes dénonciations, notifications et offres de paiement; provoquer tous ordres ;

Aux effets ci-dessus, signer les statuts, ainsi que tous autres actes, pièces et procès verbaux relatifs à la constitution de la Société, remplir les formalités de publicité et autres, faire toutes déclarations et affirmations, élire domicile, substituer et généralement faire le nécessaire.



- Page N°4 -

Entendant que la signature des actes vaille décharge au mandataire.

**DONT ACTE en brevet sur 4 pages.**

Fait et passé en l'étude du notaire soussigné
A la date sus-indiquée.
Et, après lecture faite, le MANDANT a signé avec le notaire.

Les parties approuvent expressément

Renvois : 0
Mots rayés nuls  0
Chiffres rayés nuls : 0
Lignes entières rayées nulles : 0
Barres tirées dans les blancs : 0



Madel B.V
par: FTC Trust B.V.
intitulé: Director
représenté par: Ruurd van Wolfswinkel









## AANDEELHOUDERSBESLUIT

**De ondergetekende:**

Madel B.V., een besloten vennootschap met beperkte aansprakelijkheid, opgericht en bestaand naar Nederlands recht, statutair gevestigd in Amsterdam en kantoor houdende te WTC Schiphol Airport, Toren B, 5<sup>de</sup> verdieping, Schiphol Boulevard 231, 1118 BH Amsterdam Schiphol, Nederland, deze laatstgenoemde vennootschap hierna te noemen "de Vennootschap";

### OVERWEGENDE DAT

Geen vruchtgebruik of pandrechten zijn gevestigd op de aandelen en geen geregistreerde certificaten van aandelen zijn uitgegeven met medewerking van de Vennootschap;

### OVERWEGENDE DAT

de statuten van de Vennootschap en het Burgerlijk Wetboek bepalen dat besluiten van de directie in plaats van op algemene vergaderingen ook schriftelijk mogen worden aangenomen, mits dit geschiedt met unanieme stemmen van alle personen die bevoegd zijn om stemrechten uit te oefenen;

### BESLUIT HIERBIJ

Een Franse onroerendgoedmaatschappij op te richten, te noemen "SCI Anidam", met als doel deze Franse vennootschap van mw. Martine Centazzo een chalet genaamd "Apoutsiak" te 1850 Courcevel, Frankrijk, gelegen in "Des Greniers", over te laten nemen.

Dhr. Iliyas Khrapunov te benoemen als vertegenwoordiger ten behoeve van de ondertekening van de documenten betreffende de oprichting van genoemde "SCI Anidam";

Dhr. Iliyas Khrapunov te benoemen als haar vertegenwoordiger na de overname van het bovengenoemde chalet.

TEN BLIJKE WAARVAN dit besluit is aangenomen op 20 april 2011

[handtekening]
Madel B.V.
Door: FTC Trust B.V.
Functie: Directeur
Vertegenwoordigd door: Ruurd van Wolfswinkel



**A P O S T I L L E**

(Convention de La Haye du 5 octobre 1961)

1. Pays: LES PAYS-BAS
   Le présent acte public
2. a été signé par J. Schoo

3. agissant en qualité de traducteur juré
4. est revêtu du sceau/timbre du traducteur susnommé

Attesté

5. á 's-GRAVENHAGE          6. le 13-5-2011
7. par le greffier du tribunal
8. sous No. 2011-3524
9. Sceau/timbre:            10. Signature:

                            S.P.C. Maduro....an

Ondergetekende, dhr. J. Schoo BAA, beëdigd als vertaler voor de Engelse taal door de Arrondissementsrechtbank te Amsterdam onder nummer 830533, geregistreerd in het Register Beëdigde Tolken en Vertalers (RBTV) onder nummer 3113, verklaart hierbij, dat de door hem vervaardigde vertaling volledig is en inhoudelijk naar zijn beste weten overeenstemt met de brontekst.



# SHAREHOLDERS RESOLUTION

**The undersigned:**

**Madel B.V.,** a private company with limited liability, incorporated and existing under the laws of the Netherlands, having its statutory seat at Amsterdam and its registered office at WTC Schiphol Airport, B Tower, 5th floor, Schiphol Boulevard 231, 1118 BH Amsterdam Schiphol, the Netherlands, this last mentioned company hereinafter referred to as "the Company";

## WHEREAS

no usufruct or pledges have been created on the shares and no registered depository receipts of shares have been issued with the co-operation of the Company;

## WHEREAS

the Articles of Association of the Company and the Dutch Civil Code provide that resolutions of the board of directors may, instead of at general meetings, also be adopted in writing, provided with unanimous votes of all persons entitled to exercise voting rights;

## DOES HEREBY RESOLVE

To set up a French real estate company, to be named "SCI Anidam" for the purpose of having that French company to acquire from Mrs Martine Centazzo, a chalet, named "Apoutsiak" in 1850 Courcevel, France, located in "Des Greniers";

To appoint Mr Iliyas Khrapunov as its representative for the signing of the documents relate to the incorporation of said "SCI Anidam";

To appoint Mr Iliyas Khrapunov as its representative upon the acquisition of the aforementioned chalet.

IN WITNESS WHEREOF this resolution has been adopted on the 20th day of April 2011

Madel B.V.
By: FTC Trust B.V.
Title: Director
Represented by: Ruurd van Wolfswinkel

# RÉSOLUTION DES ACTIONNAIRES

**Les soussignés :**

Madel B.V., une société privée à responsabilité limitée, constituée et existant selon le droit néerlandais, ayant son siège statutaire à Amsterdam et son siège social à WTX Schiphol Airport, B Tower, 5th Floor, Schiphol Boulevard 231, 1118 BH Amsterdam Schiphol, Pays-Bas, cette dernière société étant ci-après désignée comme « la Société ».

**CONSIDÉRANT QUE**

Aucun usufruit ni nantissement n'a été créé sur les actions et qu'aucun certificat représentatif de parts sociales n'a été émis avec la coopération de la Société ;

**ET QUE**

Les statuts de la Société et le Code Civil Hollandais disposent que les résolutions du conseil d'administration peuvent, au lieu de résolutions de l'assemblée générale, être aussi adoptées par écrit sous réserve d'obtenir l'unanimité des voix de toutes les personnes habilitées à exercer des droits de vote ;

**RÉSOLVENT PAR LA PRÉSENTE**

D'établir une société immobilière française du nom de « SCI Anidam » dans le but que cette société achète à Me Martine Centazzo un chalet nommé « Apoutsiak » situé à 1850 Courchevel, France au lieu-dit « Des Greniers » ;

De mandater M. Ilyas Khrapunov comme son représentant pour la signature des documents relatifs à la constitution de ladite société « SCI Anidam » ;

De mandater M. Ilyas Khrapunov comme son représentant lors de l'acquisition du chalet susmentionné.

EN FOI DE QUOI, cette résolution a été adoptée le 20 avril 2011.


[NDT : SIGNATURE]
_____

Madel B.V.
Par : FTC Trust B.V.
Fonction : Administrateur
Représenté par : Ruurd van Wolfswinkel



Annexé à la minute d'un acte
reçu par le Notaire soussigné
le 19 mai 2011

**LA SOUSSIGNEE :**

Madame Madina ABLYAZOVA, sans profession, épouse de Monsieur Ilyas KHRAPUNOV, demeurant à 1209 GENEVE (SUISSE), Chemin du petit Saconnex 286.

Née à ALMATY (KAZAKHSTAN), le 4 février 1988.

De nationalité kazakh.

Mariée sans contrat préalable à son union célébrée à la mairie d'ALMATY (KAZAKHSTAN), le 16 septembre 2007, et soumis au régime légal kazakh de la communauté équivalent au régime légal de la communauté d'acquêts de droit français ; ledit régime n'ayant subi aucune modification contractuelle ou judiciaire postérieure, ainsi déclaré.

Titulaire d'un passeport délivré le 31 juillet 2007 sous le numéro N5508556.

Laquelle, préalablement à la procuration spéciale, objet des présentes, a tout d'abord exposé ce qui suit ·

**E X P O S E**

Il a été projeté la constitution d'une société ayant les caractéristiques suivantes :

- Forme: Société civile

- Dénomination : ANIDAM

- Objet Social: acquisition, administration et gestion par location ou autrement de tous immeubles et biens immobiliers et notamment de l'immeuble ci-après désigné ; emprunt de tous les fonds nécessaires à cet objet et mise en place de toutes sûretés réelles ou autres garanties nécessaires ; exceptionnellement aliénation des immeubles devenus inutiles à la société, notamment au moyen de vente, échange ou apport en société ; et plus généralement toutes opérations financières, mobilières ou immobilières se rattachant directement ou indirectement à cet objet et susceptibles d'en faciliter la réalisation, à condition toutefois, d'en respecter le caractère civil.

- Siège Social: SAINT-BON-TARENTAISE (73120), COURCHEVEL 1850, lotissement dit «des GRENIERS», mazot dénommé «APOUTSIAK».

- Capital Social: 5.000,00 euros,

Divisé en 5.000 parts sociales de 1,00 euro chacune.

Le capital social ne comprenant que des apports en numéraire.

Les membres de cette société comprendront ·

1°) La société dénommée « Madel B.V », société à responsabilité limitée de droit hollandais, au capital de 90.000,00 Euros, dont le siège social est à AMSTERDAM (Hollande), Schiphol Boulevard 231 WTC Toren B, 1118BH Luchtshaven Schipol, inscrite auprès du Registre des Personnes Morales d'AMSTERDAM sous le numéro 34284445.

2°) Monsieur Iliyas KHRAPUNOV, businessman, époux de Madame Madina ABLYAZOVA, demeurant à 1209 GENEVE (SUISSE), Chemin du petit Saconnex 286.

Né à ZHAMBYLSKAYA (KAZAKHSTAN), le 15 janvier 1984.

De nationalité kazakh.

Marié sans contrat préalable à son union célébrée à la mairie d'ALMATY (KAZAKHSTAN), le 16 septembre 2007, et soumis au régime légal kazakh de la communauté

- Page N°2 -

équivalent au régime légal de la communauté d'acquêts de droit français , ledit régime n'ayant subi aucune modification contractuelle ou judiciaire postérieure, ainsi déclaré.

Titulaire d'un passeport délivré le 6 juillet 2007 sous le numéro N5454992.

Les parts sont librement cessibles entre associés ainsi qu'entre conjoints ou encore entre ascendants et descendants.

Toutes autres cessions sont soumises à agrément.

Les parts sociales sont librement transmissibles par voie de succession exclusivement aux héritiers en ligne directe, au conjoint survivant venant à la succession de l'associé décédé, au conjoint commun en biens d'un associé décédé et attributaire des parts communes dans la liquidation et le partage de la communauté, aux légataires qui ont en outre la qualité d'héritier en ligne directe ou de conjoint survivant.

Toutes autres transmissions de parts par voie successorale sont soumises à l'agrément des associés.

## COMPTABILITE - COMPTES ANNUELS - BENEFICES - AFFECTATION ET REPARTITION

Les comptes sociaux sont tenus conformément au Plan Comptable National.

Les bénéfices nets sont constitués par les produits nets de l'exercice, sous déduction des frais généraux et autres charges, en ce compris toutes provisions et amortissements.

Le bénéfice distribuable est constitué par le bénéfice net de l'exercice, diminué des pertes antérieures et augmenté des reports bénéficiaires.

Par décision collective, les associés, après approbation des comptes de l'exercice écoulé et constatation de l'existence d'un bénéfice distribuable, procèdent à toutes distributions, reports à nouveau, inscription à tous comptes de réserves dont ils fixent l'affectation et l'emploi.

Ils peuvent également décider la distribution de toutes réserves.

Les modalités de la mise en paiement sont fixées par la décision de répartition ou, à défaut, d'accord entre les gérants.

Les pertes, s'il en existe, selon décision des associés, sont compensées avec les réserves existantes ou reportées à nouveau.

## GERANT

Monsieur Illyas KHRAPUNOV, businessman, époux de Madame Madina ABLYAZOVA, demeurant à 1209 GENEVE (SUISSE), Chemin du petit Saconnex 286.

CET EXPOSE terminé, il est passé comme suit à la procuration objet des présentes.

## PROCURATION

Par les présentes, Madame Madina KHRAPUNOV, soussignée, constitue pour son mandataire spécial :

Tout clerc de Maître Jean-François BOUDET, notaire associé à COURCHEVEL, Commune de SAINT BON TARENTAISE (Savoie).

A qui elle donne pouvoir de pour lui et en son nom :

1/ Déclarer avoir été informé par son époux, en application des dispositions prévues à l'article 1832-2 du Code Civil, qu'il se propose de constituer la Société Civile dénommée en tête des présentes et d'y apporter les biens ci-après provenant de la communauté de biens existant entre eux.

Une somme d'argent d'UN EURO (1,00 €) provenant de ses revenus professionnels.

Ledit apport serait rémunéré par une (1) part sociale d'un euro (1,00 €), libérée entièrement.

La signature des statuts est prévu prochainement en l'Etude de Maître Jean-François BOUDET, notaire à COURCHEVEL.

- Page N°3 -

2/ Et intervenir à l'acte desdits statuts à l'effet de

- Reconnaître avoir été averti du projet de constitution de la présente Société et de la possibilité qui lui est donnée par l'article 1832-2 du Code Civil, d'entrer personnellement dans la dite société en qualité d'associé.

- Et déclarer ne pas vouloir user de la faculté qui lui est ainsi offerte et renoncer expressément à revendiquer la qualité d'associé dans la société susvisée.

En conséquence, la part qui sera créée en rémunération de l'apport de son conjoint sera attribuée en totalité à ce dernier, mais elle dépendra néanmoins de la communauté de biens existant entre Monsieur et Madame Iliyas KHRAPUNOV.

Aux effets ci-dessus, signer les statuts, ainsi que tous autres actes, pièces et procès verbaux relatifs à la constitution de la Société, faire toutes déclarations et affirmations, élire domicile, substituer et généralement faire le nécessaire.

Entendant que la signature des actes vaille décharge au mandataire.

Fait à ++++ *Geneve*
Le ++++ *09. 05. 2011*

*Bon pour pouvoir*

*Je soussigné, Marc Gillieron, avocat au
barreau de Geneve, Suisse, 3 rue
du Mont-Blanc, 1201 Geneve,
Suisse, atteste que Mme Holyagora
a signé le présent document
en ma présence.*

*Fait à Geneve, le 9 mai 2011.*



Vu pour légalisation de la signature apposée
ci-dessus par Maître Marc GILLIERON.
Genève, le 11 mai 2011



Fr. 2.50

BRECHBUHL & RODRIGUEZ
NOTAIRES
38, route de Malagnou - Case postale 426
1211 GENEVE 17
Tél. +41 22 707 15 00 - Fax +41 22 736 05 56
E-mail notaires@brnotaires.com



**APOSTILLE**
(Convention de la Haye du 5 octobre 1961)

1. Pays: Suisse

   Le présent acte public

2. a été signé par *Mr L. BRECHBUHL.*

3. agissant en qualité de *notaire*

4. est revêtu du sceau/timbre de .....................

.........................................................

Attesté

5. à Genève      6. le   **2 1 MAI 201..**

7. République et Canton de Genève

8. sous N°.    5 4 1 6

10. Signature

Melissa RODRIGUES
Commise administrative

- Page N°37 -

**POUR COPIE AUTHENTIQUE** rédigée sur 37 pages, délivrée et certifiée comme étant la reproduction exacte de l'original par le notaire soussigné, et ne comportant ni autre renvoi approuvé, ni autre blanc, ligne, mot ou chiffre rayé, et le notaire soussigné approuve la mention sus énoncée.