```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IN RE: APPLICATION OF JSC BTA BANK            :
FOR AN ORDER TO CONDUCT DISCOVERY                  OPINION AND ORDER
FOR USE IN FOREIGN PROCEEDINGS                :    21 Misc. 824 (GHW) (GWG)
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     JSC BTA Bank ("BTA") has applied pursuant to 28 U.S.C. § 1782 for an order authorizing BTA to issue and serve subpoenas duces tecum on The Clearing House Payments Company LLC ("Clearing House") and 13 banks. An individual named Ilyas Khrapunov has objected to the application and has moved to intervene.[1]

Background

     BTA seeks subpoenas to obtain evidence that would allow it to collect on judgments and enforce worldwide asset freezing orders previously rendered in its favor by the High Court of England and Wales, as well as to support ongoing and contemplated claims in England and elsewhere. See Kislin Decl. ¶¶ 2-51. All such claims, orders, and judgments arise out of Mukhtar Ablyazov's misappropriation and subsequent laundering of billions of dollars' worth of BTA's assets. See id. BTA asserts that Ablyazov and his son-in-law Ilyas Khrapunov have been and continue to be actively engaged in a sophisticated scheme to conceal Ablyazov's ill-gotten gains through a complex web of shell companies and financial transactions. See id. One such company, Panolos Limited ("Panolos"), is not yet subject to an English judgment and is at issue here. See id. ¶ 39.

     BTA contends that Panolos, a corporation registered in St. Vincent and the Grenadines, is beneficially owned by Khrapunov and, in 2014, was transferred a 99.98% interest in another shell company, Anidam, which in 2011 had purchased certain real property in France with illicit

---

[1] Ex Parte Application of JSC BTA Bank for Judicial Assistance Pursuant to 28 U.S.C. § 1782, filed Nov. 17, 2021 (Docket # 4) ("App."); Exhibits A1-A4 to App., filed Nov. 17, 2021 (Docket ## 4-1, 4-2, 4-3, 4-4) ("Original Subpoenas"); Declaration of Jason Kislin, filed Nov. 17, 2021 (Docket # 5) ("Kislin Decl."); Letter from Andrew Solomon, filed Nov. 26, 2021 (Docket # 10) ("Nov. 26 Letter"); Notice of Motion and Motion to Intervene, filed Nov. 30, 2021 (Docket # 12) ("Khrapunov Mot."); Letter from Jason Kislin, filed Nov. 30, 2021 (Docket # 13) ("Nov. 30 Letter"); Exhibit A to Nov. 30 Letter, filed Nov. 30, 2021 (Docket # 13-1) ("Proposed Subpoenas"); Exhibit B to Nov. 30 Letter, filed Nov. 30, 2021 (Docket # 13-2) ("Proposed Subpoena Redline"); Memorandum of Law in Opposition, filed Dec. 10, 2021 (Docket # 14) ("BTA Opp."); Reply Memorandum of Law, filed Dec. 14, 2021 (Docket # 15) ("Khrapunov Reply").

     The 13 banks are Bank of America, N.A.; Bank of China; The Bank of New York Mellon; BNP Paribas USA; Citibank, N.A.; Commerzbank AG; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JP Morgan Chase Bank, N.A.; Societe Generale; Standard Chartered Bank; UBS AG; and Wells Fargo Bank, N.A. See App. at 2.

funds. See id. ¶¶ 41-48. Anidam has since dissolved, and BTA notes that if the property was sold prior to the dissolution, "Panolos would have received the proceeds of said sale." Id. ¶ 49. "Given the propensity for individuals involved in the Ablyazov-Khrapunov Money Laundering Scheme to effect US dollar denominated transactions," BTA suspects that any such proceeds may "have been transferred from or passed through correspondent banks to the banks with which Panolos kept bank accounts." Id. ¶ 50. Moreover, BTA asserts that "given Panolos['] involvement in the Ablyazov-Khrapunov Money Laundering Scheme, information relating to US dollar denominated transactions from bank accounts owned by Panolos, or their correspondent banks, is likely to reveal information relevant to tracing the proceeds of the fraud against BTA, and may also identify additional potential defendants to BTA's equitable proprietary tracing claims before the English Courts." Id.

BTA's proposed subpoenas seek "all documents, communications, correspondence, or information relating to payment transactions, specifically CHIPS and intermediary bank payment messages, naming or referencing, or made by, through or on behalf of, any entity named 'Panolos' or containing 'Panolos' in the entity name."[2] Proposed Subpoenas.

Khrapunov filed a letter objecting to BTA's § 1782 request, see Nov. 26 Letter, and then filed a two-page document that purported to be a "Notice of Motion and Motion to Intervene," see Khrapunov Mot. We first address the motion to intervene and then address the application for discovery.[3]

Motion to Intervene

The Second Circuit has held that in the context of an application under section 1782, "parties against whom the requested information will be used may have standing to challenge the lawfulness" of the request. In re Application of Sarrio, S.A., 119 F.3d 143, 148 (2d Cir. 1997); accord In re Letter of Request from Crown Prosecution Serv. of United Kingdom, 870 F.2d 686, 689 (D.C. Cir. 1989).

Here, the records sought are Panolos's, not Khrapunov's. See Proposed Subpoenas. Nonetheless, as BTA's own application reveals, see Khrapunov Reply at 3-4, BTA intends to "amass evidence in respect of Panolos', as well as other entities and individuals', involvement in the Ablyazov-Khrapunov Money Laundering Scheme in an attempt to locate its assets as well as those assets of Ablyazov, Khrapunov and their other co-conspirators." Kislin Decl. ¶ 40 (emphasis added). In light of BTA's stated intention to use the records against Khrapunov, Khrapunov has satisfied his burden to intervene, see generally Kamdem-Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (citing Fed. R. Civ. P. 24) ("In seeking intervention under

---

[2] Following an Order from this Court, see Order of November 18, 2021 (Docket # 9), BTA altered the language of its original proposed subpoenas to that reflected in this Order. See Nov. 30 Letter at 1; Original Subpoenas; Proposed Subpoenas; Proposed Subpoena Redline.

[3] We note that a motion to intervene in the procedural posture of this case is not dispositive within the meaning of Fed. R. Civ. P. 72. See Chen-Oster v. Goldman, Sachs & Co., 2016 WL 11645644, at *2 (S.D.N.Y. June 6, 2016).

this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention."), and thus Khrapunov's motion (Docket # 12) is granted.

Application for Discovery

"In ruling on an application made pursuant to section 1782, a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012). Under section 1782(a), an application for discovery may be granted where: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Id.; accord 28 U.S.C. § 1782(a).

Each of section 1782(a)'s requirements are met here. First, BTA has provided evidence that each respondent bank maintains an office (in many cases, its corporate headquarters) and does business (including correspondent and intermediary banking) in the Southern District of New York. See Kislin Decl. ¶ 53; App. at 5-6.

Second, the requested discovery is for use in civil proceedings in at least one foreign tribunal: namely, the High Court of England and Wales. See Kislin Decl. ¶¶ 2, 17-40, 50-51. While Khrapunov insists that BTA's "subpoenas appear to be little more than post-judgment asset discovery on a judgment that has not been recognized in the United States," Nov. 26 Letter ¶ 4, "section 1782 relief may properly be granted to take discovery of assets in order to enforce an existing judgment provided that the applicant has adequately identified the proceeding and demonstrated that the materials sought could be employed to some advantage in the proceeding," In re Arida, LLC, 2020 WL 7496355, at *4 (S.D.N.Y. Dec. 21, 2020); accord Union Fenosa Gas, S.A. v. Depository Tr. Co., 2020 WL 2793055, at *3-6 (S.D.N.Y. May 29, 2020). The critical issue is whether the discovery sought is in fact "for use in" a foreign proceeding as the text of section 1782 requires. The Second Circuit has phrased the question as whether the applicant has shown that the discovery it seeks "will be employed with some advantage or serve some use in the [foreign] proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017). Thus, Euromepa, S.A. v. R. Esmerian, Inc., found that a request for discovery under section 1782 was not "for use in" a foreign proceeding where nothing in the foreign proceeding was "being adjudicated" but rather an "already extant judgment [was] merely being enforced." 154 F.3d 24, 28 (2d Cir. 1998).

Here, however, the discovery BTA's application seeks will "serve some use" in a foreign proceeding beyond merely enforcing existing judgments. BTA, through its attorney, states that "[w]ith the information that BTA anticipates obtaining through this application, BTA intends to seek the UK Court's permission to lift the stay [of the Khrapunov Proceedings] <u>in order to add additional defendants to the Khrapunov Proceedings and amend the relevant freezing orders to ensure that assets, once located, do not disappear before judgment is rendered</u>." Kislin Decl. ¶ 35 (emphasis added). BTA further states that its "case against Panolos in the UK is currently in the pre-trial discovery stage, and BTA is continuing to amass evidence in respect of Panolos', as well as other entities and individuals', involvement in the Ablyazov-Khrapunov Money

3

Laundering Scheme in an attempt to locate its assets as well as those assets of Ablyazov, Khrapunov and their other co-conspirators, <u>and to apply for worldwide freezing orders to ensure that such assets, once located, do not disappear before any future judgment is rendered.</u>" <u>Id.</u> ¶ 40 (emphasis added). BTA also explains that "the evidence sought[] is likely to reveal further details [regarding] the Ablyazov-Khrapunov Money Laundering Scheme . . . , which [BTA] can rely on as evidence <u>to prove the elements of fraud</u> in the English Proceedings, Khrapunov Proceedings[,] and the Contemplated Proceedings." <u>Id.</u> ¶ 51 (emphasis added).[4] Although BTA indicates that this evidence may also be utilized to prosecute both contemplated as well as ongoing claims, <u>see</u> App. at 7-8; Kislin Decl. ¶¶ 2, 40, 50-51, 54, section 1782 is applicable not only to ongoing proceedings but also to claims that are "within reasonable contemplation" at the time the discovery is sought. <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 259 (2004).

Finally, the instant application is made by a litigant in the underlying proceedings before the High Court of England and Wales — BTA — which is obviously a party "interested" in those proceedings. <u>See</u> App. at 8; <u>Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.</u>, 798 F.3d 113, 119 (2d Cir. 2015) (term "interested person" includes, among others, litigants).

Once section 1782(a)'s requirements are met, "a district court is free to grant discovery in its discretion." <u>In re Application for an Order Permitting Metallgesellschaft AG to take Discovery</u>, 121 F.3d 77, 78 (2d Cir. 1997) (internal citation omitted). The Supreme Court has articulated four factors that courts may consider in exercising that discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." <u>Intel Corp.</u>, 542 U.S. at 264-65; <u>accord</u> <u>In re Doosan Heavy Indus. & Constr. Co., Ltd.</u>, 2020 WL 1864903, at *1 (E.D.N.Y. Apr. 14, 2020).

Each of the discretionary factors weighs in favor of granting the application. First, neither Clearing House nor any of the respondent banks are party to the underlying proceedings in the High Court of England and Wales, and there is no expectation that they will become parties in the future. <u>See</u> App. at 8; Kislin Decl. ¶¶ 56-57. Second, BTA has produced evidence that the High Court of England and Wales would be receptive to materials produced pursuant to

---

[4] Khrapunov argues that the declaration of BTA's attorney, Jason Kislin, is inadequate because Kislin does not in fact have personal knowledge of the events he describes and because "the exhibits to the declaration are all unauthenticated hearsay and present an incomplete picture of the dispute." Nov. 26 Letter ¶ 2. We believe that an attorney for BTA is competent to describe litigation proceedings of his client and to state BTA's intention with respect to litigation proceedings. As for the exhibits, they are all referenced in Kislin's declaration and thus we accept that they are what Kislin claims. Notably, Khrapunov provides no evidence that any statement in Kislin's declaration is untrue or that any document is not authentic.

4

his application.  See App. at 9; Kislin Decl. ¶ 58; Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.").  Third, BTA does not appear to be attempting to circumvent foreign evidentiary restrictions; rather, it appears to be attempting to obtain "relevant information that the [foreign] tribunal[] may find useful but, for reasons having no bearing on international comity, . . . cannot obtain under [its] own laws."  Intel Corp., 542 U.S. at 262.  Fourth, the limited discovery sought by BTA, see Proposed Subpoenas, appears to be neither burdensome nor unduly intrusive.  Although the initial proposed subpoenas were broad, see Original Subpoenas, the revised proposed subpoenas clarify that BTA does not seek "any and all documents" about Panolos, but rather a specific subset of documents related to intermediary or correspondent banking transactions in which Panolos was involved, see Proposed Subpoenas.  Of course, the respondents are in the best position to know if the requests are burdensome, and they will have an opportunity to object to the subpoenas.

Because the respondents will have the opportunity to challenge BTA's subpoenas once served (including but not limited to a challenge as to whether section 1782 assistance should be afforded at all), we find it appropriate to grant the application ex parte.  Contrary to Khrapunov's assertion, see Nov. 26 Letter ¶ 1, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."  See Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012); accord In re Invest Bank PSC, 2021 WL 4804585, at *2 (S.D.N.Y. Oct. 15, 2021).

Accordingly, BTA's application to serve the subpoenas is granted.  BTA may serve the subpoenas duces tecum in the form annexed to the November 30 Letter (Docket # 13-1), providing a return date of at least 30 days.  All proceedings in relation to those subpoenas shall be in accordance with the Federal Rules of Civil Procedure.  Any dispute regarding the subpoenas may be presented to the Court in accordance with the Court's Individual Practices.

Conclusion

The motion to intervene (Docket # 12) is granted. The application to take discovery (Docket ## 3, 4) as modified by Docket # 13 is granted.

SO ORDERED.

Dated: December 27, 2021
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge