```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE: APPLICATION OF JSC BTA BANK          :
FOR AN ORDER TO CONDUCT DISCOVERY           :   Case No. 21 Misc. 824 (GHW)(GWG)
FOR USE IN A FOREIGN PROCEEDING             :
                                            :
------------------------------------------------------------X
```

# OBJECTION TO OPINION AND ORDER

Dated: January 6, 2022

SOLOMON & CRAMER LLP
25 West 39th Street, 7th Floor
New York, New York 10018
T: (212) 884-9102
F: (516) 368-3896
asolomon@solomoncramer.com

*Attorneys for Intervenor Ilyas Khrapunov*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     Background ...................................................................................................................1

II.    Statement of the Case....................................................................................................4

III.   Summary of the Objection ............................................................................................6

IV.    Objection.......................................................................................................................7

       A.   BTA Did Not Carry Its Burden of Proving the Mandatory Elements of
            28 U.S.C. § 1782...............................................................................................7

            1.   *BTA did not establish personal jurisdiction over the discovery
                 targets that are not at home in this District*................................................7

            2.   *BTA did not establish that the subpoenaed evidence was "for use"
                 in a foreign adjudicative proceeding with competent evidence*...................8

       B.   The Magistrate Court Abused its Discretion in Permitting BTA to Embark
            on a Fishing Expedition ..................................................................................12

CONCLUSION............................................................................................................................15

# **TABLE OF AUTHORITIES**

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015)..................................................................................................11, 12

*Daimler AG v. Bauman*,
   571 U.S. 117, 134 S.Ct. 746 (2014)................................................................................................8

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   154 F.3d 24 (2d Cir. 1998)..............................................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................................................12, 14, 15

*In re Accent Delight Int'l Ltd.*,
   696 F. App'x 537 (2d Cir. 2017) .................................................................................................12

*In re ALB-GOLD Teigwaren GmbH*,
   No. 19MC1166MKBST, 2019 WL 4140852 (E.D.N.Y. Aug. 30, 2019)................................12

*In re Asia Mar. Pac. Ltd.*,
   253 F. Supp. 3d 701 (S.D.N.Y. 2015)...................................................................................13, 14

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*,
   No. 14 CIV. 1801 NRB, 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ...............................11, 13

*In re Del Valle Ruiz*,
   342 F. Supp. 3d 448 (S.D.N.Y. 2018).............................................................................................7

*In re Del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)............................................................................................................7

*In re Fernando Celso De Aquino Chad*,
   No. 19MC261, 2019 WL 2502060 (S.D.N.Y. June 17, 2019) ..................................................7

*In re Petrobras Sec. Litig.*,
   393 F. Supp. 3d 376 (S.D.N.Y. 2019).............................................................................................7

*Int'l Hous. Ltd. v. Rafidain Bank Iraq*,
   893 F.2d 8 (2d Cir. 1989).............................................................................................................15

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945)................................................................................................................. 7-8

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
   No. 14 CIV 9997 CM, 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015).........................................8

*Mangouras v. Squire Patton Boggs*,
　980 F.3d 88 (2d Cir. 2020) ..................................................................................................8, 11

*Mees v. Buiter*,
　793 F.3d 291 (2d Cir. 2015) ................................................................................................11, 12

*Tottenham v. Trans World Gaming Corp.*,
　No. 00 CIV. 7697 (WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002) ..................................13

*Union Fenosa Gas, S.A. v. Depository Tr. Co., No.*
　20 MISC. 188 (PAE), 2020 WL 2793055 (S.D.N.Y. May 29, 2020) ......................................12

### **Rules and Statutes**

28 U.S.C. § 636(b)(1)(A) ...................................................................................................................1

28 U.S.C. § 1782 ..................................................................................................................... *passim*

Fed. R. Civ. P. Rule 72(a) ..................................................................................................................1

### **Other Authorities**

§ 6021 Statutory History, 27 Fed. Prac. & Proc. Evid. (2d ed.) ......................................................10

ILYAS KHRAPUNOV, through his counsel, Solomon & Cramer LLP, respectfully objects to the December 17, 2021 Opinion and Order rendered by Hon. Gabriel W. Gorenstein, U.S.M.J. [Dkt 16], pursuant to Fed. R. Civ. P. Rule 72(a) and 28 U.S.C. § 636(b)(1)(A).

## I. Background[1]

The repressive government of Kazakhstan has a well-documented history of using politically motivated prosecutions to silence its critics[2] and, as reported by Radio Free Europe and Amnesty International, subjecting them to horrendous treatment, including torture.[3]

Among these critics, the "loudest" and "most controversial" may be Mukhtar Ablyazov.[4] Formerly a successful businessman and prominent government minister, Ablyazov has earned the ire of Kazakhstan's authoritarian government over the past two decades by leading efforts to liberalize the economic and political landscape of his country. *Id.* And, over the same period, authorities in Kazakhstan have conducted an elaborate judicial (and extra-judicial) pressure campaign against Ablyazov and his family to subjugate him.[5] These efforts have ranged from the state takeover of JSC BTA Bank (BTA) (in which Ablyazov held a majority equity stake and chaired[6]); malicious prosecutions within Kazakhstan; the enlistment of Western judicial systems[7]

---

[1] This introductory background is based on publicly-available documents, articles, and court filings.
[2] *See Kazakhstan*, HUMAN RIGHTS WATCH, https://www.hrw.org/europe/central-asia/kazakhstan, last visited on January 4, 2022, attached as Ex. A to the accompanying Declaration of Andrew T. Solomon, dated January 7, 2020 (Solomon Decl.)
[3] *See* Ayan Kalmurat, *They Would Hang Me by The Arms*: *Hundreds of Letters From Kazakh Prisons Describe Alleged Torture*, RADIO FREE EUROPE RADIO LIBERTY (July 22, 2021) https://www.rferl.org/a/kazakhstan-prison-torture-letters/31372148.html, attached as Ex. B to Solomon Decl. and *Kazakhstan 2020*, AMNESTY INTERNATIONAL, https://www.amnesty.org/en/location/europe-and-central-asia/kazakhstan/report-kazakhstan/, last visited on January 4, 2022, attached as Ex. C to the Solomon Decl.
[4] *See* Adam Hug, *Retreating Rights – Kazakhstan: Introduction*, THE FOREIGN POLICY CENTER (July 22, 2021), https://fpc.org.uk/retreating-rights-kazakhstan-introduction/, attached as Ex. D to the Solomon Decl.
[5] *See* Twelfth Witness Statement of Mukhtar Ablyazov dated November 25, 2010 (Ablyazov Statement; Solomon Decl. Ex. E) at ¶¶ 4-6.
[6] Ablyazov Statement. at ¶ 5.
[7] *See* Casey Michael, *Why Kazakhstan Goes to Court in the United States*, THE DIPLOMAT (Feb. 7, 2017), https://thediplomat.com/2017/02/why-kazakhstan-goes-to-court-in-the-united-states/, attached as Ex. F to the Solomon Decl.

(including the U.S.[8]) to obtain and enforce foreign default judgments; and even the kidnapping of Ablyazov's wife and daughter from Italy (who were returned after an international outcry).[9] Before he fled the country, Kazakhstan had imprisoned and tortured Ablyazov and tried to assassinate him.[10] In 2020, the National Court of Asylum in France granted Ablyazov political asylum.[11]

Kazakhstan has also targeted Ablyazov's son-in-law, Ilyas Khrapunov, and his family. Its violations against them are also documented. For example, a study commissioned by the European Parliament noted that Kazakhstan misused Interpol's "Red Notices" as instruments of oppression against the Khrapunovs.[12]

A key launch point for Kazakhstan's judicial actions in the West has been the United Kingdom. A recent New York Times investigative report publicized how Kazakhstan (and other dictatorships) have enlisted that jurisdiction to advance illegitimate objectives. *See* Andrew Higgins, Jane Bradley, Isobel Koshiw, and Franz Wild, "*The Power of Money: How Autocrats Use London to Strike Foes Worldwide*" (New York Times, June 28, 2021) (Solomon Decl. Ex. J). Why the U.K.? The reporters explained:

> Filing litigation in London can bring legitimacy for claims by autocratic governments, whose own legal systems are so tainted that their decisions carry little weight outside their borders.

---

[8] *See, e.g., City of Almaty v. Khrapunov,* 956 F.3d 1129 (9th Cir. 2020) (upholding dismissal of RICO claims); *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2021 WL 1180058 (S.D.N.Y. Mar. 29, 2021) (upholding dismissal of BTA's claims against Khrapunov and Ablyazov); *Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308 (N.D. Cal. June 8, 2018) (dismissing claim under Computer Fraud and Abuse Act).

[9] *See* Paolo Sorbello, *Italian Policeman Sentenced for Kidnapping Kazakh Ex-Banker's Family*, THE DIPLOMAT (Oct. 19, 2020) https://thediplomat.com/2020/10/italian-policemen-sentenced-for-kidnapping-kazakh-ex-bankers-family/, attached as Ex. G to the Solomon Decl.

[10] Ablyazov Statement at ¶¶ 67-68, ¶¶ 105-108;

[11] *See* September 29, 2020 Order of the National Court of Asylum (French Republic), https://en.odfoundation.eu/content/uploads/2020/10/court-decision-ablyazov-mukhtar-english-final.pdf, attached as Ex. H to the Solomon Decl.

[12] *See Study, Misuse of Interpol's Red Notices and impact on human rights - recent developments* (January 2019) POLICY DEPARTMENT FOR EXTERNAL RELATIONS, EUROPEAN PARLIAMENT, https://www.statewatch.org/media/documents/news/2019/feb/ep-study-interpol-red-notices.podf.pdf , attached as Ex. I to Solomon Decl., at § 2.1.3

>England also offers advantages: Judges have broad latitude to examine evidence, even if it is produced by corrupt security services or compromised foreign legal systems. London's own private intelligence firms are unregulated, largely unrestrained and sometimes willing to use borderline methods for deep-pocketed clients.

And the article featured the cases against Mukhtar Ablyazov and his son-in-law, Ilyas Khrapunov:

>Another example is a bitter and sensational legal battle that originated in the brutal, autocratic politics of Kazakhstan and involves a state-owned bank [BTA], a fugitive tycoon and allegations of stolen billions. The much-publicized dispute began 12 years ago in London, involves numerous lawyers on both sides and is focused on Mukhtar Ablyazov, a former insider in Kazakhstan's kleptocratic elites who said he was singled out for prosecution after he fell out of favor for political reasons.
>
>Ms. Tyshchenko was a lawyer for a company related to Mr. Ablyazov. She had gone to Moscow in August 2013 but was grabbed from her luxury hotel near the Kremlin, tossed in prison and accused of helping Mr. Ablyazov hide assets. Russian authorities blessed the deal with Mr. Hardman's client that set her free. She denied any wrongdoing, but the affidavit that she later provided to Mr. Hardman became evidence in a case that saw an English judge issue a freezing order against Mr. Ablyazov's son-in-law.

In those U.K. cases, BTA—which Kazakhstan nationalized in 2009[13]— obtained default judgments against Mukhtar Ablyazov and Khrapunov "in excess of $4.6 billion" and "approximately $500 million," respectively. *Ex Parte* Application of JSC BTA Bank for Judicial Assistance under 28 U.S.C. § 1782 [Dkt 1] (App.) at ¶¶ 1, 4).

Neither of these default judgments, however, has been recognized in the United States. BTA tried, but Judge Alison Nathan rejected the effort on subject matter jurisdiction grounds.

---

[13] *See* March 19, 2013 judgment entered in *JSC BTA Bank v. Ablyazov*, Neutral Citation Number [2013] EWHC 510 (Comm.), High Court of Justice, Queen's Bench Division, Commercial Court (Teare, Justice), http://www.bailii.org/ew/cases/EWHC/Comm/2013/510.html#para42, attached as Exhibit K to the Solomon Decl., at ¶¶ 42-46.

3

*City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2020 WL 2896683 (S.D.N.Y. June 1, 2020), *reconsideration denied*, No. 15-CV-5345 (AJN), 2021 WL 1180058 (S.D.N.Y. Mar. 29, 2021).[14]

Having failed to obtain recognition of the U.K. judgments in the United States, BTA now tries an end-around: bringing this miscellaneous proceeding under 28 U.S.C. § 1782—the statute that authorizes U.S. courts, in their discretion, to provide "assistance to foreign and international tribunals and to litigants before such tribunals." Through this action, BTA hopes to obtain bank records relating to a foreign entity, Panolos Limited (Panolos), which it suspects played a role in a purported money-laundering scheme involving Khrapunov and Ablyazov. App. at ¶ 11. In support of what can only be called a fishing expedition, BTA claims that *unspecified* U.S. dollar-denominated transactions of Panolos, run through *unspecified* bank accounts, *may* have been processed through the Clearing House Payment Company L.L.C. (CHIPS), and that CHIPs or one of correspondent banks that clear transactions through CHIPS *may* therefore have record of transactions that *might* shed light on money laundering activities of Ablyazov and Khrapunov. *Id.* at 10-11, 13. BTA speculates that this information will assist it in proving Panolos's "involvement in the fraud before foreign courts and to recover monies wrongly concealed from Applicant by the Judgment Debtors." *Id.* at 11.

## II.     Statement of the Case

Petitioner BTA, a Kazakh bank, brought this proceeding on November 17, 2021, for judicial assistance under 28 U.S.C. § 1782.  BTA seeks to obtain discovery, by way of subpoenas to financial institutions found in this District, concerning an entity named Panolos, which it

---

[14] There is good reason to think that recognition would not succeed. BTA tried to enforce the judgment in Switzerland. The Swiss court refused to recognize it because it was rendered in violation of his due process rights. Solomon Decl. Ex. L.

4

claims was used by Mukhtar Ablyazov and Ilyas Khrapunov "in connection with their money laundering and other illicit activities." App. at ¶¶ 9-10. BTA previously obtained default judgments against Ablyazov and Khrapunov in the United Kingdom. *Id.* at ¶¶ 1 and 4.

BTA provided no notice to Khrapunov or Ablyazov (or Panolos), bringing this application on an *ex parte* basis. BTA justified this based on an alleged (and wholly unsubstantiated) "history of rapid movements of assets and acts of concealment [by Khrapunov and Ablyzaov]." App. at ¶16.

In support of its application, BTA proffered only the declaration of its New Jersey-based counsel, Jason Kislin, a shareholder with Greenberg Traurig LLP. *See* Declaration of Jason Kislin, filed November 17, 2021 [Dkt 3] (Kislin Decl.). Mr. Kislin provided the boilerplate assurance that his declaration was based on his own "personal knowledge," *id.* at ¶ 2, but neglected to include any foundation for his knowledge of the relevant events—most of which took place more than a decade ago and in foreign countries.[15]

Even though BTA commenced this action *ex parte*, Khrapunov soon became aware of it and immediately instructed his counsel, Solomon & Cramer LLP, to advise the Court of his intent to oppose the application. Counsel's letter, filed on November 26, 2021 [Dkt 10], described Khrapunov's interest in the proceeding, objected to it being prosecuted *ex parte* (pointing out that the proverbial cat was already out of the bag), and outlined certain objections that Khrapunov would develop in his intended opposition. *Id.* They included (1) the fact that BTA's U.S. counsel was an incompetent witness to substantiate the application and was

---

[15] Indeed, counsel's declaration covers, for example, events that occurred in 2005 at BTA Bank in Kazakhstan (Kislin Decl. at ¶ 4); a 2008 investigation by the Kazakh financial regulator (the AFN) (*id*. at ¶ 5); BTA's 2009 communications with its regulator (*id*. at ¶ 6); Kazakhstan's 2009 nationalization of BTA (*id*. at ¶ 7); Ablyazov's "flight" to England (*id*. at ¶ 8); BTA's "internal investigation" and findings (*id*. at ¶ 9); BTA's hiring of KPMG and its findings (*id*. at ¶ 10); and BTA's identification of "evidence" of embezzlement by Ablyazov (*id*. at ¶ 11).

presenting an incomplete picture of the foreign proceedings (*see* introduction *supra*); (2) that the subpoenas are overbroad; and (3) that the real motive for the proceeding was asset discovery and enforcement of a fully adjudicated judgment, which BTA had tried, but failed, to have recognized in the U.S. *Id.* Days later, Khrapunov filed a motion to intervene [Dkt 12]; BTA timely opposed [Dkt 14] and Khrapunov replied [Dkt 15].

On December 27, 2021, the Magistrate Court issued the Opinion and Order [Dkt 16] (the Order), which is the subject of this Objection.

The Magistrate Court first granted Khrapunov's motion to intervene. Order at 2-3. But the benefit of intervention was then undermined when, in the next section of the Order, the Court granted BTA's application under § 1782 on an *ex parte* basis. Order at 3-5. Khrapunov has thus been denied the chance to file an opposition to the application.[16]

In granting the application, the Magistrate Court cited BTA's unsworn application and the declaration of its counsel. On the important question of personal knowledge, the Magistrate Court merely assumed that "an attorney for BTA is competent to describe litigation proceedings of his client and to state BTA's intention with respect to litigation proceedings." Order at 4, n. 4.

### III. Summary of the Objection

The Magistrate Court committed clear error in issuing the Order. First, personal jurisdiction over *some* of the subpoena targets, which is a *prima facie* element under § 1782, was not demonstrated. Second, the application and BTA's showing of its intended "use" before a foreign tribunal of the evidence sought were not supported by competent evidence. Quite plainly, an attorney's declaration, rendered without personal knowledge, is not evidence.

---

[16] Even though the Magistrate Court decided the motion *ex parte*, the Court nevertheless took Khrapunov to task for providing "no evidence that any statement in Kislin's declaration is untrue or that any document is not authentic." Order [Dkt. 16] at 4, n.4.

6

Moreover, the Magistrate Court abused its discretion (a) by permitting BTA to engage in a fishing expedition, based on unsubstantiated speculation, to troll for claims and new defendants and (b) by failing to examine thoroughly whether BTA's application is an attempt to circumvent foreign bank secrecy laws.

## IV. Objection

### A. BTA Did Not Carry Its Burden of Proving the Mandatory Elements of 28 U.S.C. § 1782

A district court possesses jurisdiction to grant a Section 1782 petition if:

> (1) ... the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) ... the discovery [is] for use in a proceeding before a foreign tribunal, and (3)... the application [is] made by a foreign or international tribunal or any interested person.

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018).

Based on BTA's *ex parte* submission, the Magistrate Court found that all three elements are met here.

In this objection, Khrapunov takes issue with elements (1) and (2).

#### 1. BTA did not establish personal jurisdiction over the discovery targets that are not at home in this District.

To satisfy the first element, an applicant must show that the targets of discovery have minimum contacts with the jurisdiction, as required under the Due Process clause. *In re Fernando Celso De Aquino Chad, No.* 19MC261, 2019 WL 2502060, at *2 (S.D.N.Y. June 17, 2019); *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 381 (S.D.N.Y. 2019); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 452–53 (S.D.N.Y. 2018), *aff'd sub nom. In re Del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019); *see generally Int'l Shoe Co. v. State of Wash., Off. of Unemployment*

7

*Comp. & Placement,* 326 U.S. 310 (1945). For the banks with headquarters in the district,[17] this requirement is probably satisfied under the general jurisdiction standards under *Daimler AG v. Bauman*, 571 U.S. 117, ___, 134 S.Ct. 746, 760 (2014). But for non-NY-headquartered banks, merely transacting business in the district is not sufficient for general jurisdiction. Specific jurisdiction must be shown. As to these non-NY-headquartered banks, BTA offered no evidence establishing specific jurisdiction; nor did the Magistrate Court make individualized findings on this point. Order at 3 (*citing* Kislin Decl. at ¶ 53 and App. at pp. 5-6). Insofar as the Magistrate Court authorized subpoenas to banks not headquartered in New York, it clearly erred.

> 2. *BTA did not establish that the subpoenaed evidence was "for use" in a foreign adjudicative proceeding with competent evidence.*

Khrapunov further objects to the Order under element (2) – that the "discovery [is] for use in a proceeding before a foreign tribunal."

For this second element, we recognize that it is not necessary that the foreign proceeding be "pending" or "imminent"; rather, it could be pending or, objectively, "within reasonable contemplation." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020). But the foreign proceeding (pending or reasonably contemplated) must be "adjudicative" in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). Enforcement of an existing judgment is not "adjudicative." *Id.* at 28; *see also Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14 CIV 9997 CM, 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) ("neither pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature").

The exclusion of non-adjudicative collection and enforcement activities was a substantial hurdle for BTA. It has foreign (default) judgments in extraordinary amounts against Khrapunov

---

[17] According to the Application, the following targets are "headquartered" in this District: The Clearing House, The Bank of New York Mellon, BNP Paribas USA, Citibank, N.A., Deutsch Bank Trust Company Americas, HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A.

and Ablyazov issued by the U.K. courts: $500 million and $4.6 billion, respectively (Kislin Decl. ¶ 34 and ¶ 2). Though BTA claims otherwise, it seems clear that this application is not to support or pursue a "reasonably contemplated" adjudicative proceeding, but to fish for transferred assets of Khrapunov or Ablyazov.

Nevertheless, the Magistrate Court held that BTA had established it burden of demonstrating that the requested discovery was "for use in a proceeding before a foreign tribunal," explaining:

> "[w]ith the information that BTA anticipates obtaining through this application, BTA intends to seek the UK Court's permission to lift the stay [of the Khrapunov Proceedings] <u>in order to add additional defendants to the Khrapunov Proceedings and amend the relevant freezing orders to ensure that assets, once located, do not disappear before judgment is rendered.</u>" Kislin Decl. ¶ 35 (emphasis added). BTA further states that its "case against Panolos in the UK is currently in the pre-trial discovery stage, and BTA is continuing to amass evidence in respect of Panolos', as well as other entities and individuals', involvement in the Ablyazov-Khrapunov Money Laundering Scheme in an attempt to locate its assets as well as those assets of Ablyazov, Khrapunov and their other co-conspirators, <u>and to apply for worldwide freezing orders to ensure that such assets, once located, do not disappear before any future judgment is rendered.</u>" Id. ¶ 40 (emphasis added). BTA also explains that "the evidence sought[ ] is likely to reveal further details [regarding] the Ablyazov-Khrapunov Money Laundering Scheme ..., which [BTA] can rely on as evidence <u>to prove the elements of fraud</u> in the English Proceedings, Khrapunov Proceedings[,] and the Contemplated Proceedings." Id. ¶ 51 (emphasis added).

Order at 3-4 (emphasis in original).

But what evidence did the Magistrate Court have to determine whether the requested evidence could, in fact, be used in these proceedings and how? And on what basic could the Magistrate Court determine that the existing proceedings are being adjudicated (as opposed to post-judgment) and whether future actions are reasonably contemplated?

9

The answer is none—at least none that would be admissible under the Federal Rules of Evidence. For a court to credit an affidavit, the testifying witness must have personal knowledge. The Federal Rules of Evidence command it: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. R. 602.

The personal knowledge requirement is not a trifle or technicality. Rather, it is "one of the most fundamental tenets of a rational system of evidence law; testimony should be reliable and, thus, must be based on the perceptions of the witness rather than conjecture or second-hand information." § 6021 Statutory History, 27 Fed. Prac. & Proc. Evid. § 6021 (2d ed.). "In terms of history, the personal knowledge requirement is one of the oldest and most firmly established evidentiary principle, with roots in medieval law." *Id.* In civil cases, the rule applies broadly, "not only at trial but also is imposed on affidavits submitted in connection with summary judgment and other motions. *Id.* at n. 12 (*citing*, *inter alia,* FRCP 12(b), (c), 56(e)).

Despite the centrality of the personal knowledge requirement, the Magistrate Court relied entirely on the testimony of Jason Kislin, Esq., a United States lawyer based in New Jersey. He provided no foundational testimony establishing competence that these "uses" in the courts of the U.K. and elsewhere in Europe and Asia were "reasonably contemplated" and procedurally and substantively available for adjudication. Evidentiary concerns were brushed aside. In a footnote, the Magistrate Court rationalized, by inference alone, "that an attorney for BTA is competent to describe litigation proceedings of his client and to state BTA's intention with respect to litigation proceedings." Order at 3 n. 4.

10

This finding was clear error. To be sure, if Kislin had personal knowledge, he could have established that foundation in his own declaration. But his declaration, offers only a boilerplate claim of "personal knowledge." Kislin Decl. at ¶ 2. Counsel fails to explain the scope or history of his or his firm's representation of BTA. He fails to allege personal involvement in any of the foreign proceedings about which he testifies. And he fails to claim any expertise in foreign law. He does not even claim to have received (the assumed) instructions from his client.

Moreover, even if it were reasonable to assume that Kislin, as BTA's attorney, would know "BTA's intention with respect to litigation proceedings," his testimony would still fall short of BTA's statutory burden. To establish the "for use" element, "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated," *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). "At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.* at 124; *see also Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020).

In a properly supported application, BTA would have provided evidence explaining just how ten years' worth of Panolos's financial and banking transaction information could, in fact, be used in a particular foreign proceeding and how it would be used. As the Second Circuit has made clear, "[t]he key question … is not simply whether the information sought is relevant, but whether the [applicant] … will actually be able to use the information in the proceeding." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG*, L.L.P., 798 F.3d 113, 120-21 (2d Cir. 2015); *Cf. In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom.*

11

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ("the statute does require that there be some discernible procedural mechanism whereby the discovered material could actually be used in the foreign tribunals in question."). That is, to "employ it with 'some advantage.'" 798 F.3d at 120 (*quoting Mees v. Buiter*, 793 F.3d 291, 297, (2d Cir. July 17, 2015)).

Nor does BTA have any excuse for not obtaining competent witness testimony. It has armies of lawyers in foreign countries pursuing Ablyazov and Khrapunov. If it were so, one of them could have competently and knowledgeably explained how BTA's intentions could materialize as actual "use" in an "adjudicative proceeding." *See, e.g., Union Fenosa Gas, S.A. v. Depository Tr. Co., No.* 20 MISC. 188 (PAE), 2020 WL 2793055 (S.D.N.Y. May 29, 2020) (applicant submitted declaration of English lawyer to establish "for use" element); *In re ALB-GOLD Teigwaren GmbH*, No. 19MC1166MKBST, 2019 WL 4140852, at *9 (E.D.N.Y. Aug. 30, 2019) (parties submitted legal experts on Swiss law to litigate 'for use" question).[18]

That BTA failed to provide competent evidence of its intended "use" of the evidence sought was reason enough to reject its application. That it chose not to invites a negative inference and hints at gamesmanship. The Magistrate Court's willingness to overlook this omission is clearly erroneous and is grounds to reverse the Order.

  **B.**  **The Magistrate Court Abused its Discretion in Permitting BTA to Embark on a Fishing Expedition**

In addition to the clear error described above, the Magistrate Court abused its discretion in weighing the "Intel Discretionary Factors." *In re Accent Delight Int'l Ltd.*, 696 F. App'x 537 (2d Cir. 2017) (*citing Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)). In

---

[18] This is not to say that BTA had to show admissibility. *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 (2d Cir. 2015).

considering matters such as the scope of the requested discovery, "a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).

It is a familiar principle that U.S. discovery does not permit "fishing expeditions; rather it allows parties to flesh out allegations for which they initially have at least a modicum of objective support." *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002). Nothing but speculation supports BTA's demands here.

In violation of U.S. discovery limitations, BTA targets 13 banks and the Clearing House Payments Company L.L.C. for discovery. The targets are identified not because BTA has uncovered evidence linking them to Panolos, but because they purportedly engage in international transactions and, according to BTA's U.S. counsel, monies allegedly laundered by Khrapunov "could have been transferred from or passed through" their accounts. Kislin Decl. ¶ 50.

That a bank participates in international payment transactions through CHIPS is too thin a reed to support discovery under Rule 26(a) of the Federal Rules of Civil Procedure. The basis for the discovery is complete speculation, upon which BTA hopes to troll for claims and enforcement opportunities against current and new defendants. Neither Rule 26 nor § 1782 permits this. *See, e.g., In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), *aff'd sub nom. Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) (rejecting "fishing expedition"); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701,

703 (S.D.N.Y. 2015).

Because BTA has failed to substantiate its selection of discovery targets beyond sheer speculation, the application should have been denied. *Asia Mar. Pac.*, 253 F. Supp. 3d 701, is instructive. There, Judge Caproni denied the § 1782 request because: "Petitioner provided no basis to believe that [the target of the foreign proceeding] Arma has ever engaged in a financial transaction with any particular bank in New York, but the proposed order would permit it to serve subpoenas on sixteen very large banks that have branches in New York City." 253 F. Supp. 3d at 702. Here, like in *Asia Mar.,* the subpoena targets—Clearing House Payments Company L.L.C. and thirteen "intermediary banks"—are selected solely because they engage in international transactions. BTA provided no evidence—not a shred—that Panolos engaged in transactions with these banks, much less to feed an alleged international money laundering scheme.

Finally, in applying the *Intel* factors, the Magistrate Court gave short shrift to the third factor, namely, "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Order at 4. On this point, the Magistrate Court—considering the matter *ex parte*—concluded, without discussion, that this concern "appears" not to be implicated (as if BTA would admit to such designs).

In fact, BTA's § 1782 request appears to be an attempt to circumvent bank secrecy rules in Europe. BTA does not claim that Panolos engaged in any transactions in the United States. The banks are targeted because "it is inferred[19] that the proceeds of sale of the Courcheval Property could have been passed through correspondent banks to the banks with which Panolos

---

[19] Note the passive voice. Inferred by whom and on what basis?

14

kept bank accounts." Kislin Decl. at ¶ 50. A correspondent banking account is an account maintained in the United States for a foreign bank for the purpose of ""expedit[ing] the international transfer of funds, principally in United States dollars." *Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 13 (2d Cir. 1989) (Kaufman, C.J., dissenting). By analogy, it is like "a personal checking account used for deposits, payments and transfers of funds." *Id.* at 9.

Why is BTA targeting "correspondent banks" in the United States rather than the principal banks in Europe? BTA does not explain. But it should because it appears that the U.S. banks are targeted for evidence that otherwise would exist abroad (with the primary banks) but is likely unavailable to BTA through the powers of the foreign tribunals.

**V.     Conclusion**

We take issue with the Magistrate Court's decision to resolve the application on an *ex parte* basis. By hearing only one side, important legal and factual components were not adjudicated on an adversarial basis. The result is clear error and abuse of discretion. BTA did not, in fact, establish the mandatory threshold requirements under § 1782. Nor did the Magistrate Court have a complete record to permit a thorough consideration of the *Intel* Discretionary Factors. Respectfully, this objection must be sustained and the Order reversed.

Dated:  New York, New York
            January 6, 2022

                                                       SOLOMON & CRAMER LLP
                                                     *Attorneys for Intervenor Ilyas Khrapunov*

                                                     By:     /s/Andrew T. Solomon
                                                               Andrew T. Solomon
                                                                asolomon@solomoncramer.com

                                                   25 West 39th Street, 7th Floor
                                                   New York, New York 10018
                                                   (t) 212-884-9102