M33GjscC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  APPLICATION OF JSC BTA
     BANK
4                                      21 mc 824 (GHW)(GWG)

5                                      Remote Conference

6    ------------------------------x
                                       New York, N.Y.
7                                      March 3, 2022
                                       3:00 p.m.
8
     Before:
9
                         HON. GREGORY H. WOODS,
10
                                       District Judge
11
                         APPEARANCES
12
     GREENBERG TRAURIG, LLP
13        Attorneys for   JSC BTA BANK
     BY:  ASHLEY ANN-VINCENT LEBLANC
14
     SOLOMON & CRAMER LLP
15        Attorneys for Intervenor Ilyas Khrapunov
     BY:  ANDREW TODD SOLOMON
16

17

18

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

M33GjscC

1          (The Court and all parties present remotely)

2          THE COURT:  Let me begin by taking appearances from

3     the parties.  I'd like to ask the principal spokesperson for

4     each set of parties to identify themselves as well as members

5     of their team rather than having each lawyer introduce him or

6     herself individually.

7          Let me begin with counsel for the petitioner.  Who is

8     on the line for petitioner?

9          MS. LEBLANC:  Ashley LeBlanc from Greenberg Traurig.

10    I believe I'm the only one on the line.

11         THE COURT:  Thank you.

12         Who is on the line for intervenor?

13         MR. SOLOMON:  Good afternoon, your Honor.  Andrew

14    Solomon for the intervenor, Ilyas Khrapunov.

15         THE COURT:  Has anyone else dialed into the conference

16    on behalf of any other interested person?

17         In particular, is counsel for any of the discovery

18    targets on the line making an appearance in this proceeding?

19         Thank you.  I'm hearing none.  So let's begin.

20         What I'd like to do at the outset is just to make a

21    few brief remarks about the rules that I would like you to

22    follow during the call.

23         First, remember that this is a public proceeding.  Any

24    member of the public or press is welcome to join the call.  I'm

25    not monitoring whether third parties are currently auditing the

M33GjscC

1    call.  So I'll ask you to keep that possibility in mind.

2           Second, please state your name each time that you

3    speak during the conference.  That would be helpful for our

4    court reporter.

5           Third, please keep your lines on mute at all times

6    except when you are intentionally speaking to me or to one of

7    the other participants in the conference.

8           Fourth, I'm inviting our court reporter to let us know

9    if she has any difficulty hearing or understanding anything

10   that we have to say here today.  If she asks you to do

11   something that would make it easier for her to do her job,

12   please do it to the extent that you can.

13          And finally, I'm ordering that there be no recording

14   or rebroadcast of all or any portion of today's proceeding.

15          Counsel, with that out of the way, I'd like to turn to

16   the substance of today's proceeding.  I scheduled this

17   conference in order to address the objection to the order

18   issued by Magistrate Judge Gorenstein, which is pending at

19   Docket No. 17.  I'm going to refer to that as the "order."  I

20   also hope to address the motion to stay, which is currently

21   pending at Docket No. 19.

22          Counsel, I have reviewed all of the submissions in

23   connection with this application.  In particular, Judge

24   Gorenstein's decision and the underlying documents with respect

25   to it.  I have also obviously read your submissions in

M33GjscC

1   connection with the objections and the responses to the

2   objections to Judge Gorenstein's order.  I think, as a result,

3   that I have a clear position regarding the parties'

4   positions -- I have a clear understanding, I should say --

5   regarding the parties' positions.

6           That said, if the parties would like to provide any

7   supplemental information to the Court in support of your

8   arguments beyond those that have already been provided in

9   writing, I'm happy to give you the opportunity to present those

10  now.  If you would like to, please let me know.  If you don't

11  want to, that's also fine, I will take up the motion on the

12  basis of the parties' written submissions if so.

13          Let me begin, first, with the objector, the

14  intervenor.  Counsel, is there anything that you would like to

15  say about the application to the Court beyond what's already

16  been provided in your written submissions to the Court?

17          MR. SOLOMON:  Your Honor, thank you for the

18  opportunity to address the motion.  And I just have a few brief

19  comments that I'd like to offer.

20          First of all, I want to bring the Court up to date.

21  BTA served some of the subpoenas, not all of them.  And on

22  February 18th, they received the first response from HSBC.  And

23  HSBC produced certain bank records with respect to the Panolos

24  entity.  Those bank records were first sent to me yesterday,

25  the day before this hearing.

1          Now, I think that there's two problems I have with

2    that.  First of all, I think it shows that BTA is not seeking

3    evidence for purposes of an adjudicative proceeding.  BTA is

4    attempting to obtain post judgment discovery in order to try to

5    recover on its judgments, which is not the proper subject of a

6    1782 proceeding.  And that's why they delayed, because counsel,

7    I assume, received the information, sent it to its client, BTA,

8    and then BTA, we have good knowledge to know, is working hand

9    in hand with the Kazakh regime.  And they will digest and

10   analyze the information and make sure they can track down any

11   leads before we can do anything to stop them.

12         So that's the evidence, I think.  That shows that this

13   is for collection.  Because if it were for adjudication, there

14   would be no reason to not provide the information

15   contemporaneously, when it was received.

16         The other problematic aspect of it is I don't think

17   that BTA understands the nature of a 1782 proceeding.  Because

18   if you read the statute, the 1782 proceeding contemplates the

19   appointment of somebody in the United States to receive

20   evidence and potentially testimony, so it could be testimony or

21   documents.  And because this is not an ex parte proceeding, I

22   am supposed to be invited and present when those documents are

23   received.

24         Now, I understand in the world of subpoena compliance

25   with banks, banks will sometimes just send electronic

M33GjscC

1       documents.  But I should have been notified of that

2       immediately, as if I were sitting in the room when the

3       documents were produced.

4               So I think there's a violation of 1782; the spirit and

5       the letter of 1782.  I think this episode shows what is really

6       going on.  And I'm asking the Court to look past the sort of

7       pretext that BTA is contemplating a legal proceeding.

8               What BTA is doing is trying to collect a judgment.

9       And they're trying to collect a judgment by trolling through

10      bank records of any entity that they can ever attach to my

11      client or Mr. Ablyasov in order to see if they can find a cause

12      of action.  Which, again, is not appropriate for a 1782

13      petition.

14              So I think we have to look past what they're saying.

15      And as I mention in my papers -- I'm not going to repeat it --

16      they have not established an evidentiary basis establishing

17      that this is actually for use in an adjucative proceeding in a

18      foreign country.

19              The other part of this is, we move for a stay.  And I

20      understand the Court didn't grant the stay, but it put it over,

21      I think, for today.  And the idea was to hold the status quo.

22      And the status quo has been now violated with respect to one

23      bank.  No additional evidence should be disseminated to the

24      Kazakh regime until the objection and the stay is adjudicated.

25      Maybe that happens today and my concerns would then be moot.

1              Finally, I just want to point out to your Honor that

2     if you read their papers, there's only one country that has

3     joined Kazakhstan wholeheartedly in their enforcement

4     proceedings against Mr. Khraponovs and Mr. Ablyasov, and that's

5     Russia.  So we're not dealing with a Western democracy here.

6     We are dealing with a repressive regime, a regime that has

7     pulled no stops in terms of going after their enemies, the

8     enemies of the country, which is recently in revolution.  And

9     part of their scheme and part of this repressive scheme is to

10    sue anybody with the name Khraponovs or Ablyasov anywhere in

11    the world, including multiple lawsuits in the United States.

12             And they haven't been successful in the United States,

13    your Honor.  In fact, I think, importantly, they tried to get

14    recognition of their judgments and lost.  They lost on

15    procedural grounds, but instead of going back and trying to get

16    the judgments recognized, which would then be a legitimate

17    basis for taking post judgment discovery, BTA has done this

18    end-around by using the 1782 proceeding.

19             So I think there's a lot of troublesome aspects of all

20    this.  I don't think that Judge Gorenstein gave us a fair

21    shake.  I think he knew that we had issues and there was no

22    emergency and didn't give us a chance to present our arguments

23    fully.  And I think maybe if Judge Gorenstein had understood

24    the entire picture -- maybe -- I'm hoping that if he understood

25    the entire picture, even in his discretion, he would think

1    twice of assisting BTA, which is a naturalized bank of

2    Kazakhstan in this campaign against my clients.

3            Thank you, your Honor.

4            THE COURT:  Just a couple of brief questions before I

5    turn to the applicant.

6            First, I understand the thrust of your arguments to

7    the effect that requests are being made for the purpose of

8    supporting an enforcement proceeding, which is not covered, as

9    you argue, by 1782.  The applicant has also pointed to legal

10   proceedings, which are not enforcement proceedings.  How would

11   you have the Court take those affirmations?  In other words, if

12   this is a potential hybrid use, in part, for ongoing legal

13   proceedings and part for enforcement proceedings; does that

14   mean that the request is improper?

15           MR. SOLOMON:  Your Honor, I can't answer that

16   question, because there is no competent evidence about what's

17   really going on in the UK proceeding in the Khraponovs

18   proceeding and the contemplated proceeding.

19           So can I imagine a situation where an international

20   bank has a judgment and then is contemplating related

21   proceedings to that judgment that wouldn't count as collection,

22   I guess that's possible, yes.  Because I think that 1782 has

23   been broadly and liberally provided for assistance to foreign

24   litigants.  But I think we're dealing with a hypothetical

25   question here, because I don't believe that the Court or I have

1  been presented with firsthand evidence of these foreign

2  proceedings and what's going on with these proceedings.

3          THE COURT:  Thank you.

4          Let me ask a second question.  I just want to ask you

5  to quickly expand on the way that the HSBC response has been

6  provided.  Counsel, you described your position that the

7  information should be presented as if you were sitting in the

8  room as the documents are being produced.

9          What's the legal basis for that position?  Is there a

10  particular portion of the statute to which you are referring?

11          MR. SOLOMON:  Yes.  I'm referring to the provision of

12  the statute -- I just want to get the text up on my screen so I

13  don't misspeak -- it says that "the testimony or statement be

14  given or the document or other thing be produced before a

15  person appointed by the Court," so that's in the text of 1782.

16  "The order may be made pursuant to a letter, rogatory issued or

17  request made by a foreign or international tribunal or upon

18  application of interested person and may direct that the

19  testimony or statement be given or the document or other thing

20  be produced before a person appointed by the Court."  That's

21  the verbatim language of 1782.

22          And I think that that's consistent with whether you

23  call this an ex parte proceeding or whether you call this a

24  proceeding where somebody has been permitted to intervene.

25  Just as if there was a deposition, I would be there.

1       THE COURT:  Thank you.

2           Here, where we are talking about where the document or

3   the document or other thing be produced before a person

4   appointed by the Court, why can't that be the person that's

5   issued the subpoena?

6           MR. SOLOMON:  I think it could be that person.  But I

7   think I'm supposed to be there when it comes in.

8           THE COURT:  Thank you.

9           What's the basis for that?

10          MR. SOLOMON:  I am inferring it from the text of the

11  statute.  I have not, candidly, done additional research on

12  this point.  But I think that that's by the nature of whether

13  it's ex parte or whether it's not ex parte, which this is not.

14  If it was a deposition, there would be no question, right, that

15  I would be there.  So I don't know why the production of

16  documents should be any different.

17          THE COURT:  Thank you.  Understood.

18          Let me turn to counsel for the petitioner.  Counsel,

19  is there anything you would like to say about your application

20  generally or in response to the arguments that have been

21  highlighted here by intervenor?

22          MS. LEBLANC:  Yes.  Thank you, your Honor, for the

23  opportunity to respond and also via written papers.  We

24  appreciate that opportunity.

25          So I believe that our submission and the order are

M33GjscC

1    thorough in their analysis and that the order can be confirmed

2    that there's no clear error present there to support.  The

3    magistrate looked at all the relevant law, all of the relevant

4    factors and applied it appropriately.  And I think that's

5    evident in our papers.

6           As to the HSBC production -- just to clarify the

7    record on that -- I understand that the production is dated, I

8    believe it's February 18th, it was provided to us via email,

9    password protected email, which actually got pushed into our

10   quarantine, our firm's quarantine.  And so we weren't aware

11   that we had received the documents until last week on Thursday,

12   February 24th.  And we provided it to counsel within a week of

13   our realizing that it had been pushed into that quarantine

14   pool, which I think is a reasonable time.

15          As to the statutory basis Mr. Solomon points out for

16   providing it, I would want to investigate that further, in

17   terms of it requiring a more contemporaneous production to

18   Mr. Solomon.  In my view, we were providing it as courtesy,

19   since there is no requirement under the federal rules or local

20   rules to provide the information.  And I believe we provided it

21   timely in any event.

22          But if there is something, some basis for us providing

23   it at a different point in time, sooner within a week or as

24   soon as we realize we have it or whatever that is, we're

25   certainly happy to follow the Court's guidance, in terms of our

1  obligations to provide that information if that differs from

2  our practice with the HSBC documents.

3         THE COURT:  Thank you.

4         Any comments regarding my question regarding, I'll

5  call it, a potential hybrid use of information requested in a

6  1782 proceeding?  My understanding is that counsel for the

7  intervenor concedes that that is legally feasible, but points

8  to the objection based on asserted lack of personal knowledge

9  of the status of the foreign proceedings.  What would you like

10 to say in response?

11        MS. LEBLANC:  Thank you so much.  I was just pausing

12 to collect my thoughts on that point.

13        So as to that point, as it relates to a judgment

14 enforcement proceeding -- and I believe it's cited in the

15 order -- there's case law in the Second Circuit that such use

16 is permissible.  So from our perspective, as a matter of law,

17 our use of information for that purpose is within the bounds of

18 the 1782 use.  So we don't really see that as a bar in any

19 event.

20        I believe that answers your question as to that, but

21 correct me if I'm missing something, some aspect of your

22 question.

23        THE COURT:  Thank you.  That's fine, counsel.

24        Anything else?

25        MS. LEBLANC:  Yes.  The last point I'd like to make is

M33GjscC

1    just to state that I -- sorry, there was another point to your

2    question, which was the evidentiary basis.

3            And I just wanted to point out that the evidentiary

4    basis, which is largely based on court records and public

5    records, the Court could easily, just as easily take judicial

6    notice of.  So I believe that the intervenor's objections on

7    that basis are unfounded.

8            Then, lastly, I just would ask the Court to disregard

9    Mr. Solomon's appeal to ethos and his reference to Russia and

10   these repressive schemes.  Those points are just entirely

11   irrelevant to the legal matters at hand before the Court.

12           With that, I'll complete.

13           THE COURT:  Thank you.

14           Just briefly, counsel, what are you referring to when

15   you say judicial notice?  What is it that you ask me to take

16   judicial notice of?  My understanding is that you believe that

17   the affidavit was adequate to provide the Court with

18   information about the legal matters described.

19           MS. LEBLANC:  That's correct.  We do believe that it

20   is adequate.

21           The comment was merely to point out that should the

22   Court in any way find it inadequate that there is another basis

23   on which the Court could rely on the materials.

24           THE COURT:  Thank you.  I'm not sure about that.  But

25   I think I have heard enough.

1    I will ask the parties to bear with me for a few

2    moments.  What I'd like to do is to rule on the decision now.

3    If you can place your phones on mute, I'll provide you with my

4    analysis.  And then I will make a couple of brief comments at

5    the end about the couple of issues that came up during our

6    conversation here.  But if you can, please bear with me as I

7    rule on the pending objection and the motion to stay.

8    Opinion:  On December 16, 2021, Judge Gorenstein

9    entered the Order, which granted Intervenor Ilyas Khrapunov's

10   motion to intervene, but also granted Applicant JSC BTA Bank's

11   application for discovery for use in a foreign proceeding under

12   28 U.S.C. §1782 (the "Application").  In doing so, Judge

13   Gorenstein authorized Petitioner to issue and serve various

14   subpoena deuces tecum on the Clearing House Payment Company LLC

15   ("Clearing House"), as well as 13 banks (the "Banks" and,

16   together with Clearing House, the "Discovery Targets").  Docket

17   No. 16.  Intervenor filed his objection to the Order on

18   January 6, 2021.  Docket No. 17 ("Objection").  Then, on

19   January 24, 2022, Intervenor requested that the Court stay

20   discovery pending the Court's ruling on his Objection.  Docket

21   No. 18.  Petitioner filed a response to the Objection on

22   February 3, 2022.  Docket No. 21 ("Response").  Intervenor

23   filed a reply on February 8, 2022 ("Reply").

24   I am prepared to rule on Intervenor's objection.  I

25   will do so orally.  Because the parties are familiar with the

M33GjscC

underlying facts and procedural history, I will not address
those separately.  The facts that are relevant to my decision
are embedded in my analysis.

　　　　A. Legal Standard:

　　　　An objection directed at a nondispositive matter
decided by the assigned magistrate judge will not be "modified"
or "set aside" unless the magistrate judge's ruling is "clearly
erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).
"[M]agistrate judges are afforded broad discretion in resolving
nondispositive disputes and reversal is appropriate only if
their discretion is abused."  *Williams v. Rosenblatt*
*Securities, Inc.,* 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017)
(citing *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao*
*People's Democratic Republic,* 924 F. Supp. 2d 508, 511
(S.D.N.Y. 2013)).  "A magistrate's ruling is contrary to law if
it 'fail[s] to apply or misapplies relevant statutes, case law,
or rules of procedure.'"  *Thai Lao Lignite,* 924 F. Supp. 2d at
512 (quoting *Moore v. Publicis Groupe,* 2012 WL 1446534, at *1
(S.D.N.Y. Apr. 26, 2012)).  A magistrate judge's order is
clearly erroneous where "'on the entire evidence,' [the
district court] is 'left with the definite and firm conviction
that a mistake has been committed.'"  *Easley v. Cromartie,* 532
U.S. 234, 242 (2001) (quoting *United States v. United States*
*Gypsum Co.,* 333 U.S. 364, 395 (1948)).  "The party seeking to
overturn a magistrate judge's decision thus carries a heavy

M33GjscC

burden." *McFarlane v. First Unum Life Ins. Co.,* 2017 WL

4564928, at *2 (S.D.N.Y. Oct. 12, 2017) (quoting *State Farm*

*Mut. Auto. Ins. Co. v. Fayda,* 2016 WL 4530890, at *1 (S.D.N.Y.

Mar. 24, 2016)).

"A Section 1782 application is nondispositive and may

be decided by a magistrate judge by opinion and order, rather

than a report and recommendation to the district court." *In re*

*Atvos Agroindustrial Investimentos S.A.,* 481 F. Supp. 3d 166,

174-75 (S.D.N.Y. 2020); see also *In re Hulley Enterprises Ltd.,*

400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (Daniels, J.) ("This

Court agrees with the majority of courts finding that rulings

on §1782 applications are not dispositive."  Accordingly, the

Court will review the Order to determine if it is clearly

erroneous or contrary to law.

B.  Objections Regarding the Motion to Intervene:

Judge Gorenstein's grant of the Application under

28 U.S.C. §1782 was not clearly erroneous or contrary to law.

i.  Legal Standard:

In ruling on an application for discovery under

28 U.S.C. §1782, "a district court must first consider

[§1782's] statutory requirements and then use its discretion in

balancing a number of factors." *Brandi-Dohrn v. IKB Deutsche*

*Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012).

There are three statutory requirements for granting an

application pursuant to §1782.  A Court may grant a request

M33GjscC

when:  "(1) the person from whom discovery is sought resides

(or is found) in the district of the district court to which

the application is made, (2) the discovery is for use in a

foreign proceeding before a foreign tribunal, and (3) the

application is made by a foreign or international tribunal or

any interested person."  Id.; see also *Mangouras v. Squire*

*Patton Boggs,* 980 F.3d 88, 97 (2d Cir. 2020) (stating same

requirements).  "All three statutory factors must be met in

order for a district court to have the authority to grant a

§1782 request."  *In re Al-Attabi,* 2022 WL 229784, at *1

(S.D.N.Y. Jan. 26, 2022).

        If an application satisfies the statutory factors, a

court must exercise its discretion, guided by the "twin aims of

the statute," namely, "providing efficient means of assistance

to participants in international litigation in our federal

courts and encouraging foreign countries by example to provide

similar means of assistance to our courts."  *Schmitz v.*

*Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 84 (2d Cir.

2004) (quotation marks and citations omitted); accord

*Brandi-Dohrn,* 673 F.3d at 81.  "[C]ourts have wide discretion to

determine whether to grant discovery and can tailor any

requested discovery 'to avoid attendant problems.'"  *In re*

*Postalis,* 2018 WL 6725406, at *2 (S.D.N.Y. Dec. 20, 2018)

(quoting *Application of Esses,* 101 F.3d 873, 876 (2d Cir.

1996)).  To aid the court in determining whether to exercise

its discretion to grant discovery pursuant to §1782, the

Supreme Court has prescribed four factors to consider.  See

*Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241,

264-65, 124 S. Ct. 2466, 2483-84 (2004).

     The four "*Intel* factors" are:  (1) whether the person

from whom discovery is sought is a participant in the foreign

proceeding, in which event the need for §1782(a) aid generally

is not as apparent as it ordinarily is when evidence is sought

from a nonparticipant in the matter arising abroad; (2) the

nature of the foreign tribunal, the character of the

proceedings underway abroad and the receptivity of the foreign

government or the court or agency abroad to U.S. federal court

judicial assistance; (3) whether the request conceals an

attempt to circumvent foreign proof-gathering restrictions or

other policies of a foreign country or the United States; and

(4) whether the request is unduly intrusive or burdensome.

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,* 895 F.3d

238, 244 (2d Cir. 2018) (citing *Intel,* 542 U.S. at 264-65, 124

S. Ct. 2483-84).  If a §1782 petition satisfies both the

statutory requirements and the discretionary *Intel* factors, a

district court may grant the petition.

     The burden of establishing entitlement to discovery

pursuant to §1782 falls on the applicant.  See *In re Gorsoan*

*Limited,* 843 F. App'x 352, 354 (2d Cir. 2021) (party seeking to

invoke §1782 must show the three statutory factors are met); *In*

*re Postalis,* 2018 WL 6725406, at *3 (applicant must show the basic statutory requirements).

　　　ii.　Analysis:

　　　One, Judge Gorenstein did not clearly err in determining that the Targets were "found in" the Southern District of New York.

　　　Intervenor first argues that Judge Gorenstein committed clear error because Applicant did not demonstrate that the Discovery Targets were "found in" New York.　Judge Gorenstein did not clearly err in making that determination.

　　　§1782 does not define what it means to 'reside' or be 'found' in a particular district, and '[i]t is unclear whether [Section] 1782's statutory prerequisite that a person or entity reside or be found in a district is coextensive with whether a court has personal jurisdiction over that person or entity.'" *In re Del Valle Ruiz,* 2018 WL 5095672, at *3 (S.D.N.Y. Oct. 19, 2018) (quoting *In re Sargeant,* 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017).　"However, several courts within this District have recognized that, "[a]t minimum... compelling an entity to provide discovery under §1782 must comport with constitutional due process."　Id.

　　　District courts "resolving issues of personal jurisdiction must... engage in a two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). "First, they must determine whether there

M33GjscC

is jurisdiction over the defendant under the relevant forum

state's laws... second, they must determine whether an exercise

of jurisdiction under these laws is consistent with federal due

process requirements."  Id.  Once a statutory basis for

personal jurisdiction is established, "due process requires a

plaintiff to allege (1) that a defendant has 'certain minimum

contacts' with the relevant forum, and (2) that the exercise of

jurisdiction is reasonable in the circumstances."  *In re*

*Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 673 (2d Cir.

2013) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316

(1945)).

          To determine whether a defendant has the necessary

"minimum contacts," a distinction is made between "specific"

and "general" personal jurisdiction.  "Specific [personal]

jurisdiction exists when 'a [forum] exercises personal

jurisdiction over a defendant in a suit arising out of or

related to the defendant's contacts with the forum'; a court's

general jurisdiction, on the other hand, is based on the

defendant's general business contacts with the forum... and

permits a court to exercise its power in a case where the

subject matter of the suit is unrelated to those contacts."

Id.  The existence of either specific personal jurisdiction or

general personal jurisdiction satisfies the "minimum" contacts

requirement of the due process clause.  Id. at 673-74

(citations omitted).

M33GjscC

"For the purpose of establishing specific personal jurisdiction, the necessary 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. at 674 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984), and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 480, 414 (1984))).

"Unlike specific personal jurisdiction, general jurisdiction is not related to the events giving rise to the suit." Id.  To establish general jurisdiction, a plaintiff must "demonstrate the defendant's 'continuous and systematic general business contacts' with the forum at the time the initial complaint was filed." Id. (quoting *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414-16 & n.9). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 922 (2011).

In *Daimler AG v. Bauman*, the Supreme Court clarified that, with respect to foreign corporations (i.e., "legal" persons), the touchstone of general personal jurisdiction is

"whether that corporation's 'affiliations with the State are so 'continuous and systematic" as to render [it] essentially at home in the forum,'" 571 U.S. 117, 138 n.18, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ).  The Supreme Court explained that a corporation's place of incorporation and principal place of business are "paradig[m]... bases for general jurisdiction."  Id. at 137, 134 S.Ct. 746 (alterations in original).  Moreover, while the Court cautioned that it was not "foreclos[ing] the possibility that in an exceptional case... a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation essentially at home in the State."  Id. at 139, 134 S.Ct. 746 n.19.

In *Gucci America, Inc. v. Weixing Li,* the Second Circuit applied those standards to determine that general personal jurisdiction could not be exercised over a bank that was headquartered in China but had branches in New York.  768 F.3d 122, 135 (2d Cir. 2014).  The Circuit stated that "the test for specific jurisdiction over defendants examines whether a cause of action arises out of or relates to the defendant's contacts with the forum," and determined that the existence of a bank branch in New York was insufficient grounds for general personal jurisdiction.  Id. at 141-142.

1    However, the New York Appellate Division has held that

2    courts may exert general jurisdiction over the specific bank

3    branch located in the New York.  *B & M Kingstone, LLC v. Mega*

4    *Int'l Com. Bank Co. ("B&M"),* 15 N.Y.S.3d 318, 324 (1st Dep't

5    2015)("[T]he court's general personal jurisdiction over the

6    bank's New York branch permits it to compel that branch to

7    produce any requested information that can be found through

8    electronic searches performed there."); see also *Sonterra Cap.*

9    *Master Fund Ltd. v. Credit Suisse Grp. AG,* 277 F. Supp. 3d 521,

10   587 (S.D.N.Y. 2017) (quoting *B&M* for the same).

11    Here, Judge Gorenstein determined that the Targets

12   were found in the Southern District of New York, noting that

13   "BTA has provided evidence that each respondent bank maintains

14   an office (in many cases, its corporate headquarters) and does

15   business (including correspondent and intermediary banking) in

16   the Southern District of New York."  Order at 3.  The parties

17   do not dispute that the Court has personal jurisdiction over

18   the Discovery Targets headquartered in New York.  Indeed, the

19   intervenor appears to concede that the Court has general

20   jurisdiction over the Discovery Targets that are headquartered

21   in the Southern District of New York, which consist of The

22   Clearing House, The Bank of New York Mellon, BNP Paribas,

23   Citibank, N.A., Deutsche Bank Trust Company Americas, HSBC Bank

24   of USA, N.A., and JPMorgan Chase Bank, N.A.  Objection at 8.

25    For the remainder of the Discovery Targets, the

M33GjscC

 1    Applicant does not dispute that discovery may only be compelled

 2    from the individual bank branches located in New York and not

 3    from others of the banks' locations.  See opposition at 5; see

 4    also *B&M,* 15 N.Y.S. at 324 (personal jurisdiction is proper

 5    over bank branches in New York).  Accordingly, Judge Gorenstein

 6    did not clearly err in determining the bank branches in this

 7    district were "found in" this district.

 8           The parties also squabble over whether intervenor may

 9    assert a lack of personal jurisdiction on behalf of the

10    third-party banks.  But because there is no dispute that

11    personal jurisdiction has been established for the Targets that

12    are headquartered in the Southern District of New York and the

13    bank branches located in that district, the Court need not

14    decide that issue here.

15           Two, Judge Gorenstein did not clearly err in

16    determining that the Subpoenaed Evidence was "for use" in a

17    foreign adjudicative proceeding.

18           Intervenor next objects to the Order asserting that

19    Applicant failed to establish that the subpoenaed evidence was

20    "for use" in a foreign proceeding.  That was not clearly

21    erroneous.

22           The "for use" factor in §1782 has been construed

23    broadly, requiring neither that the discovery sought would be

24    discoverable by the foreign tribunal, nor that the discovery be

25    admissible in the foreign proceeding.  *Brandi-Dohrn v. IKB*

*Deutsche Industriebank AG,* 673 F.3d 76, 82 (2d Cir. 2012)

("[A]s a district court should not consider the discoverability

of the evidence in the foreign proceeding, it should not

consider the admissibility of evidence in the foreign

proceeding in ruling on a §1782 application."); see also *Intel,*

542 U.S. at 259-60 (rejecting the proposition that §1782

"bar[s] a district court from ordering production of documents

when the foreign tribunal or the 'interested person' would not

be able to obtain the documents if they were located in the

foreign jurisdiction").

Establishing that the discovery will be "for use" in a

foreign proceeding requires "that §1782 applicants show that

the evidence sought is 'something that will be employed with

some advantage or serve some use in the proceeding.'" *Certain*

*Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.,* 798 F.3d 113,

120 (2d Cir. 2015) (quoting *Mees v. Buiter,* 793 F.3d 291, 297

(2d Cir. 2015)).  "The key question... is not simply whether

the information sought is relevant, but whether the Funds will

actually be able to use the information in the proceeding."

Id.

Here, Judge Gorenstein determined that "the requested

discovery is for use in civil proceedings in at least one

foreign tribunal:  Namely, the High Court of England and

Wales."  Order at 3.  Judge Gorenstein ostensibly referred to a

case currently pending in English High Court, which was stayed

1   in September 2019.  Docket No. 5 ("Kislin Decl.)  Paragraph 35.

2   And that case was stayed after Applicant obtained a partial

3   judgment against Intervenor and Intervenor's father-in-law for

4   breach of court orders relating to the disclosure of his and

5   his father-in-law's assets.  Id.  Paragraph 34.  Applicant

6   avers that it will use the discovery being sought to "lift the

7   stay in order to add additional defendants" to the proceedings

8   and "amend the relevant freezing order to ensure that assets,

9   once located, do not disappear before judgment is rendered."

10  Id.  Paragraph 35.

11          Judge Gorenstein did not clearly err in determining

12  that the use identified by Applicant is sufficient to establish

13  the "for use" element of a §1782 application.  Here, as Judge

14  Gorenstein pointed out, using the discovery to "add additional

15  defendants" and to "amend the relevant freezing order to ensure

16  that assets, once located, do not disappear before judgment is

17  rendered."  See Order at 3.  There is no clear error in a

18  determination that the addition of defendants and the amendment

19  of a freezing order to protect Applicant's assets would provide

20  "some advantage" in those foreign proceedings.

21          To the extent Intervenor contends that the Application

22  should be denied because the discovery sought may be used in

23  non-adjudicative proceedings other than the proceedings in the

24  High Court of England and Wales -- or even there -- that

25  contention fails.  The Second Circuit has expressly rejected

1    the argument that a petitioner must satisfy the statutory

2    requirements for each foreign proceeding in which he or she

3    wished to use the requested discovery.  See *In re Accent*

4    *Delight Int'l Ltd.,* 869 F.3d 121, 134 (2d Cir. 2017); see also,

5    *In re Accent Delight Int'l Ltd.,* 2018 WL 2849724, at *3

6    (S.D.N.Y. June 11, 2018), aff'd, 791 F. App'x 247 (2d Cir.

7    2019) ("In any event, the Court need not decide whether

8    Petitioners meet the statutory factors for the Swiss

9    proceedings because the Second Circuit and this Court have held

10   that Section 1782 does not require an applicant to 'satisfy the

11   statutory requirements for each foreign proceeding for which he

12   or she wishes to use the requested discovery'") (quoting *In re*

13   *Accent Delight Int'l Ltd.,* 869. F.3d at 134).

14          Intervenor's argument that Judge Gorenstein clearly

15   erred because Applicant should have obtained an affidavit from

16   a foreign attorney, rather than Applicant's U.S.-based counsel,

17   in support of Applicant's intended use of the discovery is

18   entirely unsupported.  Intervenor does not identify any legal

19   requirement that a foreign attorney provide support for a 1782

20   application -- Intervenor points only to cases in which a

21   foreign attorney happened to support the §1782 application.

22   See Objection at 12.  Nor does Intervenor point to any

23   competent reason as to why Applicant's U.S. counsel would be

24   unaware of the intended use of the documents in foreign

25   proceedings.  The Court finds no clear error in Judge

M33GjscC

1    Gorenstein's reliance on U.S. counsel's declaration to

2    establish the intended use for documents in foreign

3    proceedings.  Accordingly, Intervenor's objection is dismissed

4    to the extent Intervenor objects to Judge Goreinstein's

5    conclusion that the discovery sought is "for use" in a foreign

6    proceeding.

7            Three, Judge Gorenstein did not abuse his discretion

8    in weighing the *Intel* discretionary factors.

9            Intervenor next argues that Judge Gorenstein clearly

10   erred in his discretionary analysis of the *Intel* factors, but

11   those arguments are not persuasive.  First, Intervenor asserts

12   that Judge Gorenstein should have denied the Application

13   because Applicant put forth insufficient evidence that any

14   transactions passed through the Discovery Targets.  Objection

15   at 13.  That argument would ostensibly fall under the fourth

16   *Intel* factor -- whether the request is unduly intrusive or

17   burdensome.  However, Applicant identified specific

18   transactions that could have passed through the Discovery

19   Targets, noting that individuals involved in the fraudulent

20   scheme at the heart of the foreign proceedings had a

21   "propensity... to effect US dollar denominated transactions."

22   Kislin Decl.  50.  Judge Gorenstein did not clearly err in

23   determining that the Banks and the Clearing House were

24   appropriate targets for discovery on that basis.

25           In arguing to the contrary, Intervenor relies on *In re*

1    *Asia Maritime Pacific Ltd.,* where a court in this district

2    denied a §1782 application.  253 F. Supp. 3d 701, 705 (S.D.N.Y.

3    2015).  There, the Court denied the application on the basis

4    that the petitioner had failed to identify any adjudicative

5    foreign proceedings, and also commented, in dicta, that even if

6    the statutory §1782 requirements had been met, it would not

7    have exercised its discretion to permit discovery because the

8    petitioner had provided "no basis to believe that [a company in

9    question] ever transacted business through any particular

10   bank."  Id. at 705.

11        That case can be distinguished.  First, the Court's

12   determination was based on the fact that plaintiff had not

13   identified any foreign proceedings in which the discovery would

14   be used -- its commentary on whether plaintiff had sufficiently

15   identified a basis to believe that a company had transacted

16   business with a particular bank was an ancillary finding.

17   Moreover, in that case, the applicant sought discovery to

18   "identify the location of bank accounts and other assets" in

19   order to "support claims on the merits" in proceedings that had

20   yet to be initiated.  Id. at 703.  In this case, by contrast,

21   Applicant has identified specific fraudulent transactions and

22   has also stated that participants in the schemes underlying the

23   foreign proceedings had a tendency to transact through American

24   banks.  Judge Gorenstein did not clearly err in exercising his

25   discretion to grant the Application.

M33GjscC

1          I also briefly note that Applicant averred that its

2     requests were limited to bank payment messages naming or

3     referencing only three terms.  Id. 59.  That limited search

4     also supports Judge Gorenstein's determination that the

5     discovery sought was not unduly burdensome.

6          Next, Intervenor argues that Applicant's request

7     "appears to be an attempt to circumvent bank secrecy rules in

8     Europe."  Id.  Intervenor's argument is not well supported.  He

9     claims only that Applicant "does not explain" why Applicant is

10    targeting U.S. banks instead of the principal banks in Europe.

11    But "nothing in the text of §1782 limits a district court's

12    production order authority to materials that could be

13    discovered in the foreign jurisdiction if the materials were

14    located there."  *Intel Corp.,* 542 U.S. at 260.  Nor does

15    Intervenor identify any bank secrecy rules that Applicant would

16    allegedly circumvent were the Application granted.

17    Accordingly, Judge Gorenstein did not clearly err in exercising

18    his discretion to grant the Application.

19          For these reasons, Intervenor's objections to Judge

20    Gorenstein's order are overruled.  Moreover, Intervenor's

21    request for a stay pending the Court's decision on the

22    Objection is denied at this point as moot.

23          Just a few brief comments, counsel, before we end.

24    First off, I described the procedural context in which this

25    objection finds me.  This is not de novo review.  The standard

M33GjscC

1    of review is that which I have described earlier.  So I am not

2    taking any position regarding, I'll call it, the process that

3    was used here.  I understand that the intervenor would have

4    liked to have had more opportunity to participate in the

5    proceedings below.  I don't take that up here.  I appreciate

6    the comment, but it's not an issue that's before me here, in

7    particular, given the broad discretion afforded to the

8    magistrate judge in this context.

9         Second, note that I'm not commenting on the counsel

10   for applicant described as ethos -- I think it might have been

11   pathos -- which is the reference to the nature of the regime

12   and Kazakhstan and a timely reference to events in Russia.  I'm

13   not commenting on that for two reasons:

14        One, I'm reviewing Magistrate Judge Gorenstein's

15   determination regarding the discretionary *Intel* factors.  I am

16   not, again, making that assessment myself de novo now, the

17   principal reason why I'm not commenting on that at this point.

18   Secondarily, I'm applying the statute as it currently exists.

19   But the principal point is that I'm not making a de novo

20   evaluation of the *Intel* factors here.

21        An issue was raised by counsel for the Intervenor

22   regarding, I'll call it, the time by which productions must be

23   shared with intervenor.  That issue is not properly before me

24   at this point for resolution.  That issue would fall within the

25   scope of the order of reference to Judge Gorenstein.  And so to

M33GjscC

1     the extent there's an issue or concern regarding the timing of

2     the applicant's provision of any responsive materials to the

3     intervenor, that issue should be taken up with Judge Gorenstein

4     in the first instance with, of course, the opportunity for the

5     parties to bring any issue to me pursuant to Rule 72, if it

6     needs review, if a decision is such that a review is

7     appropriate.  But I'm not going to take up that issue in the

8     first instance because it falls within the scope of my order of

9     reference to Judge Gorenstein.

10             I'm going to issue a brief order denying the

11     objections and pointing to the transcript of today's proceeding

12     for the rationale of my decision.

13             Again, to the extent that there are other collateral

14     issues that the parties would like to raise regarding the case,

15     they should be properly brought to Judge Gorenstein in the

16     first instance.

17             Anything else for us to take up here?  First, counsel

18     for petitioner or applicant.

19             MS. LEBLANC:  No.  Thank you very much for your time

20     and consideration on the matter.

21             THE COURT:  Thank you.

22             Counsel for intervenor.

23             MR. SOLOMON:  Yes, your Honor.

24             Would your Honor consider staying the subpoenas or

25     ordering the Greenberg Traurig firm not to disseminate any

M33GjscC

1    discovery that they receive for 30 days so that we have an

2    opportunity to appeal this ruling to the Second Circuit?

3            THE COURT:  No.

4            You can make any application that you think is

5    appropriate, but I just denied the application for the reasons

6    described.  At this point, I don't see a need.  But you can

7    take up any application that you would like.

8            If you would like to make a further application to the

9    Court with written, I'll call it, support, I'm happy to

10   consider it.  But at this point, having considered the

11   application, I don't think I have a sufficient basis to stay

12   this pending any potential appellate review.  Again, you should

13   feel free to make any application to me or to the Court in

14   writing, because all I have heard at this point is just the

15   bare nature of the request.  I don't know what the asserted

16   error is.

17           Thank you all very much.  This proceeding is

18   adjourned.

19           (Adjourned)

20

21

22

23

24

25